**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BRIDGETT MCALICE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE ESTEE LAUDER COMPANIES, INC., FABRIZIO FREDA, TRACEY T. TRAVIS, <br><br> Defendants. | Case No: <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Bridgett McAlice ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by The Estee Lauder Companies, Inc. ("Estee" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Estee's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Estee's common stock between August 18, 2022 and May 2, 2023, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Defendants provided investors with material information concerning Estee's expected revenue for the full year 2023. Defendants' statements included, among other things, Estee's progress made to improve cost structure, pricing power and strong cash generation. As a result, Estee forecasted net sales to increase between 3% and 5% versus the prior-year period, reported diluted net earnings per common share are projected to be between $7.11 and $7.33 and adjusted diluted earnings per common share are expected to increase between 5% and 7% on a constant currency basis.

3.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning supply chain issues and mismanagement of inventory levels in the Asia and the United States. This caused Plaintiff and other shareholders to purchase Estee's securities at artificially inflated prices.

4.      The truth began to emerge on November 2, 2022, when Estee issued a press release announcing it was lowering its full year outlook for fiscal 2023. In pertinent part, Defendants announced net sales of $3.93 billion for its first quarter, a decline of 11% from $4.39 billion in the prior-year period, including negative impacts from foreign currency. Additionally, organic net sales fell 5%. Defendants attributed it to headwinds from the COVID-19 restrictions in China, supply chain disruptions and record-high inflation.

5.      In response to this news, Estee's stock price declined from $206.76 per share to $189.96 per share. However, Defendants materially misrepresented and/or concealed the true risks they faced with respect to market conditions and inventory levels, thereby causing Estee's stock price to increase under false pretenses over the next few months.

6.      Investors remained in the dark until Estee reported its financial results for its second quarter of fiscal 2023 on February 2, 2023. At that time, Estee issued a press release announcing, yet again, that it was lowering its outlook for fiscal year 2023. Despite the fact that emerging markets in other parts of Asia and the West delivered strong organic net sales growth, the Company blamed their lowered guidance on greater than anticipated challenges of Covid-19 restrictions in China. On this news, the price of Estee's common stock declined dramatically. From $280.80 per share on February 1, 2023, Estee's stock price dropped to $261.17 per share on February 6, 2023.

7.      Notwithstanding, Defendants continued to mislead investors with unrealistic and materially false statements about market demand and its inventory levels. These statements concealed the truth about Estee's weakness in the market until, on May 3, 2023, Estee issued another press release announcing weaker sales and profit for the year than estimated and accordingly cut its fiscal year outlook for a third consecutive time. As a result, the price of Estee stock declined from $245.22 per share on May 2, 2023 to $202.70 per share on May 3, 2023.

8.      Investors have sustained significant damages as a result of Defendants' fraudulent statements. Plaintiff seeks to recover those damages by way of this lawsuit.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action on behalf of herself and other similarly situated investors to recover losses sustained in connection with Defendants' fraud.

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

12. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Estee is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

14. Plaintiff purchased Estee common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing her transaction(s) in Estee is attached hereto.

15. The Estee Lauder Companies Inc. is a Delaware corporation with its principal executive offices located at 767 Fifth Avenue, New York, NY 10153. During the Class Period, the Company's common stock traded on the NYSE Stock Market (the "NYSE") under the symbol "EL."

16. Defendant Fabrizio Freda ("Freda") was, at all relevant times, the President, Chief Executive Officer and Director of Estee.

17.     Defendant Tracey T. Travis ("Travis") was, at all relevant times, the Executive Vice President and Chief Financial Officer of Estee.

18.     Defendants Freda and Travis are sometimes referred to herein as the "Individual Defendants." Estee together with the Individual Defendants are referred to herein as the "Defendants."

19.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of  Estee's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.     Estee is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful act complained of herein were carried out within the scope of their employment with authorization.

