**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE THE ESTÉE LAUDER CO., INC. SECURITIES LITIGATION | No. 1:23-cv-10669-AS<br><br>Hon. Arun Subramanian<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants The Estée Lauder Companies Inc., Fabrizio Freda, and Tracey T. Travis*

June 17, 2024

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.   PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM ................................... 2

        A.  Plaintiffs Do Not Plead a Material Misstatement or Omission.............................. 2

            1.   The Complaint Lacks Particularlized Allegations Supporting Securities Fraud. ............................................................................................................. 2

            2.   Plaintiffs' Allegations Do Not Pass the PSLRA's Heightened Pleading Standard for Defendants' Forward-Looking Statements. ................................ 8

            3.   Plaintiffs Do Not Plead that Defendants Did Not Genuinely and Reasonably Believe The Opinions They Personally Expressed. .................... 10

        B.  Plaintiffs Do Not Plead a Strong Inference of Scienter. ..................................... 12

            1.   Plaintiffs Do Not Plead Actual Knowledge or Recklessness......................... 12

            2.   Plaintiffs' Purported "Other Alleged Indicia of Scienter" Are Insufficient. ................................................................................................. 14

        C.  Plaintiffs Do Not Adequately Allege Loss Causation. ........................................ 15

    II.  PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM................................... 15

CONCLUSION................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC,*
   254 F. Supp. 2d 373 (S.D.N.Y. 2003)..............................................................................5

*In re Chi. Bridge & Iron Co. N.V. Secs. Litig.,*
   2018 WL 2382600 (S.D.N.Y. May 24, 2018) ...............................................................9

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG,*
   2019 WL 719751 (S.D.N.Y. Feb. 19, 2019)................................................................14

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.,*
   875 F. Supp. 2d 359 (S.D.N.Y. 2012)........................................................................13

*Cornwell v. Credit Suisse Grp.,*
   689 F. Supp. 2d 629 (S.D.N.Y. 2010)....................................................................5, 13

*In re Dynex Cap., Inc. Sec. Litig.,*
   2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009) ...............................................................5

*Fadem v. Ford Motor Co.,*
   352 F. Supp. 2d 501 (S.D.N.Y.), *aff'd,* 157 F. App'x 398 (2d Cir. 2005)................................13

*In re Fairway Grp. Holding Corp. Sec. Litig.,*
   2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) .................................................................5

*Felske v. Hirschmann,*
   2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ..................................................................9

*Gauquie v. Albany Molecular Rsch., Inc.,*
   2016 WL 4007591 (E.D.N.Y. July 26, 2016)..........................................................14, 15

*In re Gen. Elec. Co. Secs. Litig.,*
   857 F. Supp. 2d 367 (S.D.N.Y. 2012)........................................................................15

*Gissin v. Endres,*
   739 F. Supp. 2d 488 (S.D.N.Y. 2010)..........................................................................9

*Kasilingham v. Tilray, Inc.,*
   2023 WL 5352294 (S.D.N.Y Aug. 21, 2023).............................................................12

*In re Liberty Tax, Inc. Sec. Litig.,*
   828 F. App'x 747 (2d Cir. 2020) ................................................................................12

*Long Miao v. Fanhua, Inc.,*
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).......................................................................5, 6

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)................................................................9

*In re Molycorp, Inc. Sec. Litig.*,
    2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ...................................................10

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) .......................................................................14

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................4

*ODS Cap. LLC v. JA Solar Holdings Co.*,
    2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020)......................................................6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ................................................................................4

*Speakes v. Taro Pharm. Indus., Ltd.*,
    2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018).....................................................15

*In re Supercom Inc. Sec. Litig.*,
    2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)......................................................14

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993)................................................................................12

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).............................................................................11

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)..............................................................................3

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022).........................................................5

*In re Y-mAbs Therapeutics, Inc. Secs. Litig.*,
    2024 WL 451691 (S.D.N.Y. Feb. 5, 2024)..........................................................10

## PRELIMINARY STATEMENT

Defendants demonstrated that the Complaint[1] fails to plead falsity, scienter, and loss causation.  The Opposition fails to substantively engage with, let alone refute those arguments.

