

James T. Christie
Partner
Labaton Keller Sucharow LLP
140 Broadway
New York, New York 10005
212.907.0781
JChristie@labaton.com

July 31, 2025

*Plaintiffs' motion is granted.  The parties should continue to meet and confer on the appropriate number of custodians and search terms, and the Court is confident that the skilled lawyers here can reach resolution on these issues.  If not, then the lead trial counsel on this case should appear in person, with their client representatives, also in person, on August 15, 2025 at 4pm ET and the Court will hash out any remaining issues. The Clerk of Court is directed to terminate the motion at Dkt. 85.*

**VIA ECF**

Hon. Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

*SO ORDERED.*

*Arun Subramanian, U.S.D.J.*
*Dated: August 6, 2025*

RE:   *In re the Estee Lauder Co., Inc. Securities Litigation, Case No. 1:23-cv-10669*

Dear Judge Subramanian:

    I write on behalf of Lead Plaintiffs in the referenced action, requesting that the Court resolve a discovery dispute for which the parties have reached an impasse.[1]  The dispute concerns the Relevant Time Periods ("RTPs"), including pre- and post-Class Period dates, for which Defendants must produce documents responsive to Lead Plaintiffs' Requests.[2] Specifically, Lead Plaintiffs request an Order compelling Defendants to produce responsive documents: (i) applying an RTP of January 1, 2020, through April 30, 2024; and (ii) applying a modified RTP of January 1, 2020 through February 28, 2025 to Request Nos. 7, 25, 26, and 33. Lead Plaintiffs tailored the proposed RTPs to appropriately capture documents responsive to the scope of the fraud, as alleged in the Complaint ("¶__," ECF No. 47) and sustained by the Court ("MTD Order," ECF No. 58).

    **A.     Discovery To Date**

    Since the parties' initial May 28 telephonic meet-and-confer to address Defendants' R&Os, Lead Plaintiffs have made their position clear concerning the relevance of pre- and post-Class Period discovery.  That position is straightforward and amply supported by the record:  the Complaint alleges that Defendants made false and misleading statements and omissions throughout the Class Period regarding Estée Lauder's undisclosed use of an illicit, gray-market sales practice prevalent in Asia known as *daigou* to inflate travel retail sales, which stems from Defendants' (i) concealed use of *daigou* in early 2020 as COVID-19 spread (¶¶81-104) and (ii) awareness throughout 2020 of the regulatory risks associated with *daigou* (¶¶77-90).  Moreover, Estée Lauder continued to report declines in its Asia travel retail segment, making post-Class Period discovery relevant to the allegations concerning *daigou*.

    Nevertheless, for over two months, Defendants have ignored Lead Plaintiffs' clear and compelling need for such documents, creating roadblocks at every turn.  Indeed, Defendants

---

[1] Lead Plaintiffs submit this Letter Motion pursuant to Paragraph 5 of Your Honor's Individual Practices in Civil Cases, S.D.N.Y. Local Rule 37.2, and the Federal Rules of Civil Procedure.

[2] The Class Period runs from February 3, 2022, through October 31, 2023, inclusive.  "Requests" refers to Lead Plaintiffs' April 21 First Requests for Production to Defendants. **Ex. A**. "R&Os" refers to Defendants' May 21 responses and objections to the Requests. **Ex. B**.



New York | Delaware | Washington, D.C.



July 31, 2025
Page 2

have produced **zero substantive documents** to date—even as their substantial completion deadline looms on September 24.  Defendants' primary tactic has been to force an ongoing letter writing campaign, causing more delay than compromise.  For example, Defendants repeatedly demanded that the parties set forth their written positions on many threshold issues—including the RTPs, definition of *daigou*, and simply providing full organizational charts—only to then thwart Lead Plaintiffs' efforts at compromise by seeking to drastically limit the scope of the Complaint by distorting its allegations.  All told, the parties: (i) conferred telephonically on May 28, June 2, 16, and July 3[3]; (ii) exchanged correspondence on June 6, 18, and 20, as well as July 1, 8, 15, 18, and 20 (**Exs. C-J**); and (iii) requested a Lead Trial Counsel conference, which occurred on July 23 at 11:00am E.T.[4]

Despite these efforts, Defendants' final position is not in the spirit of compromise or in line with the Complaint.  With respect to pre-Class Period discovery, Defendants have offered to search 2020 documents from just **two custodians** (the named Defendants) and proposed that all other discovery begin in 2021, **a full year after** the Complaint's allegations of increased *daigou* activity.  Defendants' offer on post-Class Period discovery is similarly unreasonable—to produce documents only for 90-days following the Class Period (January 30, 2024), despite continued relevant disclosures regarding Asia travel retail declines—all of which occurred after the Complaint was filed in this action.  Accordingly, the parties remain deadlocked.

