# EXHIBIT O



**James T. Christie**
**Partner**
**Labaton Keller Sucharow LLP**
140 Broadway
New York, New York 10005
212.907.0781
JChristie@labaton.com

June 23, 2025

**VIA E-MAIL**

David M. Kusnetz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-2315
dkusnetz@gibsondunn.com

RE:     *In re the Estee Lauder Co., Inc. Securities Litigation, Case No. 1:23-cv-10669*

David:

I write in response to your letter dated June 12, 2025, concerning Lead Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Production, as discussed on our meet-and-confers on June 2 and 4. Lead Plaintiffs' positions set forth herein relate solely to Lead Plaintiffs' Responses and Objections to Defendants' First Set of Requests for Production. Lead Plaintiffs will continue to respond separately concerning Defendants' Responses and Objections to Lead Plaintiffs' discovery requests and reserve all rights with respect thereto.

### I.      Time Period for Lead Plaintiffs' Document Production

With respect to Defendants' Requests, Lead Plaintiffs agree to produce documents from February 3, 2022 through January 24, 2024.

### II.     Lead Plaintiffs' Responses to Definitions

### a.   Definition of "ELC Securities," "Security," and "Securities"

On June 16, Lead Plaintiffs provided Defendants with a list of search terms applicable to its forthcoming document production(s).  Lead Plaintiffs maintain their position that they will not produce materials concerning "any financial instrument that would meet the definition of 'ELC Securities' as defined in Defendants requests," given that Lead Plaintiffs' claims concern their purchases or sales of ELC's publicly traded Class A common stock.  If, upon review of Lead Plaintiffs' forthcoming production(s), Defendants find grounds to revisit this definition (i.e. the existence of short positions, if any), Lead Plaintiffs are available to meet-and-confer regarding the scope of this definition in relationship to the relevance of the claims or defenses at issue.

New York | Delaware | Washington, D.C.

 LKS

June 23, 2025
Page 2

### b.  Definition of Lead "Plaintiffs' Counsel"

As stated during our call, Labaton Keller Sucharow LLP and VanOverbeke, Michaud & Timmony P.C. are the law firms representing Lead Plaintiffs in connection with this matter.

### III.    Requests Where Lead Plaintiffs Agreed to Produce Documents

With respect to Request Nos 1, 2, 3, 4, 6, 10, 11, 16, 28, 37, and 38, Lead Plaintiffs agreed to search for and produce responsive, non-privileged documents, subject to their objections and to the extent such documents exist. Lead Plaintiffs' objections include those to the Requests "as written." Accordingly, Lead Plaintiffs stand by their objections and reserve all rights to limit their search and production in connection with these Requests in accordance therewith.

### IV.    Requests Where Lead Plaintiffs Provided Specific Responses

With respect to **Request No. 20**, Lead Plaintiffs will produce the applicable retention agreement(s) with counsel related to this action. With respect to **Request Nos. 23 and 27**, Lead Plaintiffs refer to their Responses and confirm that they are not aware of documents responsive to these Requests beyond the publicly available PSLRA Certifications cited in response to **Request No. 23** (*See* ECF Nos. 26-1 and 55-2).

### V.    Requests Where Lead Plaintiffs Offered to Meet and Confer

Lead Plaintiffs respond to each Request specified in Defendants' letter below.

### a.    Requests Where Defendants Contend the Parties Agreed to Scope

**Request No. 5**: As discussed on our calls, Lead Plaintiffs agreed to search for and produce non-privileged documents in their possession, custody, and control responsive to this Request, subject to their objections and to the extent such documents exist. As Lead Plaintiffs stated, each of Lead Plaintiffs delegated trading authority to their external investment manager(s) and, as a result, documents responsive to this Request, including those "considered in connection with Plaintiffs' investment in any ELC securities," are unlikely to be in Lead Plaintiffs' possession, custody, or control. Nevertheless, Lead Plaintiffs will produce such documents to the extent they exist and can be located following a reasonably diligent search.

**Request No. 7**: As discussed on our calls, Lead Plaintiffs take the position that documents to be produced in response to other Requests will be sufficient to identify the employees who were primarily responsible for providing investment-related services to Lead Plaintiffs. In further response to this Request, Lead Plaintiffs refer Defendants to their Amended Initial Disclosure Statement dated June 23, 2025.

