# EXHIBIT P

## Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRIDGETT MCALICE, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,      No. 23-cv-10669-AS

      v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO
FREDA, and TRACEY T. TRAVIS,

        Defendants.
-------------------------------------------------------x
WEST VIRGINIA LABORERS PENSION TRUST FUND,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,      No. 24-cv-00468-AS

      v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO
FREDA, and TRACEY T. TRAVIS,

        Defendants.
-------------------------------------------------------x

VIDEOTAPED DEPOSITION OF STEPHEN SMIEGEL

140 Broadway

New York, New York

November 6, 2025
8:43 a.m.

Reported By:
Cheryll Kerr, CSR
Job No. J13703114

## Page 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRIDGETT MCALICE, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,      No. 23-cv-10669-AS

      v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO
FREDA, and TRACEY T. TRAVIS,

        Defendants.
-------------------------------------------------------x
WEST VIRGINIA LABORERS PENSION TRUST FUND,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,      No. 24-cv-00468-AS

      v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO
FREDA, and TRACEY T. TRAVIS,

        Defendants.
-------------------------------------------------------x

VIDEOTAPED DEPOSITION OF STEPHEN SMIEGEL, held at
the offices of Labaton Keller Sucharow, LLP, located at
140 Broadway, New York, New York, before Cheryll Kerr,
CSR, a Certified Shorthand Reporter and a Notary Public,
on Thursday, November 6, 2025 at 8:43 a.m.

## Page 3

APPEARANCES:
COUNSEL FOR PLAINTIFF:
LABATON KELLER SUCHAROW, LLP
BY:  JAMES CHRISTIE, ESQ.
BY:  GRACE HARMON, ESQ.
BY:  GUILLAUME BUELL, ESQ.
BY:  JACQUELINE MEYERS, ESQ.
140 Broadway
New York, NY  10005
Phone:  (212) 907-0700
Email:  jchristie@labaton.com
Email:  gharmon@labaton.com
Email:  gbuell@labaton.com
Email:  jmeyers@labaton.com

   - and -

VANOVERBEKE, MICHAUD & TIMMONY, PC
BY:  ROBERT ABB, ESQ.
79 Alfred Street
Detroit, MI  48201
Phone: (313) 578-1200
Email:  rabb@vmtlaw.com

COUNSEL FOR DEFENDANTS:

GIBSON, DUNN & CRUTCHER, LLP
BY:  DAVID KUSNETZ, ESQ.
BY:  MEGAN MURPHY, ESQ.
BY:  HARLEY BELMONT, ESQ.
200 Park Avenue
New York, NY  10166-0193
Phone:  (212) 351-2657
Email:  dkusnetz@gibsondunn.com
Email:  mmurphy@gibsondunn.com
Email:  hbelmont@gibsondunn.com

Also Present:

Charlie Bowman, Videographer
Diane Konz, Estee Lauder

## Page 4

INDEX

| EXAMINATION BY | PAGE |
| --- | --- |
| Direct examination by Mr. Kusnetz | 10 |
| Cross-examination by Mr. Christie | 379 |

EXHIBITS

MACOMB

| FOR ID | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 1 | Defendants' Notice of Deposition to Lead Plaintiff Macomb County Employees' Retirement System | 17 |
| Exhibit 2 | Defendants' Notice of Deposition to Lead Plaintiff Macomb County Retiree Health Care Fund | 18 |
| Exhibit 3 | Memorandum of Law in Support of the Motion of the Michigan Funds for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel | 131 |
| Exhibit 4 | Multi-page document entitled "Certification," filed 2/5/24 | 152 |

(Continued)



Page 5

EXHIBITS (Cont.)

WAYNE COUNTY

| FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 5 | Lead Plaintiffs' Amended Initial Disclosure Statement Pursuant to Rule 26(a)(1) | 171 |
| Exhibit 6 | Lead Plaintiff Macomb County ERS' Responses and Objections to Defendants' First Set of Interrogatories | 185 |
| Exhibit 7 | Lead Plaintiff Macomb County RHC's Responses and Objections to Defendants' First Set of Interrogatories | 186 |
| Exhibit 8 | Copy of Rule 33 to Federal Rules of Civil Procedure | 193 |
| Exhibit 9 | Printout of bio of Dan DiDomenico from website of Dakota.com, dated 11/3/25 | 216 |

(Continued)

Page 6

EXHIBITS (Cont.)

MACOMB

| FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 10 | Email chain with top email dated 12/2/2022 from Mike Holycross to Valerie Schave, Bates ESTEELAUDER_MACOMB_13920 through ESTEELAUDER_MACOMB_14042 | 226 |
| Exhibit 11 | Printout from website of ABS Global Equity, dated 11/5/2025 | 249 |
| Exhibit 12 | Document entitled "Macomb County Employees' Retirement System," ESTEELAUDER_MACOMB_621 through 633 | 258 |
| Exhibit 13 | Document entitled "Minutes of the Retirement Board, Thursday, January 11, 2024," Bates ESTEELAUDER_MACOMB_722 through ESTEELAUDER_MACOMB_725 | 259 |

(Continued on the next page)

Page 7

EXHIBITS (Cont.)

MACOMB

| FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 14 | Document entitled "Watch List - Checklist, Edgewood Large Cap Growth" on AndCo letterhead, Bates MARINER_3173 | 334 |
| Exhibit 15 | Lead Plaintiffs' Notice of Errata, filed 9/16/24 | 343 |
| Exhibit 16 | Letter dated 2/16/24 from Francis P. McConville and Adam M. Apton of Labaton to Honorable Arun Subramanian, filed 2/16/24 | 364 |

(Continued on the next page)

Page 8

INDEX (Cont.)

REQUESTS FOR INFORMATION

| DESCRIPTION | PAGE |
|---|---|
| Production of documents produced by counsel to Mr. Smiegel to prepare for his deposition | 52 |
| Production of investment policy statement revised as of January 2024 | 262 |
| Production of all records of Macomb County's ERS purchases and sales of ELC securities after the class period | 362 |

***      ***      ***



Page 25

S. Smiegel

policy, the notice, and then two other documents -- sorry -- three other documents?

A.   Yes.

Q.   Okay.  This is why I'm a lawyer.  I'm not good at math.  And were the other three documents -- were they emails?

MR. CHRISTIE:  Objection, asked and answered.

BY MR. KUSNETZ:

Q.   Please.

A.   No, they are hard copy documents (indicating).  They were out of the case file documents.

Q.   Underst- --

A.   They were not -- they were not emails.

Q.   Meaning not printed emails, correct?

A.   Not printed emails, correct.

Q.   Okay.  So like a policy kind of document?

MR. CHRISTIE:  Objection, asked and answered.

BY MR. KUSNETZ:

Q.   Please answer.

A.   Restate, please?

Q.   So like a policy kind of document?

A.   Yes.

Page 26

S. Smiegel

Q.   Okay.  So if we come upon that document during the course of this deposition, will you identify it to me as one --

A.   Yes.

Q.   -- that you reviewed?  Thank you.

Okay, and then when you met with counsel, did they provide you with documents to help prepare you for this deposition?

MR. CHRISTIE:  I'm just going to object on privilege.  Just make sure you're not telling him about anything specifically that we talked about.

THE WITNESS:  Understood.

MR. CHRISTIE:  Okay, great.  Just making sure you're aware.

BY MR. KUSNETZ:

Q.   My question is really a "yes" or "no" question.  Did counsel show you documents to help you prepare for your deposition?

A.   Yes.

Q.   Okay.  Did they email you documents to prepare for your deposition?

A.   Not that I recall.

Q.   Okay.  Did they courier documents to you?

Page 27

S. Smiegel

A.   Yes.

Q.   Okay, and did you review every document that they sent to you to prepare for your deposition?

A.   Not every document.

Q.   Okay.  How many documents were you sent?  Do you know?

A.   In the 50s.

Q.   In the 50s?

A.   Yes.  55 or 56, I believe.

Q.   Okay.  That must have been a fun delivery to get.

A.   It was a large binder.

Q.   And of those 50 documents, how many do you estimate that you reviewed with counsel to prepare you for this deposition?

A.   Approximately half.

Q.   About 25?

A.   25 to 30.

Q.   Okay, and did those documents include emails?

A.   There was one email in that binder of documents.

Q.   One email out of the -- out of the 50?  Yes or no?

A.   I think there were two.

Page 28

S. Smiegel

Q.   Two emails?

A.   Two emails.

Q.   Okay, and did you go over those two emails with counsel in preparation for your deposition, "yes" or "no"?

A.   Yes.

Q.   Okay, and what were those emails?

A.   There was an email --

MR. CHRISTIE:  I'm just going to object to the extent that -- you know, we talked about our impressions of what the emails were or anything like that, you got to keep that in the privilege.

But -- you know, if you recall -- you know, who the recipients were on the email or anything like that, that's okay.

THE WITNESS:  I don't recall, as I sit here, who the recipients of those emails were.

BY MR. KUSNETZ:

Q.   Okay.  Were you a recipient of those emails?

A.   I don't recall.

Q.   Okay, and in terms of those emails, what was the content?  What was the general content of those emails?



Page 41

S. Smiegel

A.   Once.

Q.   When was that?

A.   That was at the airport when -- we flew on the same flight here.

Q.   Okay, and did you know him before?

A.   I knew him from the Michigan Association of Public Employee Retirement System membership group, so I would see him occasionally at conferences.

Q.   So you knew who he was?

A.   I knew who he was, yes.

Q.   Okay, and it was -- was it a chance encounter at the airport?

MR. CHRISTIE:  Objection.

THE WITNESS:  We were on the same flight.

BY MR. KUSNETZ:

Q.   Okay.  Did you coordinate with him on the flight?

A.   No.

Q.   Okay.  Did you sit next to him on the flight?

A.   No.

Q.   Who had better seats?

MR. CHRISTIE:  Objection, relevance.

MR. KUSNETZ:  Withdrawn.

Page 42

S. Smiegel

BY MR. KUSNETZ:

Q.   And that was --

But that's the only time you interfaced -- you, sir -- interfaced with an individual from Wayne County with respect to this litigation --

A.   Yes.

Q.   -- correct?

Okay, and again, when I say "Wayne County," I'm referring to the Retirement System.