21.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Estee under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### A.      Company Background

22.     Estee manufactures, markets, and sells skin care, makeup, fragrance, and hair care products worldwide. It offers its products under the Estée Lauder, Clinique, Origins, M·A·C, Bobbi Brown Cosmetics, La Mer, Aveda, Jo Malone London, TOM FORD, Too Faced, Dr.Jart+, and The Ordinary brands. The Company sells its products through department stores, specialty-multi retailers, upscale perfumeries and pharmacies, and salons and spas; freestanding stores; its own and authorized retailer websites; third-party online malls; stores in airports; and duty-free locations.

### B.      The Defendants Materially Misled Investors Concerning Estee's Full Year Guidance for 2023

*August 18, 2022*

23.     On August 18, 2022, Estee issued a press release announcing an increase of 9% in net sales from the prior-year period, in addition to an 8% increase in organic net sales. Defendants assured investors that in order to combat record inflation, supply chain disruptions and Covid-19 headwinds, the Company would be implementing strategic price increases, mix optimization and cost savings in other areas.

24.     During the Company's earnings call the same day, Defendants further assured investors that the Company anticipated reliable growth and profitability for 2023, stating "our more effective cost structure, pricing power and strong cash generation should afford us the flexibility to successfully navigate the ongoing complex environment."

25.     Additionally, Defendants noted that the Company was "confident in the long-term growth opportunity in Mainland China, evidenced by our expansion into almost 100 new doors

and 3 additional cities in fiscal year 2022….." When asked by an analyst about Estee's underlying market share performance in China as supply returns to normal, Defendant Freda responded:

> …***we do expect for the full year, China to go back growing double digit. We expect strong recovery in Hainan in the second part, in the second semester of the fiscal year, for sure, a gradual recovery before. That's our assumption, which obviously is going to give us also results in market share.***
>
> So speaking about the last -- the quarter 4, to be clear, the market in China was down 10%. Estée Lauder Company was down 13%. So we lost 1 point of market share. We are now at 23%, so very strong market share. I would like to argue that given the lockdown of our distribution center, the impossibility of serving for almost 2 months, our consumers losing 1 point of market share temporarily is actually showing that already in June, we started recovery with an outstanding 6.18 event and the management of this.
>
> . . .
>
> We are getting a great strategy to win in key shopping moments. I think that what we demonstrated in [indiscernible] in June for the 18.6 event is extraordinary. In our team, we are coming out of 40 days down in Shanghai, and they were able to operate successfully a very complex and important event. We are going to do the same with 11.11, hopefully, now in the second quarter.
>
> We are also improving our distribution in brick-and-mortar. We are opening new cities and new doors in the existing fast-growing cities. We have a new distribution center that we have opened. Actually, we opened this Friday in Guangzhou to mitigate risk of future distribution disruptions, and then this will turn into a definite ongoing new second big distribution center in the beginning of 2023.
>
> ***We believe the Hainan -- despite the current lockdown, which is obviously painful in the short term, but is a super strong opportunities for the long term, the power of Hainan in the future remain intact, and we have strong presence and market share in this operation.*** And I want to say we have an amazing local team, and this local team, they've been able to manage through these difficulties extremely well, and we believe that's strength on which we can count in the future to continue building market share over time. Thank you for the question.

(Emphasis added.)

26.     Defendant Freda further assured investors that the Company's "brick-and-mortar and online served as growth engines for the year as we pushed exciting initiatives to amplify our omnichannel capability."

27.     Similarly, Defendant Travis emphasized improvements made by the Company to drive profitability despite Covid-19 headwinds "[d]uring the year, we continue to create more flexibility in our cost structure to absorb inflation in wages, media and logistics. We achieved significant savings from our cost initiatives, including the Post-COVID Business Acceleration program. This has enabled us to realize greater expense leverage while also reinvesting in areas that support profitable growth, resulting in an overall improvement in our operating margin."