*First*, Defendants demonstrated that Plaintiffs failed to plead particularized factual allegations supporting the Complaint's theory of falsity: that Defendants should have predicted and earlier disclosed the future impact of the new *daigou*[2] regulations.  Instead of defending this theory, Plaintiffs pivot to a new and different theory of purportedly fraudulent omission not pled in the Complaint.  They now insist the alleged fraud is simply Defendants' failure to disclose the component of ELC's travel retail sales attributable to *daigou*.  Of course, Plaintiffs cannot amend their Complaint in a brief.  Further, the theory contradicts their actual allegations.  But most important—the alleged failure to disclose the component of ELC's travel retail sales attributable to *daigou*, standing alone, is not an actionable material omission under the securities laws.

Setting aside the new theory, Plaintiffs concede that their sole support for falsity is the allegations from confidential witnesses (the "FEs") and ELC's November 1, 2023 disclosure.  But they do not rebut Defendants' showing that the FE allegations neither satisfy the *Novak* standard nor offer particularized allegations demonstrating Defendants' contemporaneous knowledge of falsity.  Plaintiffs ask the Court to ignore the deficiencies by relying on the Complaint "as a whole."  But taken separately or together, the allegations do not suffice.  *See* Point I.A.

*Second*, Plaintiffs' response on scienter is equally weak.  Defendants argued that the Complaint fails to plead an inference of fraudulent intent more compelling than the obvious, non-

---

[1] Capitalized terms not defined herein have the same meanings as in Defendants' Memorandum of Law in Support of their Motion to Dismiss (Dkt. 51) (the "Motion").

[2] *Daigou* refers to a "gray market" in which persons and groups purchase lower-priced, duty-free items from retailers (who already purchased product from the initial manufacturer or distributor) and resell those products to end users for a profit.  Compl. ¶¶ 1, 73-75.

fraudulent alternative—that ELC timely updated its forward-looking guidance when unpredictable, changing circumstances evolved differently than anticipated during COVID and travel shutdowns in a historically volatile period.  Rather than engage, Plaintiffs instead parrot back the Complaint's deficient allegations.  And particularly troubling for Plaintiffs, who repeatedly urge the Court to consider their scienter allegations "holistically," Plaintiffs offer nothing in support of an opposing inference of scienter.  *See* Point I.B.

*Finally*, on loss causation, Defendants demonstrated that the Complaint fails to allege that the supposedly corrective disclosures announced anything other than good faith earnings misses (as opposed to disclosures of formerly hidden material facts).  Again, rather than engage, Plaintiffs assume that *any* negative news ELC disclosed somehow revealed the truth—ignoring that such news was either a real-time disclosure incapable of correcting any prior misstatements or completely unrelated to the alleged fraud.  *See* Point I.C.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO STATE A SECTION 10(b) CLAIM

**A. Plaintiffs Do Not Plead a Material Misstatement or Omission.**

**1.  The Complaint Lacks Particularized Allegations Supporting Securities Fraud.**

The cornerstone of Plaintiffs' Complaint is that ELC's disclosures were false and misleading starting on February 3, 2022 because ELC knew or should have known on that date that new *daigou* regulations would dramatically reduce net sales going forward.  *See, e.g.*, Compl. ¶¶ 2, 33, 41, 103, 107, 119, 129, 146, 165, 172, 184, 195, 207, 257, 261, 277.  In their own words:

> By January 1, 2022, Lauder knew that the valve supplying its inflated travel retail sales — daigou gray market resale — was tightening and about to close.  On that date, new regulations in Hainan took effect memorializing ongoing efforts to "crackdown" on daigou activities in Hainan to preserve the long-term viability of duty-free sales on the island.  Over the course of the next twenty-two months, Defendants continuously misled the public regarding the cause and extent of its

2

travel retail net sales declines, failing to disclose that the Company had become heavily reliant on the *daigou* gray market to generate sales within the travel retail segment and that its net sales would decline as a result of no longer being able to rely on this sales channel to drive sales growth. *Id.* ¶ 103.

Defendants demonstrated that Plaintiffs have not pled falsity because the Complaint does not contain particularized allegations about "why and how" ELC was reliant on *daigou*, much less that Defendants "knew" that the new *daigou* regulations would cause the declines in travel retail sales that later occurred. Mot. 11-21. Plaintiffs ignore Defendants' showing that Plaintiffs' own chronology of *daigou* policies fundamentally undermines their theory. The restrictive measures before 2022—the 2019 E-Commerce Law, Hainan's enforcement activity between July 1, 2020 and July 1, 2021, and the 2021 CDFG policy—had no apparent impact on ELC's travel retail net sales. *Id*. at 7-8. Indeed, Plaintiffs allege that it was during this period that ELC purportedly became "dependent" on *daigou*. *See, e.g.*, Compl. ¶¶ 31, 81-82, 104. Plaintiffs do not allege or explain any quantitative or qualitative difference between these earlier measures—that purportedly fueled *daigou* sales—and the 2022 regulations that ELC supposedly "knew" would materially reduce *daigou*. Plaintiffs' allegations rebut, rather than support, contemporaneous falsity.