**B.    Legal Standard**

Federal Rule of Civil Procedure 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense" and proportional to the needs of the case.  It is well-established in securities fraud actions that both pre- and post-class period information is relevant to the falsity and scienter of class period statements.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (both pre-and post- class period information relevant); *In re Allergan PLC Sec. Litig.*, 2020 WL 4034751, at *2 (S.D.N.Y. 2020) (resolving discovery dispute in favor of plaintiff and ordering RTP start two years prior to the class period).

**C.    Documents Beginning January 1, 2020 Are Discoverable**

As the Court has already recognized, Estée Lauder's reliance on *daigou* to drive sales "started before the class period." MTD Order at 9.  Specifically, the Complaint alleges that "***in 2020***, Lauder tapped into the back-alley, high-volume sales of the *daigou* grey market to cover up lagging sales growth resulting from the global COVID-19 pandemic."  ¶81.  This was despite a previous crackdown on *daigou* **in 2019**, and Estée Lauder's subsequent vow to "limit any risk of gray market around the world." ¶80.  As the Complaint alleges, Estée Lauder spent

---

[3] Multiple attorneys attended these calls, at 2:30pm, 2:30pm, 12pm, and 1:30pm E.T., respectively, with each lasting approximately 40 minutes to one hour, including James Christie and Jacqueline Meyers for Lead Plaintiffs and Laura O'Boyle, David Kusnetz, and Lydia Lulkin for Defendants.

[4] On the July 23 call (lasting approximately 40 minutes), Lead Trial Counsel for Lead Plaintiffs (myself, James Christie) and for Defendants (Barry Berke) acknowledged their impasse on the Relevant Time Periods and Lead Plaintiffs' intention to move the Court.



July 31, 2025
Page 3

the next four years touting its growth without revealing that *daigou* drove it.  *See* MTD Order at 8.  Accordingly, Defendants' actions in 2020 directly bear on Lead Plaintiffs' ability to prove falsity and scienter and are relevant for several reasons.

*First*, whether Estée Lauder relied on *daigou* sales in 2020 would demonstrate that Defendants' statements touting growth during COVID-19 while omitting to mention *daigou* were misleading.  *Compare* ¶108 (touting "incredible results . . . during the COVID Western lockdowns [in 2020]"); *with* MTD Order at 8 (Defendants' failure to mention that *daigou* drove growth was an actionable omission).  *Second*, documents from 2020 are relevant to establishing scienter.  For example, if Defendants discussed *daigou* as a driver of growth or observed that the 2019 crackdown affected sales, that would be probative of scienter when they omitted such practices in Class Period statements.  *In re Scholastic Corp*, 252 F.3d at 72 (pre-class period documents relevant to show basis for knowing statements were false).  *Finally*, there is no indication of any disproportionate burden given Company resources, the damages at issue, and that Defendants already offered to produce documents from 2021 to 2024.  *See Allergan*, 2020 WL at *2 (no undue burden in producing two years pre-class period).

      **D.**      **Post-Class Period Documents Are Discoverable**

Post-class period documents "may shed light on the allegations of false and misleading statements made during the class period."  *In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788687, at *2 (S.D.N.Y. 2013) (granting motion to compel).  Here, post-Class Period documents are likely to reveal information relevant to what Defendants knew about *daigou* and how it impacted Estée Lauder's financials after the Class Period.  Lead Plaintiffs' proposal is exceptionally modest—a mere six months post-Class Period for most Requests.  Additionally, Lead Plaintiffs seek an Order compelling production for a modified RTP through February 28, 2025, applicable to specific Requests (Nos. 7, 25, 26, and 33).  Since the Class Period, Estée Lauder has continued to report deteriorating sales trends in its Asia Travel Retail segment—the same type of disclosures which previously revealed Defendants' fraud.  *See* **Exs. K-M**.  Information concerning the cause of this continued decline, and the extent to which Defendants' sales collapse can be attributed to Estée Lauder's previous reliance on *daigou*, bears on whether Defendants' statements omitting mention of *daigou* during the Class Period were false or misleading, as well as loss causation.  *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) (post-class period disclosures consistent with alleged fraud).  Like the pre-Class Period documents, any burden of production would not be disproportionate.  *See* Section C, *supra*.

Accordingly, Lead Plaintiffs respectfully request an Order compelling Defendants to produce documents from the RTPs, or, as needed, an informal conference with the Court.

Very truly yours,

James T. Christie