 LKS

June 23, 2025
Page 3

**Request Nos. 12 and 13**: As discussed on our calls, Lead Plaintiffs stated that the information sought through these Requests could be incidentally contained within documents responsive to other Requests for which Lead Plaintiffs have agreed to produce. Accordingly, Lead Plaintiffs will produce such documents to the extent such documents exist. However, Lead Plaintiffs made clear that certain documents sought through these Requests, for example, documents related to other companies or stock, are not relevant and will not be searched for or produced.

**Request No. 14**: In response to this Request, which seeks documents "that reflect the investment managers' decisions regarding whether to sell or hold ELC Securities and the reasons for doing so," Lead Plaintiffs incorporate their response to **Request No. 5**, above, by reference.

**Request No. 29**: Lead Plaintiffs confirm that they will produce documents "concerning any damages or losses Plaintiff alleges that it or any putative class member has sustained in connection with the Challenged Statements and for which recovery is sought in this Action," in due course. Defendants' presumption that all such responsive materials will be produced "no later than" the deadline for filing Lead Plaintiffs' motion for class certification is misplaced.

**Request No. 34**: As stated on our calls, to the extent that Defendants are solely referring to Lead Plaintiffs and not, for example, individual employees or board members, Lead Plaintiffs do not believe that documents exist responsive to this Request concerning "any lawsuit in which a court or administrative tribunal has imposed a sanction on Plaintiff in the past five years," but have nevertheless agreed to search for and produce responsive documents, to the extent such documents exist and subject to their objections.

**Request No. 43**: Lead Plaintiffs agree that the parties will hold off on producing any data retention policies for the time being but reserve all rights to seek responsive documents concerning such materials in the future.

**Request No. 44**: Lead Plaintiffs agree to produce any documents "cited in or relied upon by Plaintiff in preparing its answers to all Interrogatories," subject to their objections and to the extent such documents exist.

**Request No. 45**: Lead Plaintiffs agree to produce any documents received from third parties in response to subpoenas issued in this action. However, Lead Plaintiffs will produce such documents within a reasonable time following receipt and do not agree to Defendants' proposed five-day period for production.

### b.  Requests Where Lead Plaintiffs Agreed to Confirm Information

Lead Plaintiffs respond to the six Requests specified in Defendants' letter as follows.

 LKS

June 23, 2025
Page 4

**Request No. 21**: Lead Plaintiffs are not aware of any other business, financial, or other relationship with Lead Plaintiffs' Counsel relevant to this action, beyond a legal relationship and monitoring relationship.

**Request No. 22**: Lead Plaintiffs are not aware of any donations or political contributions from Lead Plaintiffs' Counsel to any of the members of Lead Plaintiffs' Boards.

**Request No. 30**: Lead Plaintiffs are not aware of the existence of any organizational charts for the relevant Lead Plaintiff entities beyond what is publicly available. Lead Plaintiffs will not create organizational charts where none exist. Defendants' request that Lead Plaintiffs "produce documents reflecting the relationship between Plaintiffs and any affiliated entities, if any exist," is vague and duplicative of other requests. If Defendants wish to pursue this Request, Lead Plaintiffs request that Defendants state it with greater specificity and clarity.

**Request Nos. 31, 32, 33**: Lead Plaintiffs supplement the list of cases included in their PSLRA certifications to add the following lawsuits where Lead Plaintiffs sought to be class representative within the last three years.

### Macomb ERS

*Cleveland Bakers & Teamsters Pension Fund v. Lamb Weston Holdings, Inc.*, No. 1:24-CV-00282, (D. Idaho)
*Patel v. Lululemon Athletica Inc.*, No. 1:24-CV-06033 (S.D.N.Y.)
*Mohammed v. FMC Corporation*, No. 2:25-CV-00771 (E.D. Pa.)
*In re the Trade Desk, Inc. Securities Litigation*, No. 2:25-CV-01396 (C.D. Cal.)