MR. CHRISTIE:  I just also just want to make it clear that you're speaking about Mr. Smiegel, individually --

MR. KUSNETZ:  Yes.

MR. CHRISTIE:  -- and not the Pension Fund.

MR. KUSNETZ:  Yeah.  I made that clear.  I made that clear in my question.

MR. CHRISTIE:  Great.

BY MR. KUSNETZ:

Q.   Now I'm going to switch over to Macomb County, okay?

A.   Understood.

Q.   Who at -- who, if anyone, at Macomb County has interfaced with folks at Wayne County about this

Page 43

S. Smiegel

litigation?

A.   I believe the chairs of the two boards would have interfaced with Wayne County when the two -- three entities were in the decision-making process to be co-lead plaintiffs.

Q.   Gotcha.  Anyone else?

A.   Not to my knowledge.

Q.   And who at Wayne County did they interface with?

A.   I don't know.

Q.   Okay.  Did you ask them in preparation for this deposition?

A.   No.

Q.   Okay.  Did you do anything to ascertain who at Wayne County liaised with Macomb County in preparation for this deposition?

A.   No.

Q.   Okay, and is it common for Macomb County and Wayne County to work together in the ordinary course of business separate and apart from this litigation?

A.   No.  I would say no.

Q.   Okay.  Do you interface frequently together?

MR. CHRISTIE:  Objection.

Page 44

S. Smiegel

BY MR. KUSNETZ:

Q.   And that's -- that --

A.   Individually --

Q.   No, I mean county to county.

A.   Not to my knowledge.

Q.   Okay, and what about individually?

Folks -- individuals at each entity interfacing in general?

A.   I can only speak for myself --

Q.   Sure.

A.   -- and that would be at these conferences.

Q.   Understood.  Okay.  So the fact that --

MR. KUSNETZ:  Sorry.  Withdrawn.

BY MR. KUSNETZ:

Q.   Wayne County and Macomb County are neighboring counties, correct?

A.   They are.

Q.   Okay.  Macomb County is the Greater Detroit area?  Is that fair to say?

A.   Pardon?

Q.   The Greater Detroit area?  Macomb?

A.   Yes?

Q.   What's the best way to describe it?

A.   Southeast Michigan.



Page 49

S. Smiegel

A.   No.

Q.   Okay.  Have you ever seen what the rule says?

A.   No.

Q.   Okay.  Are you aware that Rule 30(b)(6) states "The persons designated must testify about information known or reasonably available to the organization"?

A.   Yes.

Q.   You're aware it says that?

A.   Oh.  I was made aware by our counsel.

Q.   Okay.

A.   I --

Q.   You have --

A.   I have not read that --

Q.   Before?

A.   -- particular --

Q.   Okay, but me saying that doesn't sound out of the blue, correct?

A.   No.

MR. CHRISTIE:  Objection.

MR. KUSNETZ:  Okay.

MR. CHRISTIE:  Calls -- calls for a legal conclusion, but you can continue.

Page 50

S. Smiegel

BY MR. KUSNETZ:

Q.   Okay.

A.   No, it doesn't sound out of left field.

Q.   Okay, so when you were --

So when you were preparing for this deposition, you understood that that was a requirement, correct?

A.   Yes.

Q.   Okay, and did you also understand that unless I ask you specifically, as Mr. Christie has been pointing out, you're not here to give your personal opinions, Mr. Smiegel, correct?

A.   Correct.

Q.   Unless I ask you for them, correct?

A.   Correct.

Q.   You're here to give the position of these two Macomb entities on the topics that have been enumerated, correct?

A.   Understood.

Q.   Okay.

(Pause.)

BY MR. KUSNETZ:

Q.   So let's talk a little bit about your preparation.  So you had these meetings with counsel, correct?

Page 51

S. Smiegel

MR. CHRISTIE:  Objection, asked and answered.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   Yes?  Okay, and you printed documents for your flight -- for your hour and 15-minute flight here, correct?

MR. CHRISTIE:  Objection, asked and answered, and misstates the testimony.  You can answer.

THE WITNESS:  Yeah, I reproduced documents from the binder that was provided.

BY MR. KUSNETZ:

Q.   Oh, you printed from the binder?

A.   Yes, I copied.  Yes, I reproduced.  I didn't have to have the whole binder open on the plane.

Q.   Was that the environmental email that we're talking about?  Like your very environmentally friendly --

MR. CHRISTIE:  Objection, misstates the testimony, irrelevant.

BY MR. KUSNETZ:

Q.   Yeah, so --

A.   So I reproduced documents that were provided

Page 52

S. Smiegel

by counsel.

Q.   Under- -- understood.  Do you have those with you today?

MR. CHRISTIE:  Objection.

BY MR. KUSNETZ:

Q.   "Yes" or "no"?

A.   Yes.

Q.   Okay.  Do the -- do you have them in this room?

A.   No.

MR. KUSNETZ:  Okay.

We would like production of those documents during the next break, please.

MR. CHRISTIE:  We can talk about that.  I don't think we're going to be producing them to you, but we can have that discussion off the record.

MR. KUSNETZ:  Okay.  The witness testified he reviewed them in preparation for this deposition.  He does not remember the exact contents of all of those documents.

He remembers some of them, so as a result, we are entitled to know what he relied on to prepare himself for this deposition.  We



Page 53

S. Smiegel

request production of those documents during the next break.

MR. CHRISTIE: Okay. We can talk about it during the break.

BY MR. KUSNETZ:

Q. You didn't do anything wrong. That's just lawyer talk.

So in terms of your preparation, did you, yourself, review any documents that were not in the big binder provided to you by counsel?

A. No.

Q. Okay, so that was the universe?

A. Yes.

Q. Okay. Did you --

And this is a "yes" or "no" question. Did you ever request additional documents to prepare yourself from counsel --

A. No.

Q. -- "yes" or "no"? No? Okay.

So you were satisfied with the documents that you were provided to be reasonably prepared for this deposition, correct?

A. Yes.

Q. Okay, and did you speak to anyone besides

Page 54

S. Smiegel

counsel in preparation for this deposition --

A. No.

Q. -- "yes" or "no"?

A. No.

Q. Okay, so you didn't speak to Mr. Haugh?

A. No.

Q. You didn't speak to Mr. Deldin?

A. No.

Q. You didn't speak to Mr. Grysko?

A. No.

MR. CHRISTIE: Objection, misstates the testimony.

BY MR. KUSNETZ:

Q. I -- I -- my question was in preparation for this deposition.

A. Correct.

Q. Right.

A. No.

Q. Okay, so when you spoke to Mr. Grysko in the airport --

A. Correct.

Q. -- you did not discuss the substance of any of the topics that --

A. No.

Page 55

S. Smiegel

Q. -- were in these notices?

A. No.

Q. Okay. More of just a friendly "Look what we got ourselves into" kind of thing?

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

BY MR. KUSNETZ:

Q. I'll ask it. More like niceties?

A. Yes.

Q. Okay. But you didn't speak with anyone else at either Macomb entity in preparation for this deposition, correct?

A. Correct.

Q. Sorry. Let me rephrase it.

So fair to say you did not speak with anyone at either Macomb entity in preparation for this deposition --

A. No.

Q. -- correct? Just the lawyers?

A. Correct.

Q. Okay, and was there in-house counsel for the county present in any of your discussions with your external lawyers?

Page 56

S. Smiegel

MR. CHRISTIE: Objection, vague as to the term "in-house counsel."

BY MR. KUSNETZ:

Q. Do you understand what I mean by "in-house counsel"?

A. I believe I did.

Q. Okay.

A. I -- we have a Corporation Counsel office.

Q. Yep.

A. Member -- no member of that office was present in my meetings with VMT or Labaton in preparation.

Q. And have you conferred with the Corporation Counsel in connection with this litigation?

A. No.

Q. Has Macomb County conferred with the Corporation Counsel in connection with this litigation?

A. Not to my knowledge.

Q. Okay, and what --

What did you do to be able to say "Not to my knowledge" in response to that question?

A. Really, nothing. I just -- I don't know. I guess "maybe" is a better answer.

Q. Okay.



Page 93

S. Smiegel

A.    The board.

Q.    Does Mr. Holycross attend board meetings?

A.    Yes.

Q.    For both?

A.    Yes.

Q.    And during the class period, who did the Macomb County funds employ as investment managers?

MR. CHRISTIE:  Objection, relevance.  You can answer.

THE WITNESS:  We have a number of investment managers.

BY MR. KUSNETZ:

Q.    How many?

A.    Approximately 30 to 35.

Q.    Okay, and of those investment managers, which one invested the common stock of Estee Lauder that's at issue in this particular case?

A.    Edgewood Management.

Q.    Okay.  Did you have any role in selecting Edgewood Management?

A.    No.

Q.    Who at Macomb had a role in selecting Edgewood Management?

A.    The board or the boards.

Page 94

S. Smiegel

Q.    Okay.  Were you present for the meetings that select- -- in which it was decided to retain Edgewood?

A.    No.

Q.    Why not?

A.    I believe we appointed or Edgewood was appointed in 2009.  I was -- I was still an accounting manager at that point, so I didn't go to the meetings.

Q.    Understood, and have they been employed continuously since 2009?

A.    Yes.

Q.    So you mentioned the -- the board for each county.  How was the board appointed for each county?  How was it constituted?

A.    The board -- the board of the Pension Fund --

Q.    Sorry, yeah.  The board -- the board of each fund for the county.

A.    Right.  The board of the Pension Fund is composed of the chairman of the Board of Commissioners or their designee; the county executive or their designee; the county treasurer or their designee; the department head for the Department of Roads; and three employee representatives elected by the active participants of the plan.

The Retiree Healthcare Fund board is composed of

Page 95

S. Smiegel

the chairman of the board or their designee; the county executive or their designee; the county treasurer or their designee; one additional member appointed by the county executive, and one other member appointed by the entire Board of Commissioners.

Q.    Understood.  There are some members of each board that --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.    For these boards, there are some members on the board that serve on both --

A.    Correct.

Q.    -- is that correct?

A.    Correct.

Q.    Okay.  Do you know who those folks are?

A.    It can vary, but typically it's been the county executive's designee and the treasurer's designee and the chairman of the board's designee.