28.     During the conference call, Defendant Travis addressed supply chain issues stating "[w]e utilized $1 billion for capital improvements, an increase of approximately $400 million over last year. We continue to invest in capacity and other supply chain improvements. We increased consumer-facing investments to support in-store experiences and recovery markets. We renovated office space, and we continue to invest in information technology."

29.     The above statements in Paragraphs 23 to 38 were false and/or materially misleading. Specifically, Defendants misrepresented and/or failed to disclose that the Company was unable to effectively manage its supply chain and product manufacturing,  resulting in reduced revenues and margins, and increased inventory levels. Defendants misled investors by providing the public with materially flawed revenue guidance for fiscal 2023.

## C.     Estee Reveals First Quarter Earnings and Reduces Their Outlook for Fiscal Year 2023

### *November 2, 2022*

30.     On November 2, 2022, Estee issued a press release announcing their first quarter results and reduction of full year outlook for 2023. The press release stated, in pertinent part, that:

> The Company expects the remainder of the fiscal year to be pressured by the temporary disruptions due to headwinds from the COVID-19 restrictions in China, the strengthening of the U.S. dollar, record-high inflation, supply chain disruptions, and the risk of a slowdown in certain markets globally. ***The Company remains***

***optimistic about the prospects and future growth in global prestige beauty and plans to invest in its business during this difficult environment to support share gains and long-term growth. With multiple engines of growth across regions, brands, product categories and channels, the Company is well-positioned to drive diversified growth across its portfolio as it manages through these challenges.***

The Company expects its first-half results to be negatively impacted by the ongoing challenges from the COVID-related restrictions affecting Asia travel retail, including tightening of retailer inventory, and mainland China. The Company also expects the tightening of inventory in the United States to negatively impact its first-half results. ***For the second half, the Company expects sequential improvement to its results and a gradual recovery as restrictions are lifted, travel resumes to Hainan and the tightening of inventory subsides.***

(Emphasis added.)

31.    Although some information as to the Company's true condition was revealed, Defendants continued to mislead investors. During an earnings call the same day, Defendants assured investors that the revised guidance still represented growth with Defendant Freda noting "[w]e expect a gradual sequential improvement to low double-digit organic sales growth and high teens adjusted EPS growth on a reported basis in the second half of fiscal year 2023. As these pressures begin to abate, the momentum in other areas of our business builds and our ongoing investments drive growth."

32.    Defendants also emphasized that the Company was already resolving its supply chain issues, with Defendant Travis stating "[w]e invested $152 million in capital expenditures for supply chain improvements, online capabilities and distribution expansion."

33.    The aforementioned statements made in the press release and earnings call on November 2, 2022 were false and/or materially misleading. Defendants misrepresented and/or failed to disclose that the Company was unable to improve its supply chain and product distribution effectively, which resulted in reduced revenues and margins and increased inventory levels.

**D.**     **Estee Reveals Second Quarter Earnings and Reduces Their Outlook for Fiscal Year 2023**

*February 2, 2023*

34.     On February 2, 2023, Estee issued a press release announcing that despite meeting second quarter expectations, the Company was again lowering its outlook for fiscal 2023 due to Covid-19 headwinds. The press release stated in pertinent part:

> ***For fiscal 2023, we are lowering our outlook given the November and December disruption to travel and staffing levels in Hainan that slowed the expected normalization of inventory and the recently-announced potential roll-back of COVID-related supportive measures in Korea duty free.*** Together, these are creating a near-term, transitory pressure to our travel retail business. In the third quarter, this is more than offsetting the initial positive impact from the resumption of international travel by Chinese consumers, as well as favorable trends from our second quarter results, including outstanding performance across many developed markets in Western Europe and Asia/Pacific, as well as many emerging markets globally, and a less onerous currency environment. ***All told, our return to growth has shifted to the fourth quarter. We remain focused on investing in our brands, including for innovation, advertising, and entry into new countries, among others, to fuel our multiple engines of growth strategy."***

(Emphasis added.)