Recognizing these critical inconsistencies, Plaintiffs try to invent a new theory of fraud: that it was a material omission for ELC not to disclose the component of its travel retail sales attributable to *daigou* starting on February 3, 2022 (but somehow wholly unrelated to the impact of the new regulations). Opp. 2, 17-18. Plaintiffs' effort to change course fails. They cannot amend their Complaint in a brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). The operative theory of fraud is the one in the Complaint—that "[a]fter China's *daigou* crackdown took effect . . . Defendants concealed from investors the material effects that China's crackdown on *daigou* had on [ELC's] *daigou*-dependent travel retail business." Compl. ¶ 2.

Plaintiffs' newly-minted theory also makes no sense in light of their own allegations.

3

Plaintiffs (i) allege that, from 2020-2021, ELC's sales were driven by *daigou* (*see, e.g., id.* ¶¶ 17-18, 33), (ii) acknowledge that ELC did not disclose if, whether, and to what extent *daigou* was allegedly driving sales during that period (*see, e.g., id.* ¶¶ 41, 227), yet (iii) do not assert that any of ELC's travel retail disclosures at that time were false because of this supposed "omission."  If the *daigou* component of sales, standing alone, was not a general material omission before the Class Period, why did it become so starting on February 3, 2022?[3]  The answer is obvious and fatal to Plaintiffs' attempt to re-imagine their Complaint:  The impact of the *daigou* regulations are the crux of the omission that Plaintiffs allege.  There is no generalized failure to disclose *daigou* as a component of travel retail sales absent the supposed impact of the new regulations.  Mot. 11-12.

Whatever Plaintiffs' theory, the only supporting allegations they offer are:  (i) allegations of three FEs, and (ii) ELC's November 1, 2023 public announcement of its first quarter FY 2024 results.  With respect to each, Defendants identified fatal deficiencies that Plaintiffs do not refute.

*FE Allegations*.  Plaintiffs' Opposition confirms Defendants' showing that the FEs fail the Second Circuit's *Novak* standard and further, say *nothing at all* about the new *daigou* regulations, let alone their effect on ELC's travel retail net sales or ELC's knowledge thereof.  Opp. 14-15. Unable to meaningfully respond on specifics, Plaintiffs first try out some generalized arguments.

On credibility, Plaintiffs argue the requirement that each FE be described "with sufficient particularity to support the probability that a person in the [FE's] position . . . would possess the information alleged," *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000), is "not onerous."  Opp. 11.  Plaintiffs ignore that courts in this Circuit require "caution and care" with FE allegations,

---

[3] To the extent that Plaintiffs predicate this new omissions theory on Defendant Freda's 2019 statement that ELC was "never benefitting" from *daigou*, (Opp. 16), that statement discusses ELC's past, not any future circumstances.  It also predates the Class Period by three years. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101 (2d Cir. 2021) ("[L]ogic compels the conclusion that time may render statements immaterial.").

including through examining whether there is "*a high likelihood* that [the FEs] actually knew facts underlying their allegations." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020); Mot. 12. Unlike here, each case Plaintiffs cite applies the *Novak* test and finds that the complaints met this hurdle. *See, e.g.*, *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 WL 249508, at *8 (S.D.N.Y. Jan. 20, 2015) (cited at Opp. 11) (identifying FE as "manager of financial planning" with "direct access to Fairway's financials"). Plaintiffs urge the Court to view "the corroborative effect" of the FEs' statements (Opp. 14),[4] but fail to address Defendants' showing that the FEs allegations are unsupported by particularized facts. *See* Mot. 12-19. In a similar vein, Plaintiffs insist that the FE allegations somehow suffice "as a whole." Opp. 11. It is well-settled, however, that "specific factual allegations must exist . . . [and] are to be individually analyzed in order to determine whether the plaintiff has pleaded fraud with particularity." *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 384 n.2 (S.D.N.Y. 2003).

Notably, Plaintiffs appear to abandon the vast majority of the FE allegations, attempting to defend only a handful as sufficient under the authority cited by Defendants. That effort fails.