### Macomb RHC

*Cleveland Bakers & Teamsters Pension Fund v. Lamb Weston Holdings, Inc.*, No. 1:24-CV-00282, (D. Idaho)
*Patel v. Lululemon Athletica Inc.*, No. 1:24-CV-06033 (S.D.N.Y.)
*Macomb County Retiree Health Care Fund v. PDD Holdings Inc.*, No. 1:24-CV-06881 (E.D.N.Y.)
*Mohammed v. FMC Corporation*, No. 2:25-CV-00771 (E.D. Pa.)
*In re the Trade Desk, Inc. Securities Litigation*, No. 2:25-CV-01396 (C.D. Cal.)

### Wayne ERS

*In re the Scotts Miracle-Gro Company Securities Litigation*, No. 2:24-CV-03132 (S.D. Ohio)
*Cronin v. Merck & Co.*, No. 2:2025-CV-01208 (D.N.J.)
*Wayne County Employees' Retirement System v. AppLovin Corporation*, No. 5:25-CV-03438 (N.D. Cal.)



June 23, 2025
Page 5

### c.   Requests for the Parties to Reach Agreement On

Lead Plaintiffs respond to Defendants' proposal to narrow the scope of the Requests specified in its letter. In so responding, Lead Plaintiffs reserve all rights.

### 1.   Revised Requests

**Request No. 8**: Defendants' revisions propose to limit this request "to only seek information on brokerage accounts that held ELC Securities." As noted herein and in its responses and objections, Lead Plaintiffs maintain the position that only their transactions in ELC common stock are relevant to this action and that Lead Plaintiffs' custodial banks maintained Lead Plaintiffs' equity holdings. Accordingly, Lead Plaintiffs do not find these revisions sufficient to clarify what documents Defendants are seeking and, as a result, do not narrow the scope of this request to cognizable relevant information.

**Request No. 9**: Lead Plaintiffs will produce Lead Plaintiffs' portfolio-monitoring agreements in response to this Request and reserve all rights to the extent Defendants' intend to seek additional documents in response thereto.

**Request No. 24**: Lead Plaintiffs maintain their position that the PSLRA certifications speak for themselves. With respect to Macomb County RHC and Wayne County ERS's certifications, Lead Plaintiffs are not aware of additional non-privileged documents besides the underlying transaction records. With respect to Macomb County ERS, Lead Plaintiffs disagree with Defendants' attempt to seek additional documents but are willing to meet-and-confer regarding this request specifically.

**Request Nos. 25 and 26**: Lead Plaintiffs cannot agree to Defendants' proposed revisions. Through these Requests, Defendants seek "all documents concerning any other potential lead plaintiffs in the Action or their counsel concerning Defendants, the Former Employees, or this Action," without justification as to their relevance. Defendants simply point out the proposal of adding an additional class representative, which was accompanied by a letter describing the reasons for such proposal. *See* ECF Nos. 34 and 36. Lead Plaintiffs also note that any such communications with Mr. Bonaminio or his counsel occurred at a time when Mr. Bonaminio and Lead Plaintiffs were jointly moving to be appointed plaintiffs in the Action and that any privileged or otherwise protected communications with Mr. Bonaminio or his counsel would be  protected by a common interest, joint prosecution or similar protection. Accordingly, Lead Plaintiffs will not produce any documents related to communications with Mr. Bonaminio or his counsel.

**Request No. 35**: Defendants' proposed alterations to the scope of this Request to include "document sufficient to identify any criminal investigations or proceedings involving Plaintiffs' corporate entities or affiliates" does little to alleviate the concerns raised on our meet-and-confers. Specifically, Defendants' Request does not explain the relevance to this

LKS

June 23, 2025
Page 6

action and fails to define "corporate entities or affiliates." Accordingly, Lead Plaintiffs cannot agree to the proposed scope at this time.  However, Lead Plaintiffs will agree to produce documents, to the extent they exist, if Defendants are willing to limit the Request to the entities appointed Lead Plaintiffs in this action.