Q.    Okay.  So looking at the Pension Fund, during the relevant period, were the members of the Pension Fund's board Mark Deldin, Brian Santo, Harold Haugh, Lawrence Rocca, Ken Willis, Daryn Santini, Michael Grix; and then as nonvoting members, Wendy Fisher, you, Mr. Smiegel, and Corporation Counsel Schapka?

Page 96

S. Smiegel

A.    To the best of my recollection, yes.

Q.    Okay, but as corporate representative to Macomb County, does that sound correct?

A.    It does sound correct.

Q.    Okay.  And if I'm missing someone, you would tell me, correct?

A.    Correct.

Q.    And looking at the Retirement Fund -- sorry -- the Healthcare Fund, that's Mr. Haugh, Mr. Rocca, Andrew McKinnon, you, Mr. Smiegel, and Joseph Sabatini; is that correct?

A.    Mr. McKinnon is more -- a more recent addition.

Q.    Okay.

A.    Prior to his appointment, it was Mr. Deldin.

Q.    Mark Deldin?

A.    Yes.

Q.    That's helpful to know.  So Mark Deldin was on both boards?

A.    Yes.

Q.    Okay.

(Pause.)

BY MR. KUSNETZ:

Q.    And isn't it true that not a single person on



Page 165

S. Smiegel

questions regarding Topics 4 and 5, did you review documents from any investment manager apart from Edgewood? "Yes" or "no"?

A. No.

MR. CHRISTIE: Sorry. Let me get my objection. Objection, foundation. You can answer.

THE WITNESS: No.

BY MR. KUSNETZ:

Q. Okay. So you limited your review to Edgewood's financial information, correct?

MR. CHRISTIE: Same objection. You can answer.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. In preparation for testifying to Topics 4 and 5, you did not ask for records from other investment managers, correct?

MR. CHRISTIE: Objection, vague. You can answer.

THE WITNESS: No.

BY MR. KUSNETZ:

Q. Meaning "that's correct," right?

A. Correct.

Page 166

S. Smiegel

Q. And in preparation for testifying to Topics 4 and 5 for this deposition, you did not seek to speak with other investment managers beyond --

Actually, you did not seek to speak with investment managers, correct?

MR. CHRISTIE: Same objections. You can answer.

THE WITNESS: No. Correct.

BY MR. KUSNETZ:

Q. And that means --

That includes you did not seek to speak with Edgewood, right?

MR. CHRISTIE: Same objections.

THE WITNESS: Correct.

BY MR. KUSNETZ:

Q. You didn't ask and they said no, meaning counsel, right?

A. Correct.

(Pause.)

BY MR. KUSNETZ:

Q. To date, how time has Macomb County spent dealing with this case since its inception?

MR. CHRISTIE: Objection, foundation. You can answer, if you know.

Page 167

S. Smiegel

THE WITNESS: I don't know exactly.

BY MR. KUSNETZ:

Q. Can you give me a ballpark?

A. No.

Q. Only -- is it fair to say that the time Macomb County spends on this litigation is limited to the phone calls that it has with counsel?

MR. CHRISTIE: Objection, misstates testimony.

THE WITNESS: Restate the question, please?

BY MR. KUSNETZ:

Q. Is it fair to say that the time Macomb County spends on this litigation is only limited to the phone calls that it has with counsel or the updates it receives from VMT at board meetings?

A. Correct.

Q. So beyond those phone calls and those meetings, Macomb County isn't doing anything with respect to this litigation, correct?

MR. CHRISTIE: He's sitting here today, but okay. You can go.

THE WITNESS: Correct.

Page 168

S. Smiegel

BY MR. KUSNETZ:

Q. And Topic 14 of Exhibit 1 is "All facts and circumstances concerning your role in this action." Do you see that?

A. Yes.

Q. Okay, so what did you do to prepare for this deposition to answer questions regarding the Macomb County's role in this action?

MR. CHRISTIE: Same standing instruction that we discussed earlier.

THE WITNESS: Ongoing regular communications with legal counsel.

BY MR. KUSNETZ:

Q. When you say "ongoing regular communications with legal with legal counsel" to prepare for this deposition, that's limited to those three prep sessions, correct?

A. Personally, yes.

Q. Yeah, because I'm asking you.

A. Yeah. Personally?

Q. Yes.

A. Yes.

Q. Okay. Right, so you understood that you had to be prepared to answer questions regarding facts and



STEPHEN SMIEGEL
McALICE vs ESTEE LAUDER CO.

November 06, 2025
177–180

Page 177

S. Smiegel

are disclosed?

A.   Correct.

Q.   And for Wayne County, it's Mr. Grysko.  Do you see that?

A.   Yes.

Q.   Okay.  To Macomb County's knowledge, is there anyone else at Macomb County who may possess discoverable information relating to the matters alleged in the complaint?

A.   I would say Ms. Schave.

Q.   Anyone else?

A.   No.

(Pause.)

BY MR. KUSNETZ:

Q.   Going to the next page, do you see there's a list of external investment managers?

A.   Yes.

Q.   And for the two Macomb County funds, Edgewood Management, LLC is listed, correct?

A.   Yes.

Q.   And Edgewood Management, LLC was the investment manager who traded ELC common stock on behalf of the Funds during the class period, correct?

A.   Correct.

Page 178

S. Smiegel

Q.   Do you see the contact is "Dan DiDomenico, partner"?

A.   Yes.

Q.   Who is Dan DiDomenico?

A.   A partner at Edgewood, as the document indicates.

Q.   Okay, and I'm asking you that question in connection with your role as corporate representative.  Is your answer the same?

A.   Yes.

Q.   For Wayne County, they also list Edgewood but also a different one, Winslow.  Do you see that?

A.   Yes.

Q.   Okay.  Now, when Macomb County is considering investments of its assets, what entities does it consult with in connection with making investment decisions?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  The investment consultant.

BY MR. KUSNETZ:

Q.   Okay, and looking at page 4, are any of the investment consultants for Macomb County disclosed?

A.   No.

MR. CHRISTIE:  Objection, calls for a legal conclusion, but you can answer.

Page 179

S. Smiegel

THE WITNESS:  No.

BY MR. KUSNETZ:

Q.   And I'll ask it in a different way.

Do you see on this document the names of any of the Macomb County investment consultants during the class period?  "Yes" or "no"?

A.   No.

Q.   Who were the Macomb County investment consultants during the class period?

MR. CHRISTIE:  Objection, asked and answered, and --

BY MR. KUSNETZ:

Q.   From --

MR. CHRISTIE:  Asked and answered.

BY MR. KUSNETZ:

Q.   Please.

A.   AndCo/Mariner.

Q.   AndCo and then Mariner after Mariner took it over after it changed names, correct?

A.   Correct.

Q.   Okay.  So AndCo, Mariner, and who was the gentleman who was the relationship between Macomb County and AndCo/Mariner?

MR. CHRISTIE:  Objection, asked and

Page 180

S. Smiegel

answered.  You could answer.

THE WITNESS:  Mike Holycross.

BY MR. KUSNETZ:

Q.   Is Mike Holycross identified here?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  No.

BY MR. KUSNETZ:

Q.   Is Mike Holycross -- does his name --

Does Mike Holycross's name appear here under the lead plaintiffs' disclosures in paragraph 6?

A.   No.

Q.   And this case relates to investments in Estee Lauder made by the Macomb County entities, correct?

A.   Correct.

Q.   And it would be Mike Holycross, AndCo and Mariner who would have information relating to investments that the Macomb County entities made during the class period, correct?

MR. CHRISTIE:  Objection, foundation.  You can answer.

THE WITNESS:  Clarify your question if you would, please.



Page 181

S. Smiegel

BY MR. KUSNETZ:

Q.   Do you want me to restate the question?

A.   Yes.

Q.   Would that be easier?

A.   Yes.

Q.   Okay, and it would be Mike Holycross, AndCo, and Mariner that would have information concerning Macomb County's investments during the class period, correct?

MR. CHRISTIE:  Same objections.  You can answer.  Of.

THE WITNESS:  Can you define "information" in the context of your question?

BY MR. KUSNETZ:

Q.   What do you think it means that's confusing to you?

A.   Mike Holycross and his office would have information about the components of the portfolio, in the stock holdings in the portfolio, in the performance in the portfolio, and so that's -- yeah, that's how I interpret your question.

Q.   Okay, and is it your testimony that my question is different from that?

MR. CHRISTIE:  Objection, vague, but you

Page 182

S. Smiegel

can answer.

THE WITNESS:  What I wasn't sure of is whether you were asking whether Mariner would have transactional data relative to all the holdings in their -- in the Edgewood portfolio.

BY MR. KUSNETZ:

Q.   That wasn't my question.  Does that clear it up for you?

A.   Yes.

Q.   Okay, so I am going to re-ask my question, then.

It would be Mike Holycross, AndCo, and Mariner that would have information concerning Macomb County's investments during the class period, correct?

A.   Yeah.

MR. CHRISTIE:  Same objection.  Give me a second to answer, please --

THE WITNESS:  Yeah.  Sorry.

MR. CHRISTIE:  -- to object.  Thank you.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And again, when I use the word "information," I'm taking it from paragraph 6 itself.  Do you see where

Page 183

S. Smiegel

it says "The following list is a" --

"The following is a list of lead plaintiffs' representatives and agents who may possess discoverable information relating to certain matters alleged in the complaint."  Do you see that?

A.   I do.

Q.   Okay, and with respect to Mike Holycross, AndCo, and Mariner, isn't it true that they would have information concerning Macomb County's investments in Estee Lauder during the class period, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  They would have information relative to Edgewood's investment in Estee Lauder in the context of -- you know, how much holdings there are in -- you know, percentages of the portfolio.

BY MR. KUSNETZ:

Q.   In Estee Lauder, correct?

A.   Yes.

Q.   So fair to say this disclosure should have included them, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

Page 184

S. Smiegel

THE WITNESS:  Restate the question, please?

BY MR. KUSNETZ:

Q.   So fair to say that these amended initial disclosures are incomplete as to not disclosing the investment consultants who assisted Macomb County in connection with its investments during the class period?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  I guess I'm not understanding the question.  I'm sorry.