35.     On an earnings call the same day, Defendant Freda stated Estee was lowering outlook for organic sales growth and adjusted diluted EPS because "inventory levels in Hainan remains somewhat more elevated than we expected due to the disruptions in travel and in-store staffing levels in November and December. Second, the recently announced potential rollback of COVID-related supportive measures in Korea duty free are creating a near-term transitory pressure to our business with our Korea duty free retailers…."

36.     Additionally during the question-and-answer segment, Defendant Travis was asked about Estee's supply chain management, specifically as it relates to China:

<Q: Lauren Rae Lieberman- Barclays Bank PLC - Analyst> …if you could walk through with us how you're -- I guess, the length of the supply chain works for supplying both Hainan and Mainland China currently, knowing it's shifting. Because as we think through the changed forecast in demand and knowing what I believe is a pretty lengthy supply chain, how you're managing production versus shipments and if that's sort of informing why there's so much visibility seemingly on 4Q. And I guess we should see inventory spike up on your balance sheet in 3Q. Is that right?

<A: Tracey Thomas Travis > …***One, inventory levels are still coming down in Hainan. They are almost at the level that we would expect sales to accelerate. So yes, you should start to see an inventory build related to the shipments that we expect to see in Q4***. In Korea, again, the pace is a little bit more uncertain given the transitory nature of what's going on right now.

So we do anticipate, as I mentioned in the prepared remarks, that we will start to see resumption of travel in Korea. And depending on the pace of that resumption, that will depend on the amount of shipments that we have in the quarter. But we have taken obviously an assumption there. ***We are sitting on a decent amount of inventory even in our own warehouses to supply the sales that we expect to see in the fourth quarter.***

(Emphasis added.)

37.     Defendant Freda continued to tout the Company's increase in market share and retail sales in China stating, in part:

> ***And so China, the results in the quarter were pretty good. We built significant market share.*** So the overall market in China was negative double digit. Our net sales were -- and our retail was negative single digit, and we built market share in every single category. So in most risers, we build market share in makeup, in fragrance, in health care, in every aspect. ***Now this, for us, is a very important sign that the -- our brands are really working. The aspirational value of our brands remains very, very strong, which in the moment of reopening is a very strong position to be. So excellent performance relatively to market.***

(Emphasis added.)

38.     The aforementioned press release and statements made by the Individual Defendants were materially false and misleading. Defendants misrepresented and/or failed to disclose to investors that supply chain management issues continued to exist, in addition to elevated inventory levels at retail partners.

39.     Investors and analysts reacted immediately to Estee's revelation. The price of Estee's common stock declined dramatically. From a closing market price of $280.80 per share on February 1, 2023, Estee's stock price fell to $261.17 per share on February 6, 2023.

40.     At the same time, Defendants continued to mislead investors when discussing the Company's inventory levels. In pertinent part, during the earnings conference call held on February 2, 2023, Defendant Travis stated as follows in response to a question from an analyst:

> <Lauren Rae Lieberman Barclays Bank PLC, Research Division – MD & Senior Research Analyst> I was hoping, and this is probably more for you, Tracey, if you could walk through with us how you're -- I guess, the length of the supply chain works for supplying both Hainan and Mainland China currently, knowing it's shifting. Because as we think through the changed forecast in demand and knowing what I believe is a pretty lengthy supply chain, how you're managing production versus shipments and if that's sort of informing why there's so much visibility seemingly on 4Q. And I guess we should see inventory spike up on your balance sheet in 3Q. Is that right?
>
> <Tracey Thomas Travis The Estée Lauder Companies Inc. – Executive VP & CFO> Yes. You're correct, Lauren, that we do expect that we will -- two things. ***One, inventory levels are still coming down in Hainan. They are almost at the level that we would expect sales to accelerate. So yes, you should start to see an inventory build related to the shipments that we expect to see in Q4***. In Korea, again, the pace is a little bit more uncertain given the transitory nature of what's going on right now. So we do anticipate, as I mentioned in the prepared remarks, that we will start to see resumption of travel in Korea. And depending on the pace of that resumption, that will depend on the amount of shipments that we have in the quarter. But we have taken obviously an assumption there. We are sitting on a decent amount of inventory even in our own warehouses to supply the sales that we expect to see in the fourth quarter.