*FE-1, Regional Marketing Director of Travel Retail for APAC.* Plaintiffs do not grapple with Defendants' showing that FE-1's allegations that ELC's sales "***from 2020*** through her tenure at [ELC]" "were 'almost definitely' made by *daigou*" (Compl. ¶ 86 (emphasis added)) are undeniably speculative because FE-1's employment period began in July 2022. *See* Mot. 14.[5]

---

[4] The cases Plaintiffs cite for the "corroborative effect" (Opp. 14) are inapposite because each either identifies specific reports corroborating the FE allegations (*In re XL Fleet Corp. Sec. Litig.,* 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022); *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629 (S.D.N.Y. 2010)); or discusses multiple FEs with the same specific, particularized allegation (*In re Dynex Cap., Inc. Sec. Litig.*, 2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009)). Neither is true here.

[5] The (mis)timing of FE-1's tenure also contradicts Plaintiffs' illogical claim that FE-1 supports the falsity of statements about COVID lockdowns in the West. Opp. 15. Those lockdowns are alleged to have occurred in 2020 (Compl. ¶ 108), well before FE-1 started to work at ELC.

Plaintiffs similarly fail to refute Defendants' showing that FE-1 did not possess any knowledge about internal ELC sales, what percentage of sales were attributable to *daigou*, the predicted effect of the *daigou* regulations, or any contact with the Individual Defendants given her position and employment period. *Id.* at 12-15. The best that Plaintiffs can muster is to assert that FE-1 also worked in travel retail before she joined ELC. Opp. 12. This obviously does nothing to shore up the fatal defects in FE-1's allegations that Defendants identified.[6]

In response to Defendants' showing that FE-1 offers mere speculation connecting ELC to *daigou* (Mot. 14), Plaintiffs attempt—but fail—to resuscitate just three of FE-1's allegations. First, FE-1's statement that retailers held "high" stock in Hainan during her employment is wholly unrelated to *daigou*, and is consistent with Asia COVID shutdowns and ELC's disclosures during the Class Period. *Id*. at 8, 14. Second, FE-1's statement that ELC was "looser" when it came to "loading" retailers with stock (Opp. 14), is unconnected to *daigou,* reflects the level of inventory *retailers* deemed appropriate (and that they, like ELC, did not predict market or regulatory changes), and is "insufficiently particular" and should thus be "disregarded." *Long Miao*, 442 F. Supp. 3d at 800. Third, FE-1's general assertion that ELC's "market share came from [] *daigou*," and that it was now seeing "repercussions" (Opp. 14-15) merely "reiterate[s] the allegations in the amended complaint" without identifying the requisite factual allegations, much less anything "concrete." *ODS Cap. LLC v. JA Solar Holdings Co*., 2020 WL 7028639, at *9 (S.D.N.Y. Nov. 30, 2020). Plaintiffs ignore Defendants' showing that FE-1 does not particularize the component of ELC's sales allegedly driven by *daigou* or how that changed after the *daigou* regulations.

---

[6] Plaintiffs admit that FE-1's role only related to two of ELC's over fifteen brands, but they claim that is sufficient because one of the brands (La Mer) was a "hero" product, "ripe for distribution." Opp. 12. Plaintiffs do not bother to explain what that even means or how their assertion demonstrates Defendants knew travel retail sales would materially and permanently decline as a result of the new *daigou* regulations as of February 3, 2022.

*FE-2, Senior Vice President in Finance for an Unidentified Region.*  Plaintiffs say nothing in response to Defendants' showing that FE-2 does not pass the *Novak* test because Plaintiffs fail to identify the region that FE-2 works in, or basis for knowing anything about travel retail in APAC, much less Hainan.  Mot. 15-17.  Instead, Plaintiffs mischaracterize Defendants' argument as challenging only FE-2's pre-Class Period employment, and urge the Court to look at the "allegations as a whole."  Opp. 12, 15.  But FE-2's allegations are not credible or particularized, individually or as a whole.  For example, FE-2 described "'counterintuitive' travel retail growth during the initial outbreak of [] COVID-19," given the lockdowns.  Opp. 15; Compl. ¶ 20.  This is the definition of baseless speculation.  The widespread lockdowns in Asia started only in late February 2022, at least five months after FE-2 left ELC.  Mot. 8, 15.  And FE-2, like FE-1, leaps to the conclusion that "sales spikes in key stores" "were for *daigou*," without explaining why, or what component of overall sales was attributable to these supposed *daigou* spikes.  Opp. 16.