**Request No. 36**: As this Request was not discussed on our meet-and-confers, Lead Plaintiffs require additional specificity with respect to the relevance of this Request, which seeks "documents sufficient to identify any other lawsuits in the past five years where Plaintiff retained one or more of the attorneys representing Plaintiffs in this action." Accordingly, Lead Plaintiffs cannot agree to the proposed scope without additional information, especially in light of the information provided in Lead Plaintiffs' PSLRA certifications. Lead Plaintiffs are willing to meet and confer with respect to this Request if Defendants can explain and narrow the types of lawsuits they are asking about.

## 2.  Unchanged Requests

**Request No. 15**: Lead Plaintiffs maintain their position with respect to this Request, which seeks "[a]ll documents concerning the challenged statements and alleged corrective disclosures." As stated on our meet-and-confers, Lead Plaintiffs reserve all rights, privileges, and immunities to the extent that this Request seeks information related to former employees and Lead Plaintiffs' investigation. Subject to their objections, to the extent that Lead Plaintiffs' search terms capture documents responsive to this Request, Lead Plaintiffs will produce non-privileged, responsive documents to the extent that such documents exist.

**Request No. 17**: Lead Plaintiffs maintain their position that this Request, which Defendants describe as seeking "documents concerning when and how Lead Plaintiffs first learned of the alleged events described in the Complaint," is overbroad, vague, and duplicative of other requests. Subject to their objections, to the extent that Lead Plaintiffs' search terms capture documents responsive to this Request, Lead Plaintiffs will produce non-privileged, responsive documents to the extent that such documents exist.

**Request No. 18**: Lead Plaintiffs maintain their position with respect to this Request, which seeks "[a]ll documents relied on in connection with filing the Amended Complaint." As stated on our meet-and-confers, Lead Plaintiffs reserve all rights, privileges, and immunities to the extent that this Request seeks information related to former employees and Lead Plaintiffs' investigation. Subject to their objections and excluding ELC's publicly available SEC filings and earnings call transcripts, Lead Plaintiffs will produce non-privileged, responsive documents to the extent such documents exist, including, for example, publications related to *Daigou*.

**Request No. 19**: Lead Plaintiffs maintain their position with respect to this Request, which seeks "[a]ll documents produced or provided by third parties to Plaintiff or Plaintiff's counsel regarding the Defendants, the Former Employees, alleged misstatements and



June 23, 2025
Page 7

corrective disclosures, or any allegations the Complaint." As stated on our meet-and-confers, Lead Plaintiffs reserve all rights, privileges, and immunities to the extent that this Request seeks information related to former employees and Lead Plaintiffs' investigation. Subject to their objections, to the extent that Lead Plaintiffs' search terms capture documents responsive to this Request, Lead Plaintiffs will produce non-privileged, responsive documents to the extent that such documents exist.

### 3.  Requests Concerning Former Employees

Lead Plaintiffs appreciate Defendants' offer to hold in abeyance their Requests for production of any documents "received from" the Former Employees in response to Request Nos. 15, 18, 19, 39, 40, 41, and 42, conditioned on Lead Plaintiffs' disclosure of the three Former Employees described in the Complaint (*see* ECF No. 47 ¶¶ 54-56). While Lead Plaintiffs understand Defendants' arguments with respect to disclosure of the names of the three Former Employees described in the Complaint, Lead Plaintiffs have concerns that Defendants' proposal does not propose to hold in abeyance other documents besides those "received from" the Former Employees.

Accordingly, in responding, Lead Plaintiffs make clear that their disclosure of the Former Employees' names and acceptance of Defendants' proposal in no way constitutes an agreement to produce documents related to or concerning the Former Employees identified in the Complaint or other former employees who are not identified in the Complaint. Critically, Lead Plaintiffs' identification of the three Former Employees described in the Complaint in its confidential Amended Initial Disclosure Statement, dated June 23, 2025, shall not constitute a waiver of any rights, privileges, or immunities in connection with Defendants' Requests. As discussed on our meet-and-confers, should Defendants seek documents related to the three Former Employees referenced in the Complaint, Lead Plaintiffs reserve all rights to negotiate the appropriate scope of such requests.

Lead Plaintiffs remain amenable to meeting and conferring with respect to any remaining open issues and reserve all rights.

Very truly yours,

James T. Christie

cc:      All counsel of record (via E-mail)