BY MR. KUSNETZ:

Q.   Well, it was --

For example, when we went and talked about folks at Macomb County who have discoverable information, it showed you, Mr. Deldin, and Mr. Haugh, but you said it's missing Ms. Schave, correct?

MR. CHRISTIE:  Objection, misstates testimony.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And so I'm saying for this list here in paragraph 6 it's also missing the investment consultant, correct?



Page 185

S. Smiegel

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Yes, it's missing the investment consultants.

BY MR. KUSNETZ:

Q.    So it's fair to say that this disclosure here by lead plaintiffs in paragraph 6 is incomplete as to those representatives and agents of Macomb County who may possess discoverable information relating to certain matters alleged in the complaint?

MR. CHRISTIE:  Objection.

BY MR. KUSNETZ:

Q.    "Yes" or "no"?

MR. CHRISTIE:  Objection, calls for a legal conclusion, asked and answered.  You can answer.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.    Now, I would like to show you what's going to be marked as Macomb Exhibit 6.

(Thereupon, a document was marked by the shorthand reporter as Macomb Exhibit 6 for identification.)

MR. KUSNETZ:  Tabs 30 and 31.  No, no.

Page 186

S. Smiegel

Yeah.

(Thereupon, an informal discussion was held off the record.)

BY MR. KUSNETZ:

Q.    Mr. Smiegel, I'm showing you what's marked as Exhibit 6, which is Lead Plaintiff Macomb County ERS's Responses and Objections to Defendants' First Set of Interrogatories.

Do you see that?

A.    Yes.

Q.    Okay, and I'm going to mark as Exhibit 7 ...

(Thereupon, a document was marked by the shorthand reporter as Macomb Exhibit 7 for identification.)

MR. CHRISTIE:  Thank you.

BY MR. KUSNETZ:

Q.    -- Lead Plaintiff Macomb County RHC's Responses and Objections to Defendants' First Set of Interrogatories.  Do you see that?

A.    Yes.

Q.    Okay.  Have you seen either of these documents before today?

A.    Yes.

Q.    When?

Page 187

S. Smiegel

A.    In preparation for the deposition, those preparation sessions I referred to earlier in testimony.

Q.    Understood.  If you go to the back of each document, you'll see it's dated June 4, 2025.

A.    Yes.

Q.    Prior to your preparation for this deposition, did you, sir, see these documents?

A.    No.

Q.    Prior to your preparation for this deposition, did anyone at Macomb County see these documents?

A.    Yes.

Q.    Who?

A.    It would have been a member of the board, as I've testified earlier, because all legal documents are reviewed by someone on the board.  Generally the chairs, but -- I can't speak to who individually, but they are all reviewed prior to being filed.

Q.    Is that a matter of practice or policy?

MR. CHRISTIE:  Objection, vague.

THE WITNESS:  Practice.

BY MR. KUSNETZ:

Q.    There's no written policy that states that, correct?

Page 188

S. Smiegel

A.    Not to my knowledge.

Q.    What about to Macomb County's knowledge?

A.    No.

Q.    So sitting here today as Macomb County's corporate representative, you don't know whether someone actually received these documents prior to your deposition from Macomb County, correct?

MR. CHRISTIE:  Objection, foundation.

You could answer.

THE WITNESS:  Again, all documents are received and reviewed by Macomb before being filed.

BY MR. KUSNETZ:

Q.    As a matter of practice, correct?

A.    As a matter of practice.

Q.    And I understand.

Do you have specific knowledge in connection with you preparing for this deposition that these documents were actually received by Macomb County prior to your preparation for this deposition?

MR. CHRISTIE:  Objection, foundation.

And I'll instruct the witness not to answer to the extent that anything was conveyed to you during a preparation session



Page 189

S. Smiegel

with counsel.  You can answer otherwise.

BY MR. KUSNETZ:

Q.   And you can answer "yes" or "no".  You don't have to give me details.

A.   Restate, please?

Q.   "Yes" or "no"?

Do you have specific knowledge in connection with your preparation for this deposition that the Responses and Objections to Defendants' First Set of Interrogatories were received by Macomb County prior to your preparation of this deposition?

A.   No.

Q.   And you do not have specific knowledge in connection with preparing for this deposition that the Responses and Objections to Defendants' First Set of Interrogatories for both of these funds were received by these funds prior to June 4, 2025, correct?

MR. CHRISTIE:  Same -- same objections.  You can answer.

THE WITNESS:  No.

BY MR. KUSNETZ:

Q.   You don't have --

A.   I don't know.

Q.   You don't know?  As you testified, Macomb

Page 190

S. Smiegel

County, ERS, and RHC did not assist in the preparation of the Responses to Defendants' First Set of Interrogatories, correct?

MR. CHRISTIE:  Objection, vague.  You can answer.

THE WITNESS:  Yes, we did not participate in the preparation of the documents, but they were reviewed after prep- -- or delivery by legal counsel.

BY MR. KUSNETZ:

Q.   Well, again, we should break that down.

Your prior testimony was that you don't know whether they actually were received prior to being finalized by Macomb County, correct?

MR. CHRISTIE:  Objection, misstates testimony.  You can answer.

THE WITNESS:  True.

BY MR. KUSNETZ:

Q.   As a matter of practice, you assume that they are received, correct?

A.   That's -- that's the practice of the boards.

Q.   Right, but you don't know that they were received, correct?

MR. CHRISTIE:  Objection, misstates

Page 191

S. Smiegel

testimony.  You can answer.

THE WITNESS:  Correct.

BY MR. KUSNETZ:

Q.   So let me re-ask the question so that I can get a clean record as to your consistent testimony.

MR. CHRISTIE:  Objection, vague, misstates the testimony.  You can answer.

THE WITNESS:  Restate.  I want to make sure I have -- before I say yes or no, refresh my --

BY MR. KUSNETZ:

Q.   I'm -- I'm not asking about whether they received it --

A.   Correct.

Q.   -- okay?  We've already discussed that, correct?

A.   Right.

Q.   I'm asking:

Macomb County, ERS, and RHC did not assist in the preparation of Responses to Defendants' First Set of Interrogatories?  "Yes" or "no"?

MR. CHRISTIE:  Object, vague as to the word "assist."  I ...

MR. KUSNETZ:  Please stop the speaking

Page 192

S. Smiegel

objections.

BY MR. KUSNETZ:

Q.   Continue.

A.   That's correct.  We -- we did not assist in the preparation of the document.

Q.   Meaning the Responses to Defendants' First Set of Interrogatories?

A.   Yes.

Q.   When --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.   Have you, Mr. Smiegel, ever assisted in any securities case while at Macomb County with responses to interrogatories?

A.   No.

MR. CHRISTIE:  Give me a chance to object, please.

BY MR. KUSNETZ:

Q.   And did you --

And do you know whether anyone at Macomb County has ever assisted in any securities litigation brought on behalf of Macomb County in the responses to interrogatories in securities litigation?

MR. CHRISTIE:  Objection, relevance,



Page 201

S. Smiegel

it's not?

A. No.

Q. So the question in Interrogatory No. 5, right --

MR. KUSNETZ: Sorry. Withdrawn.

BY MR. KUSNETZ:

Q. The Interrogatory No. 5 issued by defendants is "Identify all persons with knowledge of any facts or information concerning your transactions in or decisions concerning ELC Securities, including your ownership of and actual contemplated transactions concerning any ELC Securities, specifying the particular facts or information of which each person is reported to have knowledge." Do you see that?

A. Yes.

Q. Okay, and then do you see there is a response to Interrogatory No. 5 beneath?

A. Yes.

Q. And if you continue to the next page, the response to Interrogatory No. 5 also has a chart. Do you see that?

A. Yes.

Q. Okay. Macomb County ERS did not assist with the preparation of the response to Interrogatory No. 5,

Page 202

S. Smiegel

correct?

MR. CHRISTIE: Objection, misstates the testimony. You can answer.

THE WITNESS: Correct. Macomb did not prepare this document.

BY MR. KUSNETZ:

Q. And specifically this response, correct?

A. Correct.

Q. So the interrogatory is requesting identification of persons, and remember we talked about how persons can also be entities, correct?

A. Correct.

Q. And that's under the definition that we discussed before, correct?

A. Correct.

Q. Okay, so "Persons with and information concerning" -- do you see that?

(Pause.)

BY MR. KUSNETZ:

Q. This is back on page 15.

A. Oh, I'm sorry. Wrong page.

Q. All good. This is requesting the identification of all persons which could include entities, correct?

Page 203

S. Smiegel

A. Correct.

Q. "With information concerning." Do you see that?

A. Yes.

Q. "Your ownership of." Do you see that?

A. Yes.

Q. And do you understand that "your" is a reference to Macomb County ERS with respect to this particular document?

MR. CHRISTIE: Objection. All this whole line of questioning calls for a legal conclusion, but you can answer.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. And then it includes "any ELC Securities," correct?

A. Yes.

Q. Right, so this speaks to persons -- the identification of persons with information concerning your ownership of any ELC Securities, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion. You can answer.

THE WITNESS: Yes.

Page 204

S. Smiegel

BY MR. KUSNETZ:

Q. And if you go to page 16 in the response for Macomb County ERS, the answer is you, "Stephen Smiegel, administrator/secretary for Macomb County ERS"; then "Edgewood Management, LLC, external investment manager for Macomb County ERS."

Do you see that?

A. Yes.

Q. Okay, but there are others at Macomb County ERS that have information concerning Macomb County ERS's ownership of ELC Securities, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion. You can answer, to the extent you know.

THE WITNESS: Restate your question, please?

BY MR. KUSNETZ:

Q. There are others at Macomb County ERS that have information concerning Macomb County ERS's ownership of any ELC Securities, correct?

MR. CHRISTIE: Same objections.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. Who would those people be?



STEPHEN SMIEGEL
McALICE vs ESTEE LAUDER CO.

November 06, 2025
205–208

Page 205

S. Smiegel

A.   Members of the boards.

Q.   Okay, and are those members of the boards listed here?

A.   No.

Q.   Just you?

A.   Correct.

Q.   Would that include Ms. Schave in addition to the members of the board?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Yes.  She would have the report from Mike Holycross and Edgewood.

BY MR. KUSNETZ:

Q.   And speaking of Mike Holycross -- Mike Holycross, AndCo, and Mariner, the investment consultants, are not listed here in response to Interrogatory 5, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And they should be, correct?