(Emphasis added.)

41.     The above statements were false and/or materially misleading because inventory levels in Hainan were not materially decreasing and were not improving Estee's operational difficulties in China. To the contrary, Estee's inventory levels remained high and supply chain management issues continued to exist.

**E.**  **Estee Reveals Third Quarter Earnings and Further Reduces Their Guidance for Fiscal Year 2023**

*May 3, 2023*

42.    Subsequently, on May 3, 2023, Estee issued a press release announcing their third quarter results and a further reduction of 2023 full year guidance. The press release stated, in pertinent part, that:

> "*As the shape of recovery from the pandemic for Asia travel retail comes into better focus, it is proving to be both far more volatile than we expected and more gradual relative to what we experienced in other regions.* We are, therefore, lowering our organic sales and EPS outlook for fiscal 2023 to reflect significantly greater headwinds in our fourth quarter than we expected in February."

> Freda concluded, "While we work through the serious but we believe temporary headwinds facing Asia travel retail, we are encouraged by the strong momentum in the rest of our business. *Indeed, consumer demand is robust for our diverse portfolio of brands in developed and emerging markets around the world, evidenced in both organic sales growth and retail sales trends, which drives our confidence in the long-term*…."

(Emphasis added.)

43.    Defendants attributed the further reduction in guidance to "…its Asia travel retail business continued to be pressured by the slower than anticipated recovery from the COVID pandemic. Specifically, in Hainan, while traffic into the island exceeded prior year levels, conversion of travelers to consumers in prestige beauty lagged. This led to the slower than anticipated depletion of elevated levels of retailer inventory and, therefore, lower replenishment orders."

44.    During an earnings call the same day, Defendant Travis stated "compounding this pressure is the tightening of inventory by retailers in Hainan. We now expect that a far more gradual return to normal sales growth in Asia travel retail is likely to persist into the first half of fiscal 2024. In addition, higher inflation and currency volatility, as well as promotions in certain

markets to alleviate high stock levels more than offset our price increases and further pressured our business margins.

45.     During the question-and-answer segment of the call, Individual Defendants Travis and Freda responded to analyst question about the Company's change in guidance and retailer inventory issues:

> <Q: Dara Warren Mohsenian – Morgan Stanley - Analyst> So I just wanted to touch on the 3 areas of weakness versus prior guidance in terms of Hainan, Korea and China. ***Taking a step back, the magnitude of changes to your guidance stemming from the areas is obviously severe, and it also looks more onerous than peers. So just as you take a step back and look at the weakness versus what was expected, how much of that do you think more just the timing of recovery and beauty at the consumer level coming out of COVID or retailer inventory issues***, which in theory, are more shorter term versus the potential for the longer-term recovery in the beauty category is lower in these areas. So really just perspective on lower long-term sales potential versus more short-term issues.
>
> <A: Tracey Thomas Travis > …We ended up with more inventory in the trade than what's needed basically for the level of sales that were being done in Hainan. ***So our pullback in inventory right now, given the pace of recovery that we're seeing, again, we're encouraged, but the retail inventory needs to come down, and therefore, we are pulling back on our shipments.***
>
> <A: Fabrizio Freda> …I just want to add that -- so as Tracey explained in TR, ***is really an issue of inventories versus pace of recovery.*** Another proof of that is our retail in travel retail is so much stronger than our net. So you have a minus 45% in Quarter 3 versus a single digit decline in retail. ***So there is a lot of inventory absorption, which is going on with the recovery. And a lot of the speed of this absorption will depend on the speed of the recovery that we have in front of us.*** We are estimating that given the trend in this period in the Quarter 4, retail will go positive, and then the absorption will continue to improve over time and definitely continue in Quarter 1 of next year -- next fiscal year.