*FE-3, Senior Leadership in Travel Retail EMEA.*  Plaintiffs do not address Defendants' case law stating that identifying FE-3 as having a "senior leadership" position, without stating her role or duties, is insufficient to establish credibility.  Mot. 17-18.  The Opposition merely insists that the description of her role was "robust."  Opp. 13.  But *all* the Complaint alleges is that FE-3 "attended monthly meetings" where the "General Manager . . . provided information from *another* monthly meeting" with leadership, which does not rebut Defendants' showing and reduces the basis of FE-3's knowledge to third-hand information.  Mot. 18 (emphasis added).

Moreover, on the substance, Plaintiffs again insist that "collectively [and] with the other FE allegations," FE-3's allegations support that ELC's dwindling sales during the Class Period were attributed to *daigou* regulations.  Opp. 16.  Yet Defendants showed that FE-3's allegations were unspecific and lacked particularity regarding *when* alleged events happened, *what* ELC's

sales actually were, *what* "over[] dependence" on *daigou* actually meant, or *how* (or even *whether*) such "over[] dependence" was discussed.  Mot. 18-19.  Neither of the two speculative allegations that Plaintiffs attempt to defend—(i) that "'the movement of product into *daigou* channels was "overseen," . . . and "activated" by'" ELC's Head of Travel Retail Worldwide, Israel Assa; or (ii) that ELC could "switch on the *daigou* market if needed"—fills that hole.  Opp. 16.

*November 1, 2023 Disclosure.*  Plaintiffs still rely on ELC's November 1, 2023 10-Q to support falsity but do not rebut any of the key flaws that Defendants identified.  Opp. 16-17.  First, they do not even address that the disclosure pertained to net sales for *just one three-month quarter* and thus cannot support an allegation of fraud for the entire Class Period.  Mot. 20.  Second, Plaintiffs attempt to avoid the plain language of ELC's 10-Q and 8-K—which neither state nor imply that *daigou* was the *primary* basis for sales declines during that quarter (*see id.*)—by relying on their newly-invented theory that it was fraudulent for Defendants to "conceal[] that *daigou* drove [ELC's] sales **at all**."  Opp. 17 (emphasis in original).  This is neither pleaded in the Complaint nor a violation of the securities laws.  *See supra* pp. 2-4.  And third, Plaintiffs ignore Defendants' showing that the November 1, 2023 disclosure followed ELC's August 18, 2023 earnings call, which had already promptly informed the market that unforeseen enforcement actions in May and June would affect sales in Hainan.  Mot. 20.

## 2. Plaintiffs' Allegations Do Not Pass the PSLRA's Heightened Pleading Standard for Defendants' Forward-Looking Statements.

Defendants established that nearly all of the challenged disclosures are quintessential forward-looking statements protected by the PSLRA safe harbor for two independent reasons: (i) the statements are accompanied by meaningful cautionary language; and (ii) Plaintiffs did not plead that Defendants made the statements with actual knowledge that they were false or misleading.  Mot. 22-23.  Nothing in the Opposition demonstrates otherwise.

First, Plaintiffs' attempt to finely parse certain statements to suggest that they make representations of present fact falls short. Opp. 18-19. Plaintiffs seize on Defendants' Q4 2022 earnings call statement that "the ***power of Hainan in the future remain[s] intact, and we have strong presence and market share*** in this operation." *Id.* at 18; Compl. ¶ 162 (emphasis in original). But Plaintiffs ignore the rest of that statement, which makes clear that it is about Hainan *in the future*, and thus was an "educated guess about what the preceding quarter's financial data would mean for the Company's future" in Hainan. *Gissin v. Endres*, 739 F. Supp. 2d 488, 506 (S.D.N.Y. 2010). And unlike the statements in *In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*, ELC's forward-looking statements do not contain distinct "alleged misrepresentation[s] of present fact." 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018) (cited at Opp. 19).

Second, Plaintiffs ignore ELC's cautionary disclosures specifically surrounding travel retail. Mot. 22. By failing to address this directly-on-point risk disclosure, they have conceded the argument. *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012). Plaintiffs refer only to ELC's warnings concerning "changes in the laws, regulations and polices (including the interpretations or ***enforcement thereof***) that affect, or will affect, [ELC's] business" (*e.g.*, Ex. X at 56 (emphasis added)), describing them, without more, as "boilerplate" and "generic." Opp. 19. But unlike Plaintiffs' lone cited authority—which held that generalized disclosures that a company "might increase trading risk" or "might not hold sufficient capital or liquidity" were insufficient to warn investors of the "substantial risk" associated with a newly-deployed business plan, *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 317-18 (S.D.N.Y. 2013)—ELC's disclosures are precise and warned of the exact risk Plaintiffs allege materialized. *See* Mot. 22-23.