MR. CHRISTIE:  Objection.  Certainly calls for a legal conclusion.  You can answer.

Page 206

S. Smiegel

THE WITNESS:  I have no opinion.

MR. KUSNETZ:  Okay.  That's fair.

BY MR. KUSNETZ:

Q.   But you agree that Mike Holycross, AndCo, and Mariner have information concerning Macomb County ERS's ownership of any ELC Securities, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And they're not listed in this response, correct?

A.   Correct.

Q.   And looking at Exhibit 7, going to the same interrogatory, Interrogatory 5, page 15, do you see that?

A.   Yes.

Q.   Okay, and then do you see --

So this is for -- this is for Macomb County RHC.  Go to page 16.

A.   Yes.

Q.   Do you see that the only one from Macomb County here listed is you, Mr. Smiegel, correct?

A.   Correct.

Page 207

S. Smiegel

Q.   Okay, but as with Macomb County ERS, this should have included Ms. Schave and the members of the board, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Ms. Schave and the members of the board would have information relative to Edgewood or -- yeah, Edgewood.

BY MR. KUSNETZ:

Q.   Well -- or more specifically, right, Ms. Schave and members of the board would have knowledge of information concerning Macomb County RHC's ownership of any ELC Securities, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  They would have information relative to each entity's holdings with ELC as it relates to Edgewood.

BY MR. KUSNETZ:

Q.   Okay, and they're not listed here, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Correct.

Page 208

S. Smiegel

BY MR. KUSNETZ:

Q.   And then again, Mike Holycross, AndCo, and Mariner are also not listed here, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Correct.

BY MR. KUSNETZ:

Q.   And Mike Holycross, AndCo, and Mariner would have information concerning Macomb County RHC's ownership of any ELC Securities, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And they are not listed here, correct?

MR. CHRISTIE:  Same objection.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   Listed here in response to Interrogatory 5?

A.   Yeah, they are not listed.

Q.   Right.  Now going back to Rule 33, which is Macomb County Exhibit 8, I believe.

(Thereupon, an informal discussion was held off the record with the shorthand



Page 209

S. Smiegel

reporter.)

BY MR. KUSNETZ:

Q. Eight. Do you see Rule 33(a)(b)(5), "Signature"?

A. Yes.

Q. Okay, and it reads "The person who makes the answers must sign them, and the attorney who objects must sign any objections."

Do you see that?

A. Yes.

Q. Okay, and if you go to the back of this document, it's on page --

MR. CHRISTIE: Which document?

MR. KUSNETZ: Thank you for the clarification.

BY MR. KUSNETZ:

Q. If you go to the back of Exhibit 6 and 7, you'll see they're signed by Labaton and VMT, correct?

MR. CHRISTIE: I mean, I'll object. It misstates the document, but go ahead.

MR. KUSNETZ: Sorry. How does that misstate the document?

MR. CHRISTIE: The only signature is mine.

Page 210

S. Smiegel

MR. KUSNETZ: Oh.

BY MR. KUSNETZ:

Q. So VMT --

Is it your understanding, Mr. Smiegel, on behalf of Macomb County that VMT, although listed on this legal document, does not sign onto it?

MR. CHRISTIE: Objection, calls for a legal conclusion.

THE WITNESS: I don't know. I can't -- their name is listed.

BY MR. KUSNETZ:

Q. It would be weird if they weren't signing it, right?

A. Yes.

Q. Yeah. All right. Well --

So going back, this is signed by attorneys at Labaton and VMT, correct?

MR. CHRISTIE: Same objections. You can answer.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. Okay. At a minimum, it's signed by Mr. Christie who is sitting next to you, correct?

A. Correct.

Page 211

S. Smiegel

Q. Okay. Now, Rule 33 says "The attorney who objects must sign any objections," correct?

A. Yes.

Q. And you have an attorney's signature here, correct?

A. Yes.

Q. Okay, but nobody from Macomb County has signed this document, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion. Foundation. You can answer.

MR. KUSNETZ: What's the objection that calls for a legal conclusion?

MR. CHRISTIE: Whether or not someone from Macomb County was required to sign it based on --

MR. KUSNETZ: That's not my question.

MR. CHRISTIE: -- discussions with counsel.

MR. KUSNETZ: That's not my question.

MR. CHRISTIE: You're asking me.

MR. KUSNETZ: I am.

MR. CHRISTIE: Okay, so that's my answer.

MR. KUSNETZ: But your objection is

Page 212

S. Smiegel

unfounded.

BY MR. KUSNETZ:

Q. Sir --

MR. CHRISTIE: No, it's not.

MR. KUSNETZ: It absolutely is.

BY MR. KUSNETZ:

Q. I'm asking you, not as a lawyer --

MR. CHRISTIE: You're asking him to interpret Rule 33 when --

MR. KUSNETZ: No, no, no.

(Indistinguishable crosstalk.)

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

MR. KUSNETZ: I'm asking him to look at a document and provide me an answer based on what he sees in the document.

BY MR. KUSNETZ:

Q. Sir, did Macomb County sign Exhibit 6 or Exhibit 7, the interrogatory responses?

MR. CHRISTIE: Objection, calls for a legal conclusion and foundation. You can answer.

THE WITNESS: I would say the document



Page 213

S. Smiegel
speaks for itself.

BY MR. KUSNETZ:

Q. Meaning what?

MR. CHRISTIE: Same objection.

BY MR. KUSNETZ:

Q. Do you see Macomb County's signature on there? Anyone from --

A. I do not.

Q. -- Macomb County? Right.

So you do not see a signature from Macomb County verifying the accuracy of Exhibits 6 and 7, correct?

MR. CHRISTIE: Same objections.

THE WITNESS: Correct.

MR. CHRISTIE: If you want --

If you want a verification, we can get you a verification. You haven't asked, so I'm just going to note that for the record, but you can continue.

THE WITNESS: Correct, there is no signature from anyone at Macomb.

BY MR. KUSNETZ:

Q. On either document?

A. On either document.

Q. Okay.

Page 214

S. Smiegel

(Pause.)

THE WITNESS: Could we take a short break?

MR. KUSNETZ: Sure, whenever you would like to. There's no question pending.

THE VIDEOGRAPHER: Okay. The time is 1:59 p.m. We're off the record.

(Recess taken at 1:59 p.m.)

(Resumed at 2:24 p.m.)

THE VIDEOGRAPHER: We are on the record at 2:24 p.m.

BY MR. KUSNETZ:

Q. Mr. Smiegel, you recall discussing the amended initial disclosures before, correct?

A. Yes.

Q. And the amended initial disclosures listed Dan DiDomenico, partner, as Macomb County's contact at Edgewood, correct?

A. Yes.

Q. Okay, and you understood that to mean Dan DiDomenico, partner at Edgewood, correct?

A. Yes.

Q. Okay. In preparation for your deposition, what did you do to ascertain who the contacts at

Page 215

S. Smiegel

Edgewood were between Macomb County -- both Macomb County Funds?

MR. CHRISTIE: Objection.

I'm just going to instruct you to the extent it has to do with what you learned in preparation with counsel not to mention it, but otherwise, you can answer.

THE WITNESS: I don't know what Macomb did to ascertain the -- Mr. DiDomenico was partner.

BY MR. KUSNETZ:

Q. Oh, I'm sorry. What did you do to ascertain the connections --

MR. KUSNETZ: Sorry. Withdrawn.

BY MR. KUSNETZ:

Q. What did you do in preparation for this deposition to ascertain who at Edgewood interfaced with folks at Macomb County?

A. Individually?

Q. Well, no.

What did you do to prepare as the representative of Macomb County for this deposition?

MR. CHRISTIE: Same objection as I mentioned before and instruction, but you

Page 216

S. Smiegel

can -- you can answer.

THE WITNESS: Nothing else. I'd reviewed this document.

BY MR. KUSNETZ:

Q. Okay, so based on the review of this document, you see Dan DiDomenico's name there, correct?

A. Yes.

(Thereupon, a document was marked by the shorthand reporter as Macomb Exhibit 9 for identification.)

BY MR. KUSNETZ:

Q. Okay. I would like to show you what's been marked as Macomb Exhibit 9, Tab 29.

Mr. Smiegel, I'll represent to you this is, as stated on the bottom left-hand corner of the page, a printout from a website of a company called Dakota.com, and we pulled the bio of a Dan DiDomenico.

Do you see that?

A. Yes.

Q. Okay, and do you see that Dan DiDomenico is the president of Dakota Investments pursuant to this document?

MR. CHRISTIE: Objection, foundation.



Page 237

S. Smiegel

Macomb County in connection with investments that it's making on Macomb County's behalf?

A.   Generally once a year.

Q.   Is that generally the same for all the hedge funds listed here?

A.   That's true for -- yes.

Q.   For any of these hedge funds, do you meet more than once a year?  And "you," meaning Macomb County?

A.   Yes, at times.

Q.   And which ones?

A.   EnTrust.

Q.   Is that because there's multiple hedge funds for EnTrust?

A.   No.

Q.   Why does Macomb County meet with EnTrust more often than the other hedge funds here?

A.   This would go back before the class period, generally.  So every year, EnTrust holds an investor conference here in the City, and we would go to that conference.

Q.   Do you go to that conference?

A.   I've been to that conference in the past.

Q.   And for the "ETG Co-Invest Opportunities,"

Page 238

S. Smiegel

does Macomb have any familiarity of what the holdings are for that fund?

A.   I believe that's EnTrust as well.

Q.   And what are the holdings of the hedge fund?

A.   Those are co-investments, as stated on the document.  It's hedge -- fund of funds, co-investment strategies.

Q.   Okay, and what about the next one, EnTrust Permal Special Op 4?

A.   Same sort of thing.  They would be in various -- it could be real estate.  It could be a number of different things.

Q.   But sitting here today, you can't testify on behalf of Macomb County what the particular holdings are for that particular hedge fund?

A.   Not the individual holdings, no.

Q.   Okay.  And for the next one, EnTrust Permal Special Op 3?

A.   It would be similar as four, just a different fund.

Q.   Okay.  Corbin Capital Pinehurst?  What are the holdings for Corbin Capital Pinehurst on behalf of Macomb County?

MR. CHRISTIE:  Objection, foundation.