(Emphasis added.)

46.     The aforementioned press release and statements made by the Individual Defendants were misleading and in direct contrast to statements they made during the February 2, 2023 earnings call. On that call, Defendants claimed that inventory levels in Hainan were "coming down" and that improvements made to the supply chain and brand building in Asia

would drive retail sales in fiscal year 2023. Yet again, failure to reduce inventory, improve its market share trends and solidifying brand identity in Asia were factors causing Estee to further lower its guidance for fiscal year 2023.

47.     Analyst Deutsche Bank expressed concern about the Company's lowering of guidance for the third consecutive time this year stating "[w]hile we appreciate the complexity of current challenges in EL's travel retail (TR) business, the sheer magnitude of the reduced outlook and associated operating deleverage raises questions related to EL's capabilities vis-à-vis demand forecasting, visibility, and supply-chain agility in its most profitable geography and channel."

48.     As a result, investors and analysts reacted immediately to Estee's revelation. The price of Estee's common stock declined dramatically. From a closing market price of $245.22 per share on May 2, 2023, Estee's stock price fell to $202.70 per share on May 3, 2023.

**F.     Loss Causation and Economic Loss**

49.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Estee's common stock, or maintained levels of artificial inflation in Estee's common stock price, and operated as a fraud or deceit on Class Period purchasers of Estee's common stock by materially misleading the investing public. Later, when Estee and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Estee's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of  Estee's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

50.     Estee's stock price fell in response to corrective events, as alleged *supra*. On these dates, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning Estee's elevated inventory levels, forecasting processes and 2023 full-year financial guidance.

**G.     Presumption of Reliance; Fraud-On-The-Market**

51.     At all relevant times, the market for Estee's common stock was an efficient market for the following reasons, among others:

(a)     Estee's common stock met the requirements for listing and was listed and actively traded on the NYSE during the Class Period, a highly efficient and automated market;

(b)     Estee communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Estee was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Estee was reflected in and incorporated into the Company's stock price during the Class Period.

52.     As a result of the foregoing, the market for Estee's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Estee's stock price. Under these circumstances, all purchasers of

Estee's common stock during the Class Period suffered similar injury through their purchase of Estee's common stock at artificially inflated prices, and a presumption of reliance applies.

53.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**H.     No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

55.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

56.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker

knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Estee who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## **CLASS ACTION ALLEGATIONS**

57. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Estee's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

58. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Estee's common stock were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Estee or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in

securities class actions. As of April 26, 2023, there were 231 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

59.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Estee;

(c)     whether the Individual Defendants caused Estee to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Estee's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*
### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and,

throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Estee common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Estee's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Estee's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

67.     By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers

and/or directors of the Company, the Individual Defendants had knowledge of the details of Estee's internal affairs.

69.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Estee's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Estee's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Estee's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

70.     During the Class Period, Estee's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Estee's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff

and the Class, the true value of Estee's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Estee's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

71.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*
### *for Violations of Section 20(a) of the Exchange Act*

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Estee's misstatements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Estee which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Estee disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Estee to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Estee's common stock.

77.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Estee to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

78.     By reason of the above conduct, the Individual Defendants and/or Estee are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 7, 2023                    Respectfully Submitted,

                                            **LEVI & KORSINSKY, LLP**


                                            _ s/ Adam M. Apton_
                                            Adam M. Apton
                                            33 Whitehall Street, 17th Floor
                                            New York, N.Y. 10004
                                            Tel: (212) 363-7500
                                            Fax: (212) 363-7171
                                            aapton@zlk.com

                                            _Attorneys for Plaintiff_

25