Finally, Plaintiffs offer no rebuttal to Defendants' arguments that Plaintiffs did not clear

9

the PSLRA's strict "actual knowledge" standard for forward-looking statements.  None of the FE allegations attempt to imply any direct contact with Mr. Freda or Ms. Travis, nor *even the existence* of internal contradictory reports or data discussing a crackdown on *daigou* ahead of ELC's prompt disclosure in August 2023.  *See id.* at 10, 23.  Nor do they grapple with black-letter law holding that allegations that an individual defendant was "involved in all operations" and "already knew" about sales are not enough to demonstrate actual knowledge of contemporaneous falsity.  *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at *13 (S.D.N.Y. Mar. 12, 2015); *see* Mot 23.  Plaintiffs fail to plead recklessness, never mind actual knowledge.  *See infra* pp. 12-14.[7]

### 3.  Plaintiffs Do Not Plead That Defendants Did Not Genuinely and Reasonably Believe The Opinions They Personally Expressed.

The Individual Defendants' statements are opinions expressing beliefs about the future. *See* Mot. 22 n.6, 23 n.9.  Plaintiffs contend that the challenged statements are not opinions primarily because they fail to include qualifiers like "I believe."  Opp. 21.  This contravenes well-settled precedent.  Notably, Plaintiffs ignore the holding of the Court in *In re Y-mAbs Therapeutics, Inc. Secs. Litig.*, which makes clear that statements without qualifiers like "I believe" can still constitute opinions.  2024 WL 451691, at *8-9 (S.D.N.Y. Feb. 5, 2024) (Subramanian, J.).  For example, Plaintiffs scrutinize Ms. Travis's August 18, 2023 statement that travel retail is "***having a timing issue that's having a big short-term temporary impact***," but ignore the surrounding sentences that make it clear that Ms. Travis was expressing her subjective belief that she had "***no concerns whatsoever about travel retail growing***."  Opp. 21; *see also* Compl. ¶ 171.  Plaintiffs make similar assertions about two additional statements (Compl. ¶¶ 159, 162), which fail for the

---

[7] Plaintiffs also argue these disclosures are not forward-looking because "the false and misleading aspect of [them] lies in Defendants' omission that [ELC] relied on *daigou* **in the past**, which affected its present representations."  Opp. 18 (emphasis in original).  But as demonstrated above, Plaintiffs cannot rewrite their theory of fraud.  *See supra* pp. 2-4.

same reasons.  Opp. 21.  Read in context, both are "'broad' statements expressing hope, optimism, or progress"—*i.e.*, exactly what Plaintiffs concede are nonactionable opinions.  *Id.*

Next, Plaintiffs unsuccessfully attempt to refute their failure to establish that the Individual Defendants "'did not hold the belief [] professed'" or "omit[ted] information whose omission makes the statement misleading to a reasonable investor."  *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016); *see* Mot. 24.  Plaintiffs rely solely on a scattershot of FE allegations, suggesting that "the Individual Defendants did not subjectively believe that Hainan remained '***unchanged***' after CDFG and the Chinese government pledged to eradicate *daigou*" on July 1, 2021 and December 7, 2021, respectively.  Opp. 22 (citations omitted).  Those FE allegations allege no personal contact with the Individual Defendants, and thus cannot show that they did not genuinely believe the opinions expressed.  Mot. 12-19; *see also supra* pp. 4-8.  The FEs' opinions, whatever they may be, say nothing about whether the Individual Defendants' opinions were genuinely and reasonably held.[8]  Plaintiffs fail to grapple with Defendants' cited cases, which set out the high hurdle Plaintiffs must clear to show that the stated opinions were misleading by omission, because "omitting even significant, directly contradictory information from opinion statements is not misleading."  Mot. 24 (internal citations omitted).

Finally, Plaintiffs' remaining arguments—that there are false "'embedded facts' in the alleged opinion statements" and that Defendants "failed to provide investors with the critical context that *daigou* drove its travel retail sales in Hainan" (Opp. 22)—rest entirely on Plaintiffs' flawed, repackaged, and non-actionable theory of fraud.  *See supra* pp. 2-4.[9]

_____

[8] Plaintiffs do not explain why announcements on July 1 or December 7, 2021 contradicted the Individual Defendants' statements of optimism regarding the future.  *Cf.* Opp. 18-22.