Page 239

S. Smiegel

THE WITNESS:  Same answer as EnTrust.

BY MR. KUSNETZ:

Q.   And what -- what is that?

A.   We would -- we would review the documents and refamiliarize ourselves with the holdings.

Q.   What documents?

A.   The annual review.

Q.   Okay, and in the annual review, what kind of documents would be provided to you by this Corbin Capital Fund?

A.   Typically, with any of the managers, they would give us sort of a list of their holdings, their investments.

Q.   Okay.  How would they give it to you?

A.   In the form of a sim- -- a report, a slide deck of some sort of their performance over the previous year.

Q.   Understand.  Okay.  And going up to "ABS Global Equity L/S," do you see that?

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

BY MR. KUSNETZ:

Q.   And going up to "ABS Global Equity L/S," do

Page 240

S. Smiegel

you see that?

A.   Yes.

Q.   Okay.  What's your familiarity --

MR. KUSNETZ:  Sorry.

BY MR. KUSNETZ:

Q.   What is Macomb's familiarity with ABS Global Equity L/S?

A.   That is a holding with ABS, and it has various international long/short stocks.

Q.   Okay.  The "L/S" means long/short?

A.   Yeah.

Q.   And what are the holdings of ABS Global Equity L/S?

MR. CHRISTIE:  Objection, foundation. You can answer, if you know.

THE WITNESS:  I don't know all the individual holdings in that portfolio without referring to a document from ABS.

BY MR. KUSNETZ:

Q.   Did you review any documents from any of these hedge funds in preparation for your deposition today?

A.   No.

Q.   And for ABS Global Equity L/S, would they



Page 241

S. Smiegel

meet with --

Q.    Would representatives of ABS Global Equity L/S meet with Macomb County on an annual basis?

A.    Yes.

Q.    In person?

A.    Yes.

Q.    When was the last time that they met with Macomb County?

A.    I don't remember the exact date.  It would have been within the last year.

Q.    Okay.  When do these annual meetings usually happen?

A.    Throughout the course of the year.  Because we have so many managers, we might bring in, as you saw on the agenda, maybe one or two every meeting.

Q.    Understand, so it's like staggered?

A.    Staggered.  There is no real schedule by manager.

Q.    It's not like Hell Week, where all of them show up?

MR. KUSNETZ:  Withdrawn.

THE WITNESS:  Correct.

MR. KUSNETZ:  Withdrawn.

Page 242

S. Smiegel

MR. CHRISTIE:  Let's stick to the --

BY MR. KUSNETZ:

Q.    And so -- so would ABS Global Equity L/S provide Macomb County with a list of its holdings?

A.    Yes.

Q.    How would it do so?

A.    Through -- through its annual report.

Q.    And --

A.    That -- that annual summary.

Q.    And would that be transmitted via email?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.    Okay, and who at Macomb County receives ABS Global Equity L/S' emails with its holdings?

MR. CHRISTIE:  Objection, foundation.  You can answer, if you know.

THE WITNESS:  Initially, it would be Val, just as she got information from Edgewood or Mariner or AndCo, and the board members would get it, of course, when the draft agenda went out.

BY MR. KUSNETZ:

Q.    All right.  Okay, so it would be Val --

Page 243

S. Smiegel

Valerie Schave initially, correct?

A.    Correct.

Q.    And then it would be the members of the board in connection with the agenda for the board meeting?

A.    Correct.

MR. CHRISTIE:  Objection, asked and answered.

BY MR. KUSNETZ:

Q.    And ... so if today you wanted to pull up the holdings of ABS Global Equity L/S, what would you do to pull it up?

A.    I would reach out to our contact at ABS.

Q.    Okay.  Who is your contact at ABS?

A.    The gentleman's name is Chris Carmody.

Q.    Chris Carmody?

A.    Carmody.

Q.    Can you spell that?

A.    C-A-R-M-O-D-Y.

Q.    Okay.  Who are your contacts at Corbin Capital?

A.    I don't know right here, as I sit here today.

Q.    And EnTrust?

A.    The gentleman's name is David Flynn.

Q.    F-L-Y-N-N?

Page 244

S. Smiegel

A.    Correct.

Q.    Two Ns?  Okay, and what about -- and ETG you assume is EnTrust, correct?

A.    Correct.

Q.    What about Nantucket Fund?

A.    I don't know as I sit here.

Q.    Okay.  So you're saying if you wanted to find out what the holdings were, for example, of ABS Global Equity, you would call up your contact, which is Chris Carmody?

A.    Correct.

Q.    Okay.  Could you also look in your email for it?

(Pause.)

THE WITNESS:  Current holdings, no.

BY MR. KUSNETZ:

Q.    Annual holdings?

A.    I would expect to be able to look through my past emails.  As part of an agenda, they would have their presentation on it.

Q.    Okay, and the agenda itself would have the holdings appended to it, correct?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  The agenda would have their



Page 245

S. Smiegel

presentation, which would have their holdings.

BY MR. KUSNETZ:

Q.   Understood.  Okay.

So if you wanted to find out the annual holdings of ABS Global Equity L/S during the class period, for example, all you would need to do is to look at the agenda from the meetings in which the presentation from ABS was made on an annual basis, correct?

A.   That's what we would do.

MR. CHRISTIE:  Objection.

THE WITNESS:  Sorry.

MR. CHRISTIE:  Let me answer -- let me object.  Misstates testimony.  You can answer.

THE WITNESS:  That would be the normal course --

BY MR. KUSNETZ:

Q.   Okay.

A.   -- of action.

Q.   Understood.  And if you didn't want to go through your emails, you could just call Chris Carmody, correct?

MR. CHRISTIE:  Objection, misstates the testimony.  You can answer.

THE WITNESS:  Yes.

Page 246

S. Smiegel

BY MR. KUSNETZ:

Q.   Let's say you call Chris Carmody.  What happens next?

MR. CHRISTIE:  Objection, calls for speculation.

BY MR. KUSNETZ:

Q.   In the normal course, "Chris, I need -- I want to see the current holdings."  What happens next?

MR. CHRISTIE:  Objection, assumes facts and misstates testimony.

THE WITNESS:  If we wanted a list of current holdings, we would reach out to Chris, tell him what we were looking for, and then he would email the information.

BY MR. KUSNETZ:

Q.   You wouldn't have to sign anything in order to obtain it?

MR. CHRISTIE:  Objection, calls for speculation.

THE WITNESS:  That has not been the case in the past.

BY MR. KUSNETZ:

Q.   So if you wanted to know what your --

MR. KUSNETZ:  Withdrawn.

Page 247

S. Smiegel

BY MR. KUSNETZ:

Q.   If Macomb County wanted to know what its current holdings were, for example, for ABS Global Equity L/S, it could call its representative at ABS Global Equity L/S and that representative would send them over, correct?

MR. CHRISTIE:  Objection, calls for speculation.  You can answer.

THE WITNESS:  I would expect the representative to send the information requested.

BY MR. KUSNETZ:

Q.   I mean, is there a circumstance where the representative would refuse to send its holding --

MR. KUSNETZ:  Let me finish, please, Counsel.

BY MR. KUSNETZ:

Q.   Is there a circumstance where the representative would refuse to send holdings upon a request by Macomb County?

MR. CHRISTIE:  Objection, calls for speculation.  You can answer.

THE WITNESS:  I cannot think of a situation that they would object.

Page 248

S. Smiegel

BY MR. KUSNETZ:

Q.   I mean, it's Macomb's money.  They can see --

A.   Right.

Q.   -- right?  Okay.  So "L/S" stands for long/short, correct?

A.   Yes.

Q.   Okay.

(Pause.)

BY MR. KUSNETZ:

Q.   Do you know --

MR. KUSNETZ:  Withdrawn.  Sorry.

BY MR. KUSNETZ:

Q.   So ABS Global Equity Long/Short has short positions --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.   ABS Global Equity Long/Short invests in short positions, correct?

MR. CHRISTIE:  Objection, calls for speculation and foundation.

THE WITNESS:  They have the ability to invest in short positions.

(Pause.)

(Thereupon, an informal discussion was



Page 309

S. Smiegel

portfolio analysis, and current assets of the portfolio to the board within 30 days of the end of the quarter; is that correct?

A.   Yes.

Q.   Okay.  It then states "A copy" --

MR. KUSNETZ:  Actually, withdrawn.

BY MR. KUSNETZ:

Q.   Focusing on that sentence, Macomb County did not receive quarterly reports directly from investment managers within 30 days after the end of each quarter, correct?

MR. CHRISTIE:  Objection, asked and answered.

THE WITNESS:  Not to my knowledge.

BY MR. KUSNETZ:

Q.   I'm -- I'm not asking about your knowledge. I'm asking about Macomb County, so let me ask it again.

Macomb County, during the relevant period, did not receive written reports directly from investment managers within 30 days of the end of each quarter, correct?

A.   Correct.

Q.   Looking at the next sentence, "A copy of the written report shall be submitted to the person

Page 310

S. Smiegel

designated by the Macomb County Employees' Retirement System and shall be available for public inspection."

Do you see that?

A.   Yes.

Q.   Okay.  So breaking that down, who was the person designated by Macomb County to receive these written reports from investment managers during the class -- during the relevant period?

A.   I don't know.

Q.   Okay.  I'm asking, sir, as Macomb County's representative.

I don't want to know what your personal opinion is. I want to know what the position is of Macomb County, okay?  Is that fair?

A.   That's fair.

Q.   Who --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.   Pursuant to this Investment Policy Statement, Section 7B, during the relevant period, who was designated by Macomb County Employees' Retirement System to receive written reports from the investment managers each quarter detailing the plan's performance?

MR. CHRISTIE:  Objection, asked and

Page 311

S. Smiegel

answered.

THE WITNESS:  I -- I don't know.

BY MR. KUSNETZ:

Q.   Meaning Macomb County does not know who was designated to receive quarterly reports from investment managers each quarter --

MR. CHRISTIE:  Objection.

BY MR. KUSNETZ:

Q.   -- during the relevant period; is that correct?

MR. CHRISTIE:  Objection, foundation, misstates prior testimony.  You can answer.

THE WITNESS:  Again, I'm not aware of who the board designated as the person to receive these reports, so I feel I'm unable to answer the question.