[9] In response to the argument that the generic nature of certain alleged misstatements renders them non-actionable (Mot. 24 n.10), Plaintiffs appear to claim that Defendants' pre-Class Period statements that ELC never benefitted from *daigou* created an ongoing, free-standing obligation to

11

### B.  Plaintiffs Do Not Plead a Strong Inference of Scienter.

Strikingly, Plaintiffs affirmatively concede that they have no theory of motive underpinning their securities fraud claim.  Opp. 24 n.11.  Plaintiffs also conspicuously ignore the compelling opposing inference of non-fraudulent intent under *Tellabs*—namely, that the turmoil and unpredictability caused by late-stage COVID-19 variant surges, lockdowns in China, and a changing regulatory landscape for *daigou* made it very difficult for ELC to predict travel retail sales; ELC was forthcoming about these challenges; and it updated its guidance and promptly disclosed the impact of *daigou* enforcement actions as soon as they materialized.  *See* Mot. 25-26.  And Plaintiffs still have no opposing explanation for what Defendants would have gained from "slowly partially reveal[ing] 'the relevant truth' about ELC's declining 'net sales in its travel retail business' over many months, punctuated by multiple reductions in ELC's forward-looking guidance."  *Id.* at 26 (citations omitted).  Plaintiffs rely entirely on recklessness—untethered to any inference of fraudulent intent.  This is insufficient.  *See Kasilingham v. Tilray, Inc.*, 2023 WL 5352294, at *5 (S.D.N.Y Aug. 21, 2023) (allegations must be "correspondingly greater" due to the "high bar that courts 'have erected for conscious misbehavior or recklessness pleadings'").

### 1.  Plaintiffs Do Not Plead Actual Knowledge or Recklessness.

In response to Defendants' showing, Plaintiffs assert that they have adequately alleged that Defendants had actual knowledge or at least acted recklessly because they "could easily 'predict' whether *daigou* regulations 'could impact' net sales based on whether [ELC] inflated sales through *daigou* in the first place."  Opp. 24.  This circular argument only underscores that (i) the alleged

---

disclose ELC's purported indirect *daigou* profit any time they spoke about the business.  Opp. 22-23.  But "an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."  *In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 752 (2d Cir. 2020) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)).

fraud hinges on the new *daigou* regulations in 2022 and *not* simply ELC's purported dependence on *daigou*, and (ii) there are no particularized allegations that Defendants knew or should have known how the announced regulations would be enforced in the future or what their future impact on ELC's sales would be.  And even viewed "holistically," as Plaintiffs urge the Court to do (*id.*), the allegations in the Complaint fall far short of the requisite strong inference of scienter.

 ***FE Allegations.***  Plaintiffs highlight FE allegations of "tracking codes" (FE-1), "pricing databases" showing "pricing differentials" (FE-2), and that an internal team "analyz[ed] the *daigou* market" (FE-3), arguing they show how "Individual Defendants closely tracked sales, forecasting, and pricing data that provided 'clear visibility' into the source of Company sales."  Opp.at 24-25.[10] But critically, Plaintiffs do not identify "what information was actually passed through these channels," and thus fall short of pleading recklessness.  *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 522 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005); Mot. 27.  Plaintiffs' cited cases only confirm this requirement.  *See Cornwell*, 689 F. Supp. 2d. at 637-38 (identifying "specific reports" that the executives reviewed); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.,* 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012) (requiring "some form of specific information" to show recklessness).  At most, Plaintiffs' allegations show that the Individual Defendants knew *daigou* existed and, separately, tracked sales for ELC's travel retail business.  They do not show Defendants knew what the impact of future enforcement of *daigou* regulations would be, do not say how much of ELC's travel retail sales were driven by *daigou*, and only vaguely allege that ELC could "see sales spikes," to "triangulate" the impact of *daigou* on sales.  Compl.  ¶¶ 87, 240,

---

[10] In a misguided attempt to bolster their FE allegations, Plaintiffs state that "Defendants themselves acknowledged that they tracked the gray market and its effect on their brands."  Opp. 25 (citing Compl. ¶ 264).  This blatantly mischaracterizes Defendant Freda's statement, which discusses tracking the brand strength of the La Mer and ELC brands, not tracking *daigou*.