BY MR. KUSNETZ:

Q.   You reviewed this investment policy in connection with preparing for this deposition today, correct?

A.   I did.

Q.   Okay, and this investment policy is squarely within the topics in the deposition notice that we provided to you, correct?

Page 312

S. Smiegel

MR. CHRISTIE:  Objection, calls for a legal conclusion.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   Right.  The topics include investment policies relied upon by each lead plaintiff in connection with making investments, correct?

A.   Yes.

Q.   Okay, and so when you reviewed this policy, what did you do to prepare yourself to be able to answer specifics related to whether each of these requirements in the Investment Policy Statement were satisfied during the relevant period?

MR. CHRISTIE:  Objection, calls for a legal conclusion.

And again, I'm going to just counsel you not to mention anything that was discussed during your preparation with counsel, but you can answer otherwise.

THE WITNESS:  I did not do anything in particular to this clause (indicating).

BY MR. KUSNETZ:

Q.   So because the identity of who the board designated was to receive quarterly reports from



Page 313

S. Smiegel

investment managers during the relevant period was not within the binder of 50 documents that you received from counsel, you, sitting here today, are not able to testify as to who was designated, correct?

MR. CHRISTIE:  Objection, vastly misstates prior testimony and the record, calls for legal conclusion.  You can answer if you know.

THE WITNESS:  Can you restate the question?

MR. KUSNETZ:  Sure, and I will caution counsel to follow Rule 6 of the court's individual rules and to refrain from speaking objections.

MR. CHRISTIE:  Go ahead.

BY MR. KUSNETZ:

Q.    The identity of who the board designated to receive quarterly reports from investment managers during the relevant period was not within the binder that you received from counsel to prepare for this deposition, correct?

MR. CHRISTIE:  Objection, vastly misstates prior testimony and the record and calls for a leading -- legal conclusion.  You

Page 314

S. Smiegel

can answer, if you know.

THE WITNESS:  Will you state it again, please?

MR. KUSNETZ:  Sure, I'll restate it again.  And again, I caution counsel from making speaking objections, especially stating "vastly misstates prior testimony."

It is squarely in violation of the court's rules, particularly Rule 6 of the court's individual rules.  I have a copy of that, if you would like me to read it.

MR. CHRISTIE:  Go ahead, Counsel.

BY MR. KUSNETZ:

Q.    I will restate the question a third time.  I'm going to break it up, though, to try to make it easier.

Within the binder that you received -- of 50 documents that you received --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.    The identity of who the board designated to receive quarterly reports from investment managers was not during the relevant period -- was not within the binder of the 50 documents you received from counsel,

Page 315

S. Smiegel

correct?

A.    Correct.

Q.    And as a result of that information not being within the binder of 50 documents that you received from counsel, sitting here today, you are not able to testify as to who was designated by the board to receive quarterly reports from investment managers during the relevant period, correct?

MR. CHRISTIE:  Same objections that I made earlier, and also misstates prior testimony.  You can continue.

THE WITNESS:  That's correct.

BY MR. KUSNETZ:

Q.    So sitting here today, Macomb County does not know who was designated by the boards of each retirement fund to receive quarterly reports from investment managers detailing the plan's performance, forecast of the market and economy, portfolio analysis, and current assets of the portfolio?  "Yes" or "no"?

MR. CHRISTIE:  Objection, misstates prior testimony.  You can answer.  Asked and answered.

THE WITNESS:  Restate again, please?

Page 316

S. Smiegel

BY MR. KUSNETZ:

Q.    Sitting here today, Macomb County does not know who was designated by the board of each retirement fund to receive quarterly reports from investment managers detailing the plan's performance, forecast of the market and economy, portfolio analysis, and current assets of their portfolio, correct?

MR. CHRISTIE:  Same objections.  You can answer.

THE WITNESS:  I would say correct.

(Pause.)

BY MR. KUSNETZ:

Q.    Looking at the next sentence, it states "A copy of the written report shall be submitted to the person designated by the Macomb County Employee Retirement System and shall be available for public inspection."

Okay.  Breaking up that clause, during the relevant period, it is Macomb County's position that a copy of written quarterly reports from investment managers were not submitted to the person designated by Macomb County Employee Retirement System, correct?

MR. CHRISTIE:  Misstates prior testimony.  You can answer.



STEPHEN SMIEGEL
McALICE vs ESTEE LAUDER CO.

November 06, 2025
337–340

Page 337

S. Smiegel

Q.   Do you know who that is?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  I do not know who Julie Baker is.

BY MR. KUSNETZ:

Q.   Okay.  Do you see where the top section says "Reconcile"?  Do you see that?

A.   Yes.

Q.   Okay, and this is with respect to Edgewood Large Cap Growth, okay?

A.   Correct.

Q.   "When we first recommended the strategy, performance was strong enough to warrant a recommendation on a net of fees basis.

"However, since our initial recommendation, relative performance has turned significantly negative, which makes clients less willing to adopt the strategy, given the higher fee structure."

Do you see that?

A.   Yes.

Q.   Okay.  Is it Macomb County's position that Edgewood Large Cap Growth during the relevant period turned significantly negative?  "Yes" or "no"?

MR. CHRISTIE:  Objection, foundation.

Page 338

S. Smiegel

(Pause.)

THE WITNESS:  Again, restate?

BY MR. KUSNETZ:

Q.   Sure, and I'm trying to go as fast as possible so that you can make your flight.

A.   Right.

Q.   Is it Macomb County's position that Edgewood Large Cap Growth, during the relevant period, turned significantly negative?  "Yes" or "no"?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   And if you look at the last paragraph, it's under a section called "Resolve."  Do you see that?

A.   Yes.

Q.   Okay, and again, this is an AndCo document from your investment consultant, correct?

A.   Correct.

Q.   Okay, so when it --

So AndCo writes "We plan to add Edgewood LCG to watch, effective immediately, primarily based on poor recent relative performance, individual stock mistakes, as well as our expectations for future performance, given the current market environment."

Page 339

S. Smiegel

Do you see that?

A.   Yes.

Q.   Okay.  Does this refresh Macomb County's memory that Edgewood LCG was placed on a watch list during the relevant period?  "Yes" or "no"?

MR. CHRISTIE:  Objection, asked and answered.

THE WITNESS:  Again, restate?

BY MR. KUSNETZ:

Q.   Again, I'm trying to do this quickly.

A.   I understand.

Q.   Does this document refresh Macomb County's recollection that Edgewood Large Cap Growth Fund was placed on a watch list during the relevant period?  "Yes" or "no"?

MR. CHRISTIE:  Same objection.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.   No reason to doubt that; is that correct?

A.   Correct.

Q.   Okay, and "The rationale for being placed on the watch list effective immediately, according to AndCo, was based on Edgewood's poor recent relative performance."  Do you see that?

Page 340

S. Smiegel

A.   Yes.

Q.   Okay, and that relative performance would be relative to a benchmark, correct?

A.   Yes.

Q.   And then "Individual stock mistakes."  Do you see that?

A.   Yes.

Q.   What are the individual stock mistakes made by Edgewood during the relevant period?

A.   I don't know.

Q.   What does Macomb County know about the individual stock mistakes made by Edgewood during the relevant period?

MR. CHRISTIE:  Objection, foundation.

THE WITNESS:  Macomb would be aware through reports from Mariner about individual stock mistakes.  I don't know individually.

Again, it would be through those quarterly reports and their -- and their watch list/checklist, I'll call it.  Not this checklist, but --

BY MR. KUSNETZ:

Q.   On the quarterly reports?

A.   -- the other -- on the quarterly report.



Page 345

S. Smiegel

correct?

A.    Correct.

Q.    And it states here, in the first paragraph, "Specifically the transactions listed in Exhibit A contained custodial data error related to Macomb County ERS." Do you see that?

A.    Yes.

Q.    And if you go to the declaration of Francis McConville which is, I think, the fifth page in this exhibit, at the top, it says "Docket 55 -- 1, page 1 of 3." Do you see that?

A.    One of three, yes.

Q.    Do you see it?  Okay.  This is an attachment to the notice of errata, correct?

A.    It appears that way, yes.

Q.    Do you recall reviewing Mr. McConville's declaration in preparation for your deposition today?

A.    Yes.

Q.    Do you see in paragraph 4, it states "My firm has since become aware of a custodial data error with respect to the PSLRA certification and loss analysis submitted by Macomb County ERS."

Do you see that?

A.    Yes.

Page 346

S. Smiegel

Q.    Okay, and this PSLRA certification --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.    This PSLRA certification and loss analysis was submitted by Macomb County ERS to the court as part of its certification, correct?

A.    Yes.

Q.    And it says, in the next sentence, "Labaton obtained Macomb County's ERS trading records in this action through its custodial bank."

Do you see that?

A.    Yes.

Q.    And then it explains the inadvertent inclusion of transactions from a distinct but affiliated fund called the Macomb County Intermediate Retirees' Medical Benefit Trust.

Do you see that?

A.    Yes.

Q.    Okay.  At the time Macomb County ERS submitted its PSLRA certification, Macomb County was not aware of this data error, correct?

A.    Correct.

Q.    And that's because Macomb County did not assist Labaton with the preparation of that table of

Page 347

S. Smiegel

transactions, correct?

MR. CHRISTIE:  Objection, misstate testimony, but you can answer.

THE WITNESS:  Correct, Macomb County did not assist in the preparation of the document but reviewed the document provided by legal counsel.

BY MR. KUSNETZ:

Q.    And Macomb County did not review the underlying custodial bank records that Labaton relied on to prepare that -- that transaction record, correct?

A.    Correct.

Q.    So when Macomb County was relying on Labaton --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.    So when Macomb County was relying on the draft certification provided by Labaton, it only relied on what was within the four corners of that document and not any underlying data, correct?

MR. CHRISTIE:  Objection, misstates testimony and foundation.

THE WITNESS:  Right.  Macomb relied on the document as presented.

Page 348

S. Smiegel

BY MR. KUSNETZ:

Q.    As presented?

A.    Correct.

Q.    Without any backup data, correct?

MR. CHRISTIE:  Same objections.

THE WITNESS:  Correct.