242. This is plainly insufficient to pass the high bar imposed by the PSLRA.

*Core Operations.* Plaintiffs argue "the core operations doctrine bolsters the inference of scienter" because "travel retail accounted for nearly one-third of [ELC's] total revenue" and "it would be 'absurd to suggest' that Defendants were unaware of the source of their travel retail success." Opp. 26. But even the cases Plaintiffs cite state that in the absence of well-pleaded allegations, the core operations doctrine "'is not independently sufficient to raise a strong inference of scienter.'" *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018) (internal citations omitted). Plaintiffs ignore Defendants' cases, which hold that "core operation" means "nearly all of a company's business," not one-third as alleged. Mot. 28; *see* Compl. ¶ 65.

*SEC Inquiry.* Plaintiffs ignore that the SEC inquiry "concerned disclosures about granular pricing and sales metrics, not *daigou*," and concerned net sales volumes "before the Class Period." Mot. 28. Plaintiffs' two cited cases are distinguishable. In one, the SEC inquiry concerned the relevant class period. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2019 WL 719751, at *7-8 (S.D.N.Y. Feb. 19, 2019). And the other, *New Orleans Employees Retirement System v. Celestica, Inc.*, did not even involve an SEC inquiry. 455 F. App'x 10 (2d Cir. 2011).

### 2. Plaintiffs' Purported "Other Alleged Indicia of Scienter" Are Insufficient.

Having conceded that the Individual Defendants' positions are not indicia of scienter, Plaintiffs wrongly argue that Defendants' "repeated discussion of *daigou*, China, Hainan, and travel retail sales results . . . supports an inference of scienter." Opp. 27. But the allegations Plaintiffs point to (Compl. ¶¶ 257-64) show, at most, that Defendants were knowledgeable about certain trends in travel retail and the existence of *daigou*. *See* Mot. 27-28 n.11. They do not show any underlying fraud, much less Defendants' alleged knowledge of it. Plaintiffs' cases are distinguishable. *See Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2 (E.D.N.Y.

14

July 26, 2016) (FE stated that defendants were aware of the problem prior to public statements); *Speakes v. Taro Pharm. Indus., Ltd.*, 2018 WL 4572987, at \*9 (S.D.N.Y. Sept. 24, 2018) (FEs had direct contact with defendants); *In re Gen. Elec. Co. Secs. Litig.*, 857 F. Supp. 2d 367, 395 (S.D.N.Y. 2012) (defendant alleged to have been responsible for detailed reports).

### C.  Plaintiffs Do Not Adequately Allege Loss Causation.

***Corrective Disclosure Theory.***   Plaintiffs attempt to salvage the first three allegedly corrective disclosures by claiming that they "revealed downturns in travel retail sales," but "omit[ed] the effect of the *daigou* crackdowns."   Opp. 28.   This tacit admission that these disclosures revealed no new information about Defendants' reliance on *daigou* is fatal to Plaintiffs' loss causation theory.   Plaintiffs also do not even bother to respond to a key flaw regarding the remaining two disclosures:  The August 18, 2023 and November 1, 2023 disclosures both "relate to the impact of new *daigou* enforcement actions for two specific quarters; they say nothing about the rest of the Class Period."  Mot. 29.  Finally, they do not (and cannot) refute that the November 1 disclosure "did not reveal anything new to the market" because the August 18 disclosure "already discussed *daigou* enforcement and its likely effect on ELC as known at the time."  *Id.* at 29-30.

***Materialization of Risk Theory.***   Finally, and as Defendants pointed out, Plaintiffs cannot plead loss causation because the Complaint does "not allege that the effects of the crackdown on *daigou* were foreseeable to ELC at the time of the alleged misstatements."  *Id.* at 30.  Plaintiffs' conclusory non-response (Opp. 29) confirms there are no such allegations in the Complaint.

## II.    PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM

Plaintiffs' Section 20(a) fails for the same reasons as its Section 10(b) claim.  *See* Opp. 30.

### **<u>CONCLUSION</u>**

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

15

Dated: June 17, 2024                         Respectfully submitted,
       New York, New York


                                             /s/ Jonathan D. Polkes
                                             Jonathan D. Polkes
                                             Caroline Hickey Zalka
                                             WEIL, GOTSHAL & MANGES LLP
                                             767 Fifth Avenue
                                             New York, NY 10153
                                             Tel: (212) 310-8000
                                             Fax: (212) 310-8007

                                             *Counsel for Defendants The Estée Lauder
                                             Companies Inc., Fabrizio Freda, and Tracey
                                             T. Travis*

16