BY MR. KUSNETZ:

Q.    And so as a result of this error in custodial bank data which Labaton refers to as "the mistaken reporting of transactions" in paragraph 5, a corrected PSLRA certification from Mark Deldin, Chairman of Macomb County ERS, needed to be filed, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.  You can answer.

THE WITNESS:  I believe the document speaks for itself.

BY MR. KUSNETZ:

Q.    And is that correct?

MR. CHRISTIE:  Same objection.

THE WITNESS:  Yes, there's an amended certification filed.

BY MR. KUSNETZ:

Q.    Right.  This mistaken reporting of transactions by Labaton required Macomb County ERS to



Page 349

S. Smiegel

file an amended certification, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion. You can answer.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. And if you go to page 4 of 4 of the corrected certification, it shows the changes in the data that was --

MR. KUSNETZ: Withdrawn.

BY MR. KUSNETZ:

Q. It shows the revised data concerning the transactions in Estee Lauder Securities, correct?

A. Yes.

Q. What was Macomb County's position when it learned that it needed to file a corrected certification because of the mistaken reporting of transactions by Labaton?

A. That mistakes happen, and we rely on legal counsel, and those mistakes were identified and corrected.

Q. Macomb County was not upset at learning about this error and having to file a corrected certification?

A. No.

Q. Was Mr. Deldin upset?

Page 350

S. Smiegel

MR. CHRISTIE: Objection, foundation.

THE WITNESS: I don't know the answer to that question.

BY MR. KUSNETZ:

Q. Was Mr. Deldin happy that he had to file a corrected certification to the court?

MR. CHRISTIE: Objection, asked and answered, and foundation.

THE WITNESS: I don't know if he was happy or unhappy.

BY MR. KUSNETZ:

Q. Do you recall personally when you first learned that a corrected certification had to be filed?

A. It was during the preparation for this deposition.

Q. Okay, so you don't -- you don't know contemporaneously what the reaction was by Mr. Deldin, correct?

MR. CHRISTIE: Objection, asked and answered.

THE WITNESS: Correct.

BY MR. KUSNETZ:

Q. It's page 2. It's the last page of the certification before the exhibits. Docket 55-2, page 3

Page 351

S. Smiegel

of 4. In the initial certification that was filed in connection with the application from Macomb County to serve with Wayne County as co-lead plaintiffs in this action, which the court granted, the certification stated:

"I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct," and it was signed by Mark Deldin; is that correct?

A. Correct.

Q. Okay, but in fact, that certification was not true and correct, despite Mr. Deldin's declaration, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion.

THE WITNESS: There were errors in the original document.

BY MR. KUSNETZ:

Q. Does "errors" mean not correct?

MR. CHRISTIE: Objection, vague.

THE WITNESS: Yes.

BY MR. KUSNETZ:

Q. Okay, so it's fair to say that Mr. Deldin's declaration that the foregoing was true and correct was

Page 352

S. Smiegel

not accurate in the initial PSLRA certification, correct?

MR. CHRISTIE: Objection, calls for a legal conclusion. You can answer.

THE WITNESS: It was true and correct in Mr. Deldin's knowledge at the time, based on documents prepared by legal counsel.

BY MR. KUSNETZ:

Q. But that's not in this declaration statement that he makes, correct?

(Pause.)

BY MR. KUSNETZ:

Q. You added some language, right?

MR. CHRISTIE: Objection. He was testifying. He wasn't adding language.

THE WITNESS: Restate the question, please?

BY MR. KUSNETZ:

Q. I'll restate it.

A. Yeah.

Q. Okay. Mr. Deldin's declaration was not true and correct when he filed it -- when he certified to it in connection with the lead plaintiff application -- just -- the application by Macomb County to serve as



Page 353

S. Smiegel

lead plaintiff, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion, asked and answered.  You can answer.

THE WITNESS:  At the time the original declaration was filed, Mr. Deldin had no reason to believe that what he was signing was untrue, so therefore true to the best of his knowledge at the time, there were errors in a document that were subsequently corrected.

BY MR. KUSNETZ:

Q.    Okay, and I -- I'm trying to get you to your flight, so I am trying to be as efficient as possible, but I'm asking you a question about what the document states, and I'm not asking you to add to the document.  Do you see -- let's go to the beginning, okay?  If you look at the first sentence of the certification, it says "I, Mark F. Deldin, as Chairman of Macomb County Employees' Retirement System, Macomb County ERS, hereby certify as follows."  Do you see that?

A.    Yes.

Q.    Does that say "to the best of my knowledge"?

MR. CHRISTIE:  Objection, calls for a

Page 354

S. Smiegel

legal conclusion, asked and answered.  You can respond.

THE WITNESS:  No.

BY MR. KUSNETZ:

Q.    That is a direct certification, correct?

MR. CHRISTIE:  Objection, calls for a legal conclusion.

THE WITNESS:  Yes.

BY MR. KUSNETZ:

Q.    No caveat to that certification, correct?

MR. CHRISTIE:  Same -- same objection.

THE WITNESS:  Correct.

BY MR. KUSNETZ:

Q.    Right.  Sometimes there are certifications and declarations that say "to the best of my knowledge," right?

MR. CHRISTIE:  Objection.

BY MR. KUSNETZ:

Q.    Correct?

MR. CHRISTIE:  Calls for speculation.

THE WITNESS:  I don't know.

BY MR. KUSNETZ:

Q.    I mean, you've seen declarations in other contexts that say "to the best of my knowledge, correct?

Page 355

S. Smiegel

MR. CHRISTIE:  Objection, calls for speculation.

THE WITNESS:  Declarations of this nature?

BY MR. KUSNETZ:

Q.    Of any nature.

MR. CHRISTIE:  Same objection.

THE WITNESS:  In the -- yes.

BY MR. KUSNETZ:

Q.    Yeah.

A.    I would have seen things in the past.

Q.    Right, but that's not what this certification says, correct?

MR. CHRISTIE:  Same objections as before.

THE WITNESS:  Correct.

BY MR. KUSNETZ:

Q.    So again, isn't it true that when Mr. Deldin submitted his initial certification, it was not true and correct as he certified?

MR. CHRISTIE:  Objection, calls for legal -- speculation, calls for a legal conclusion.

THE WITNESS:  True.

Page 356

S. Smiegel

BY MR. KUSNETZ:

Q.    Okay.  You can set that aside.  Did --

MR. KUSNETZ:  Withdrawn.

BY MR. KUSNETZ:

Q.    During the class period --

MR. KUSNETZ:  Actually, withdrawn.

BY MR. KUSNETZ:

Q.    During the relevant period, Macomb County did not review Estee Lauder's public securities filings, correct?

A.    Correct.

Q.    During the relevant period, Macomb County did not review Estee Lauder's public statements about its earning results, correct?

A.    Correct.

Q.    During the relevant period, Macomb County did not listen in on Estee Lauder's earning calls, correct?

A.    Correct.

Q.    During the relevant period, did Macomb County hold any L'Oreal securities?

MR. CHRISTIE:  Objection, relevance, foundation.

THE WITNESS:  No.



Page 381

S. Smiegel

A.   As it related to the Healthcare Fund, yes.  I need to make a correction relative to the Pension Fund.

Q.   Can you please explain what that correction is?

A.   Occasionally -- not very often -- the -- a participant will take the Pension Fund to court relative to benefit determinations, eligibility, and all sorts of things, and that has happened in a handful of incidents since I've been on the board or since I've been finance director.

Q.   Those suits had nothing to do with securities litigation, though, correct?

MR. KUSNETZ:  Objection to form.

THE WITNESS:  No.

MR. CHRISTIE:  Thank you.  I have no further questions.

MR. KUSNETZ:  I have nothing further.

THE VIDEOGRAPHER:  Okay, great.  Before I close, both sides take the video?

MR. KUSNETZ:  Yes, please.

MR. CHRISTIE:  Yes.

THE VIDEOGRAPHER:  Okay, great.  Thank you.

Page 382

S. Smiegel

The time is 6:14 p.m.  That concludes today's deposition.  We are off the record.

(Thereupon, the deposition concluded at 6:14 p.m.)

(The exhibits were retained by the shorthand reporter to be attached to the transcript.)

***    ***    ***

Page 383

ACKNOWLEDGMENT OF DEPONENT

I, STEPHEN SMIEGEL, do hereby certify that the foregoing testimony given by me on November 6, 2025 is true and accurate, including any corrections noted on the corrections page, to the best of my knowledge and belief.

_____
STEPHEN SMIEGEL

At _____ in said County of _____, this _____ day of _____, 2025, personally appeared STEPHEN SMIEGEL, and he made an oath to the truth of the foregoing corrections by him subscribed.

Before me, _____, Notary Public.  My commission expires _____.

Page 384

C E R T I F I C A T E

I, CHERYLL KERR, CSR, a Certified Shorthand Reporter and Notary Public, do hereby certify that the witness whose deposition is hereinbefore set forth was duly sworn by me, and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 9th day of November, 2025.

_Cheryll Kerr_
-----------------------------
CHERYLL KERR, CSR



Page 385

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:  In Re:  Estee Lauder Companies

Dep. Date:  November 6, 2025

Deponent:   Stephen Smiegel

Reason codes:

      1.  To clarify the record.

      2.  To conform to the facts.

      3.  To correct transcription errors.

Pg.    Ln.    Now Reads    Should Read    Reason

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____ _____ _____ _____ _____

_____

     Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME

THIS _____ DAY OF _____, _____.

_____

(Notary Public)  My Commission Expires: _____



**ERRATA SHEET**

*In Re: Estée Lauder Co., Inc. Securities Litigation*

Witness Name: Stephen Smigiel
Deposition Date: November 6, 2025

| Page | Line | Now Read | Should Read | Reason |
|------|------|----------|-------------|--------|
| All | Entire document. | Smiegel | Smigiel | 3 - To correct transcription errors. |
| 39 | 17 | were | are | 3 - To correct transcription errors. |
| 364 | 8 | No. | Yes. | 2 -To conform to the facts. |

Signature: _____

Stephen Smigiel

Dated: **2025-12-11** _____

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: 18b337531427a2cdf84e5c184e58b59fc9fcd6f5aaaa9b9634943dd764d70557221f3c549ce03e5e7efee68cc3f1263071b0f1b689c0a00b2d51f631200605c9