# EXHIBIT Q

## Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
BRIDGETT McALICE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,          No. 23-cv-10669-AS

v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO FREDA, and TRACEY T. TRAVIS,

Defendants.
-------------------------------------------------------x
WEST VIRGINIA LABORERS PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,          No. 24-cv-00468-AS

v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO FREDA, and TRACEY T. TRAVIS,

Defendants.
-------------------------------------------------------x

VIDEOTAPED 30(b)(6) DEPOSITION OF GERARD GRYSKO

140 Broadway

New York, New York

November 5, 2025
9:23 a.m.

Reported By:
Cheryll Kerr, CSR
Job No. J13703109

## Page 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
BRIDGETT McALICE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,          No. 23-cv-10669-AS

v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO FREDA, and TRACEY T. TRAVIS,

Defendants.
-------------------------------------------------------x
WEST VIRGINIA LABORERS PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,          No. 24-cv-00468-AS

v.

THE ESTEE LAUDER COMPANIES, INC., FABRIZIO FREDA, and TRACEY T. TRAVIS,

Defendants.
-------------------------------------------------------x

VIDEOTAPED 30(b)(6) DEPOSITION OF GERARD GRYSKO,

held at the offices of Labaton Keller Sucharow, LLP,

located at 140 Broadway, New York, New York, before

Cheryll Kerr, CSR, a Certified Shorthand Reporter and a

Notary Public, on Wednesday, November 5, 2025 at

9:23 a.m.

## Page 3

APPEARANCES:

COUNSEL FOR PLAINTIFF:

LABATON KELLER SUCHAROW, LLP
BY:   MICHAEL ROGERS, ESQ.
BY:   GRACE HARMON, ESQ.
BY:   GUILLAUME BUELL, ESQ.
BY:   JACQUELINE MEYERS, ESQ.
140 Broadway
New York, NY  10005
Phone:  (212) 907-0700
Email:  mrogers@labaton.com
Email:  gharmon@labaton.com
Email:  gbuell@labaton.com
Email:  jmeyers@labaton.com

- and -

VANOVERBEKE, MICHAUD & TIMMONY, PC
BY:  ROBERT ABB, ESQ.
79 Alfred Street
Detroit, MI  48201
Phone: (313) 578-1200
Email:  rabb@vmtlaw.com

COUNSEL FOR DEFENDANTS:

GIBSON, DUNN & CRUTCHER, LLP
BY:   DAVID KUSNETZ, ESQ.
BY:   LYDIA LULKIN, ESQ.
BY:   HARLEY BELMONT, ESQ.
200 Park Avenue
New York, NY  10166-0193
Phone:  (212) 351-2657
Email:  dkusnetz@gibsondunn.com
Email:  llulkin@gibsondunn.com
Email:  hbelmont@gibsondunn.com

Also Present:

Sabrina Mizrachi, Estee Lauder Companies
Charlie Bowman, Videographer

## Page 4

INDEX

EXAMINATION BY                                          PAGE
Direct examination by Ms. Lulkin                         12

EXHIBITS

WAYNE COUNTY

FOR ID        DESCRIPTION                               PAGE
Exhibit 1     Defendants' Notice of Deposition           20
              to Lead Plaintiff Wayne County
              Employees' Retirement System

Exhibit 2     Document entitled "Chapter 2 -             44
              Ethics Policy," Bates
              ESTEELAUDER_WAYNE_1291
              through ESTEELAUDER_WAYNE_1303

Exhibit 3     Document entitled "Wayne County            61
              Employees' Retirement Commission
              Regular Meeting, December 18,
              2023," Bates
              ESTEELAUDER_WAYNE_3904 through
              ESTEELAUDER_WAYNE_3912

(Continued on the next page)



GERARD GRYSKO  30(b)(6)
McALICE vs ESTEE LAUDER CO.

Page 5

EXHIBITS (Cont.)

| WAYNE COUNTY FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 4 | Memorandum of Law in Support of the Motion of the Michigan Funds for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel | 69 |
| Exhibit 5 | Joint Declaration in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of of Lead Counsel, with cover page headed "Exhibit C" | 77 |
| Exhibit 6 | Lead Plaintiff Wayne County ERS' Responses and Objections to Defendants' First Set of Interrogatories | 86 |

(Continued on the next page)

Page 6

EXHIBITS (Cont.)

| WAYNE COUNTY FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 7 | Email chain with top email dated 6/10/21 from Anwar Hussein to Brian Green, Carrie Hilgendorf, Todd Pickett, Rob Grden, Gerard Grysko, Bates ESTEELAUDER_WAYNE_5785 through 5810 | 92 |
| Exhibit 8 | Letter dated 2/16/25 from Francis McConville to Hon. Arun Subramanian | 101 |
| Exhibit 9 | PSLRA Certification with cover sheet entitled "Exhibit A," filed 2/5/24 | 104 |
| Exhibit 10 | Document entitled "Opinion and Order," filed 2/20/24 | 109 |
| Exhibit 11 | Email chain with top email dated 12/8/23 from Anwar Hussein to Todd Pickett et al. | 148 |

(Continued on the next page)

Page 7

EXHIBITS (Cont.)

| WAYNE COUNTY FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 12 | Document entitled "Investment Management Agreement By and Between Wayne County Employees' Retirement System and Edgewood Management, LLC," Bates ESTEELAUDER_WAYNE_4157 to 4169 | 155 |
| Exhibit 13 | Document entitled "Edgewood Portfolio Overview, June 2022 Update," Bates ESTEELAUDER_WAYNE_4061 through 4093 | 161 |
| Exhibit 14 | Document entitled "Investment Management Agreement By and Between Wayne County Employees' Retirement System and Winslow Capital Management, LLC," ESTEELAUDER_WAYNE_6858 through 6872 | 163 |

(Continued on the next page)

Page 8

EXHIBITS (Cont.)

| WAYNE COUNTY FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 15 | Document entitled "Winslow County, Wayne County Employees' Retirement System, Q3 2022 U.S. Large Cap Growth Portfolio Review," Bates ESTEELAUDER_WAYNE_7091 through ESTEELAUDER_WAYNE_7125 | 166 |
| Exhibit 16 | Email chain with top email dated 9/25/24 from Kevin VandenHaute to Matthew Haugh, Rob Grden, and Gerard Grysko, Bates ESTEELAUDER_WAYNE_4284 through 4292 | 171 |
| Exhibit 17 | List of WCERS's transactions in Estee Lauder common stock during period February 3, 2022 through October 31, 2023, ESTEELAUDER_WAYNE_7412 through ESTEELAUDER_WAYNE_7413 | 175 |

(Continued on the next page)



**Page 9**

EXHIBITS (Cont.)

WAYNE COUNTY

| FOR ID | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 18 | List of transaction records in Estee Lauder securities among other companies for WCERS for period February 3, 2022 through October 31, 2022, Bates ESTEELAUDER_WAYNE_7414 through 7415 | 177 |

***      ***      ***

**Page 10**

G. Grysko

THE VIDEOGRAPHER:  We are now on the record.  The time is 9:23 a.m. on November 5, 2025.  This begins the videotaped deposition of Gerard Grysko taken in the matter of In Re: Estee Lauder Company, Inc. Securities Litigation, filed in the United States District Court, Southern District of New York, Case No. No. 1:23-cv-10669-AS.

My name is Charlie Bowman, and I am your videographer today.  The court reporter is Cheryll Kerr.  We are both representing Esquire Deposition Solutions.

Counsel, will you please introduce yourselves and affiliations?  Then the witness will be sworn.

MS. LULKIN:  My name is Lydia Lulkin. I'm here on behalf of the defendants with -- with the law firm Gibson Dunn.

I am joined by my colleagues, David Kusnetz, Harley Belmont, both at Gibson Dunn, and also by our colleague Sabrina Mizrachi, who is at the Estee Lauder Companies.

MR. ROGERS:  Michael Rogers, Labaton Keller Sucharow, on behalf of the witness,

**Page 11**

G. Grysko

Wayne County Employees' Retirement System, and the class.

MS. HARMON:  Grace Harmon, on behalf of lead plaintiffs, from Labaton Keller Sucharow.

MR. BUELL:  Guillaume Buell, Labaton Keller Sucharow, here for the witness and the class.

MR. ABB:  Robert Abb, VMT Law, for the plaintiff.

MS. MEYERS:  And Jacqueline Meyers, also from Labaton Keller Sucharow, here on behalf of the witness and the class.

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

GERARD  GRYSKO, called as a witness, having been duly sworn, was examined and testified as follows:

THE SHORTHAND REPORTER:  Thank you. Please proceed, Counsel.

**Page 12**

G. Grysko

DIRECT EXAMINATION

BY MS. LULKIN:

Q.    Good morning.  My name is Lydia Lulkin, and I am here on behalf of the defendants.  Have you ever been deposed before?

A.    Yes.

Q.    What was the context of that deposition?

(Pause.)

BY MS. LULKIN:

Q.    Well, let me back up.  How many times have you been deposed?

A.    Several times.

Q.    Is "several" more than five?

A.    Yes.

Q.    Is "several" more than 10?

A.    Yes.

Q.    Is "several" more than 20?

A.    Depending on the context.

Q.    Okay.  What was -- when were you most recently deposed?

A.    Within the last year, I believe.

Q.    Was that in a securities litigation?

A.    Yes.



Page 25

G. Grysko

THE WITNESS:  Yes.

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

BY MS. LULKIN:

Q.    What topics did counsel prepare materials for you to review?

MR. ROGERS:  I'm going to instruct you not to answer that for privilege.

MS. LULKIN:  What is the basis for privilege?

MR. ROGERS:  You're asking --

You're asking him what subject matter we ostensibly prepared him, and that's privileged.

MS. LULKIN:  If -- if it's refreshed his recollection about the matters that he's testifying today.

MR. ROGERS:  Then ask that question.

BY MS. LULKIN:

Q.    Did the materials that counsel prepared for you refresh your recollection about any of the topics on which you're testifying today?

A.    Well, yes.

Page 26

G. Grysko

Q.    What topics?

MR. ROGERS:  Objection to form.

BY MS. LULKIN:

Q.    On what topics was your recollection refreshed by the materials that counsel prepared for you?

A.    The materials under the topics of the 30(b)(6) notice.

(Pause.)

BY MS. LULKIN:

Q.    Do you recall which specific topics?

A.    Yes.

Q.    Which specific topics?

A.    All of them.

Q.    Counsel prepared materials for you on all of the topics and that refreshed your recollection on all of the topics?

MR. ROGERS:  Objection to form.  You can answer, if you understand.

THE WITNESS:  We went over the topics in the 30(b)(6) notice.

BY MS. LULKIN:

Q.    Did you speak with anyone at Wayne County about any of the topics in Exhibit 1?

Page 27

G. Grysko

A.    No.

(Pause.)

BY MS. LULKIN:

Q.    Did you speak with anyone --

MR. ROGERS:  When you --

(Indistinguishable crosstalk.)

MR. ROGERS:  For the sake of the record, I assume you mean WCERS when you --

MS. LULKIN:  Yeah.  I was just --

BY MS. LULKIN:

Q.    Did you speak with anyone at WCERS about any of the topics in order to prepare for your testimony today?

A.    No.

Q.    Prior to preparing for your deposition, were you aware of this lawsuit?

A.    Yes.

Q.    How were you aware of it?

MR. ROGERS:  Objection to form.

THE WITNESS:  I participated in the supervision of the lawsuit.

BY MS. LULKIN:

Q.    How did you participate in this lawsuit?

MR. ROGERS:  Objection to form.

Page 28

G. Grysko

THE WITNESS:  I consult- --

I supervised legal counsel.  I read documents.  I signed documents.  I participated in discovery.

BY MS. LULKIN:

Q.    Has anyone else from WCERS assisted your counsel at Labaton with the litigation?

A.    I think the executive director may have been on some calls.  I don't know ... I think he signed a document.

Q.    And who is the executive director of WCERS?

A.    Robert Grden.

Q.    Have you spoken with anyone at WCERS about your deposition today?

A.    No.

Q.    Have you spoken with anyone at Macomb County Employees' Retirement System about your deposition today?

A.    Basically, the -- well, yes.

Q.    Who?  Who at --

A.    Stephen Smiegel.

Q.    What did you and Mr. Smiegel speak about?

MR. ROGERS:  Once again, any conversations you had with Mr. Smiegel that



Page 97

G. Grysko

BY MS. LULKIN:

Q.    How many times have you furnished information for answers in response to interrogatories?

MR. ROGERS:  Objection to form.

THE WITNESS:  I would say that any time I've been asked.

BY MS. LULKIN:

Q.    Are you aware --

You testified previously that you have been deposed in your capacity as Wayne -- as WCERS's representative about 20 times, correct?

A.    No, I don't think I said that.

Q.    You said more than 10, I believe?

A.    I've been deposed more than 10 times.

Q.    Okay.  For -- in your capacity at ... so looking back at Exhibit 6, can you please turn to page 24?

And page 24 of Exhibit 6 reflects a signature by WCERS's attorney at Labaton Keller Sucharow, correct? Mr. Christie?

A.    Yes.

Q.    And then turning to page 25, that's the rest of the signature block, correct?

(Pause.)

Page 98

G. Grysko

BY MS. LULKIN:

Q.    And page 26 is the --

MR. ROGERS:  He hasn't answered the question yet.

THE WITNESS:  Yes, I ... right.

BY MS. LULKIN:

Q.    Okay, and page 26 is the certificate of service, correct?

A.    Yes.

Q.    Isn't it true that the person providing information in response to interrogatory answers has to sign and verify the interrogatories?

MR. ROGERS:  Objection, calls for a legal conclusion.  Also form.  If you know, you can answer.

THE WITNESS:  Yeah, I don't know.

MR. ROGERS:  If your question is you want it verified --

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

MR. ROGERS:  If the issue is that you want this to be verified, take it up with counsel.

Page 99

G. Grysko

BY MS. LULKIN:

Q.    And just to confirm, then, the --

The interrogatory responses are not verified, correct?

MR. ROGERS:  Objection, calls for a legal conclusion.  You can answer, if you understand.

THE WITNESS:  I'm not really sure what you're asking me.

(Pause.)

BY MS. LULKIN:

Q.    What I was trying to ask is:  You did not sign the interrogatory responses, correct?

A.    My name's not on this.

Q.    Okay, and no one else from WCERS signed the interrogatory responses?

A.    I only see the names on the document.

Q.    Okay, and those names are from Mr. Christie of Labaton Sucharow?

A.    That's correct.

Q.    Why didn't you sign the interrogatory responses?

MR. ROGERS:  I'll instruct you if there's any privileged communication that would supply

Page 100

G. Grysko

that answer, not to give that, but otherwise, if you can answer, you can answer.

THE WITNESS:  I don't know.

BY MS. LULKIN:

Q.    Has WCERS had any communications with any other Estee Lauder investors concerning this lawsuit?

MR. ROGERS:  Objection, form, foundation, and assumes facts not in evidence.

(Pause.)

THE WITNESS:  Not that I'm aware of.

BY MS. LULKIN:

Q.    Has WCERS had any discussions with any of the other investors who sought to be appointed lead plaintiff other than the Michigan -- excuse me -- other than the Macomb entities?

A.    Not that I'm aware of, no.

Q.    Didn't the Michigan Funds, including WCERS, stipulate to the appointment of a fourth lead plaintiff, Mr. Ben Bonaminio?

A.    I'm aware.  We had discussions.  They're privileged.

Q.    The fact of whether or not --

MS. LULKIN:  I would like to introduce Tab 16 as Exhibit 8.



Page 137

G. Grysko
reporter.)
BY MS. LULKIN:
Q.    Mr. Grysko, it's page 5801 in Exhibit 7 --
A.    Okay.
Q.    -- and it's Section F, "Prohibited Transactions."  Are you there?
A.    Yes.
Q.    To confirm, the Investment Policy Statement does provide that short selling may be permitted in certain strategies and investment vehicles if approved by the Retirement Commission, correct?
A.    Yes.
Q.    And did WCERS have any investment vehicles during the alleged class period in which they held ELC securities that allowed short selling?
A.    Not that I can recall.
Q.    Is this testimony provided in your personal capacity?
        MR. ROGERS:  Objection, form.
BY MS. LULKIN:
Q.    Are --
A.    It's my -- it's my testimony based on the meetings that I've attended and the documents I reviewed and -- and the knowledge of the investment managers that

Page 138

G. Grysko
we -- that we invest with.
Q.    So it's your testimony that you do not recall whether WCERS held any investment vehicles in ELC securities that allow short selling during the alleged class period?
        MR. ROGERS:  Objection to form, foundation, and misstates prior testimony.
        THE WITNESS:  Yeah.  I mean, I've already testified to this.  I don't know -- I'm not going to change my answer.
BY MS. LULKIN:
Q.    In preparing for the 30(b)(6) deposition today, did you review Topic 4?
        MR. ROGERS:  What are you referring to, "Topic 4"?
BY MS. LULKIN:
Q.    And did you refer -- did you review Topic 4 in Exhibit 1?
A.    I --
        MR. ROGERS:  Go back and look at the question -- the topic before you answer the question, please.
        THE WITNESS:  Okay.
        (Thereupon, an informal discussion was

Page 139

G. Grysko
held off the record with the shorthand reporter.)
BY MS. LULKIN:
Q.    And Topic 4 asks for "Testimony about all facts and circumstances concerning ELC securities that you purchased, sold, exchanged, held, or otherwise traded or invested in including but not limited to," in Section I, "any short positions or other investments that increase in value when ELC stock price decreases" and Section J refers to "Any long or short positions held by third-party funds or third-party pooled investment vehicles in which you have an interest," correct?
A.    Right.
        MR. ROGERS:  Correct that that's what it says on the document?
        MS. LULKIN:  Yeah.
        THE WITNESS:  Yes.
BY MS. LULKIN:
Q.    What did you do to prepare to testify on this topic today?
        MR. ROGERS:  And again, the standard warning not to reveal any communications you had with counsel in your preparation.

Page 140

G. Grysko
        THE WITNESS:  I reviewed the Investment Policy Statement and the manager agreements.
BY MS. LULKIN:
Q.    Did you --
Did you prepare by specifically looking to see if WCERS held any strategies and investment vehicles that were -- allowed short selling during the alleged class period?
        MR. ROGERS:  Objection.  Objection to form, and it's not clear by -- by "you," because earlier you had asked personal versus representative capacity --
        MS. LULKIN:  I will --
        MR. ROGERS:  -- so --
        (Indistinguishable crosstalk.)
        MS. LULKIN:  I will restate that.
BY MS. LULKIN:
Q.    How, in your --
In preparing for -- to testify as a 30(b)(6) representative today for WCERS, how did you prepare to see if WCERS held any strategies in investment vehicles that allowed short selling during the alleged class period?
A.    Well, the two managers that held Estee



Page 141

G. Grysko

through the class period were Winslow and Edgewood, and both of them are prohibited transactions, and I don't recall anybody making an exception per the policy for them to short sell.

Q.  Outside of Winslow and Edgewood, did you confirm whether any other investment managers were able to hold short positions that related to Estee Lauder securities?

MR. ROGERS:  Objection, foundation.

THE WITNESS:  They're -- I don't know.  I don't believe there's any managers that are allowed to short sell that we have.

(Pause.)

BY MS. LULKIN:

Q.  In Topic 5, it asks for testimony on "All facts and circumstances concerning your investments in fund or entities that purchased, sold, exchanged, held, or otherwise traded or invested in any ELC securities including but not limited to," in Section I, "any short positions or other investments that increase in value in ELC stock price when decreases," and Section J, "any long or short positions held by third-party funds or third-party pooled investment vehicles in which you have an interest."

Page 142

G. Grysko

MR. ROGERS:  Is there a question?

BY MS. LULKIN:

Q.  Is -- is that correct?  Is that what topic five ...

A.  Well, yes.

Q.  Okay.

A.  It's the second time I answered that question, I believe.

Q.  Did you prepare to testify today on Topic 5?

(Pause.)

THE WITNESS:  Yes.

BY MS. LULKIN:

Q.  How did you prepare to testify today on Topic 5?

MR. ROGERS:  Once again, you can answer that to the extent that you don't reveal any communications with counsel.

(Pause.)

MR. ROGERS:  If you want a microphone, David, you can join in the questioning.

MR. KUSNETZ:  I'm sorry?  Is there an issue, Counselor?

MR. ROGERS:  I'm just observing for the record --

Page 143

G. Grysko

MR. KUSNETZ:  You're observing for the record what?  That I'm passing notes to my colleague?

(Indistinguishable crosstalk.)

MR. ROGERS:  Pretty much --

MR. KUSNETZ:  Is that -- is that --

MR. ROGERS:  -- to every question.

MR. KUSNETZ:  Oh, is that so?  Every question?  Is that -- is that -- okay.

This is a court proceeding on the record.  For every single question, have I passed a note to my colleague?

MR. ROGERS:  Are you --

MR. KUSNETZ:  Is that -- no, I'm asking you, sir.

MR. ROGERS:  I'm not going to answer your question.

MR. KUSNETZ:  No, no.  You're accusing me of something and --

MR. ROGERS:  I'm not accusing you.

MR. KUSNETZ:  -- this is a court record.  I want to know.

Are you saying that for every single question that my colleague has asked, I've

Page 144

G. Grysko

passed her a note?  Is that what you're saying?

MR. ROGERS:  I don't --

MR. KUSNETZ:  Yes or no?

MR. ROGERS:  I don't have to answer your questions, David.

MR. KUSNETZ:  Well, then don't raise it if you're not prepared to talk about it.

MR. ROGERS:  Don't pass notes --

(Indistinguishable crosstalk.)

MR. KUSNETZ:  I suggest we don't waste more time, because we reserve all rights with respect to this.

MR. ROGERS:  Congratulations.  Very well done, David.

(Pause.)

THE WITNESS:  I reviewed the investment management -- management agreements and I reviewed the purchases and sales.

BY MS. LULKIN:

Q.  Did you review whether WCERS held any investments in hedge funds during the alleged class period?

A.  The only thing -- I don't know that we



Page 185

G. Grysko

A.   No.

(Pause.)

MS. LULKIN:  Let's go off the record.

THE VIDEOGRAPHER:  Okay.  We're off the record at 4:14.

(Recess taken at 4:14 p.m.)

(Resumed at 4:26 p.m.)

THE VIDEOGRAPHER:  We're on the record at 4:26 p.m.

BY MS. LULKIN:

Q.   Did WCERS hold any L'Oreal securities during the alleged class period?

(Pause.)

THE WITNESS:  I don't remember.

BY MS. LULKIN:

Q.   Did WCERS hold any Shiseido securities during the alleged class period?

(Thereupon, an informal discussion was held off the record with the shorthand reporter.)

THE WITNESS:  I can't be sure.

BY MS. LULKIN:

Q.   Did WCERS hold any Unilever securities during the alleged class period?

Page 186

G. Grysko

A.   I don't really remember.

Q.   Did WCERS hold any Coty securities during the alleged class period?

A.   You know, I kind of recall looking this stuff over and just -- you know, not 100 percent.  It was like five different securities there.

Q.   What do you mean by "looking this stuff over"?  Was that in connection with the prep?

A.   I remember looking some documents over.  Not 100 percent on that.

Q.   Was that in your preparation for the deposition today?

A.   I think I saw something in one of these documents and -- yeah.

Q.   I would like to --

A.   I mean, were these competitors of Estee?

Q.   Yes, these were competitors.

A.   Yes, I believe we did hold some of those.

Q.   For which of the competitors that we just named?

A.   I don't remember, but I remember we held -- I believe there was some kind of investments -- some competitors of Estee.

Q.   I'd like to direct your attention to Exhibit

Page 187

G. Grysko

1 --

A.   Okay.

Q.   -- and I would like to direct your attention to Topic 7 on page 7.

A.   Okay.

Q.   How did you prepare for this topic -- to testify on this topic today?

A.   I reviewed reports.  I reviewed documents.

Q.   And your testimony is that you believe WCERS had some kind of investment in some competitors of Estee, correct?

A.   I -- I believe so.

Q.   Okay.

(Pause.)

BY MS. LULKIN:

Q.   Did WCERS sell its Estee Lauder securities after the November 1, 2023 alleged corrected disclosure?

MR. ROGERS:  Objection, foundation.

THE WITNESS:  After the -- what date?

MS. LULKIN:  November 1, 2023.

THE WITNESS:  I don't remember on that one.

MR. ROGERS:  Why don't you direct him to the certification where those trades would be

Page 188

G. Grysko

listed?

BY MS. LULKIN:

Q.   We can look at the certification.  It's in Exhibit 9, I believe.  However, it ends as of October 31, 2023.

A.   What did you say?  Exhibit 9?

Q.   Yes.

A.   Oh, there we go.  Okay.

Q.   And it's page 13.

(Pause.)

THE WITNESS:  And what was your question?

BY MS. LULKIN:

Q.   My question was whether WCERS sold its Estee Lauder securities after the November 1, 2023 alleged corrected disclosure.

MR. ROGERS:  Objection, foundation and relevance.

(Pause.)

THE WITNESS:  Again, I'm -- I'm not really sure.  Seems like they were making -- November 2023, you said?

BY MS. LULKIN:

Q.   Yes.

A.   It's not on here.  It ends in September with



Page 189

G. Grysko

some purchases.

Q.    Yes.  The PSLRA certification covers through October 31, 2023.  Your counsel had suggested we look at it and I was happy to oblige, but --

A.    Yeah, I can't -- I can't recall.

Q.    Okay.  I would like to direct your attention to the deposition -- to Exhibit 1 again.

(Pause.)

THE WITNESS:  Okay.

BY MS. LULKIN:

Q.    On page 5, under the definitions and instructions, Item 19 states "The topics cover responsive information from January 1, 2020 through April 30, 2024," correct?

A.    You're looking at?

Q.    On page 5 --

A.    Okay.

Q.    -- Item No. 19.

A.    Okay.  Right.

Q.    What did you do to prepare for your testimony on --

A.    Yeah, so I -- I reviewed documents.  I can't tell you how many.  I could have or probably did review the specific document that would tell me when we sold,

Page 190

G. Grysko

but I can't remember.  I think I said that five times.  I can't remember when we sold.

Q.    And is that your testimony on behalf of WCERS --

A.    Yeah.

Q.    – as its corporate representative?

MR. ROGERS:  Objection to foundation.

He's already established that the IMs had trading discretion.  You can answer that question, if you know.

THE WITNESS:  Yes.  That's my testimony, that I can't remember.

(Pause.)

MS. LULKIN:  I have no further questions.  Thank you, Mr. Grysko, for your testimony today.

THE WITNESS:  You're welcome.

MR. ROGERS:  No questions on behalf of the plaintiffs or the class.

THE VIDEOGRAPHER:  Okay.  Before I close the video, could I just ask for any video orders for either side?

MR. KUSNETZ:  Yeah.

THE VIDEOGRAPHER:  Yes for you?

Page 191

G. Grysko

MR. ROGERS:  Yes.

THE VIDEOGRAPHER:  Thank you.  The time is 4:35 p.m.

(Thereupon, the deposition concluded at 4:35 p.m.)

(The exhibits were retained by the shorthand reporter to be attached to the transcript.)

***      ***      ***

Page 192

ACKNOWLEDGMENT OF DEPONENT

I, GERARD GRYSKO, do hereby certify that the foregoing testimony given by me on November 5, 2025 is true and accurate, including any corrections noted on the corrections page, to the best of my knowledge and belief.

_____
GERARD GRYSKO

At _____ in said County of _____, this _____ day of _____, 2025, personally appeared GERARD GRYSKO, and he made an oath to the truth of the foregoing corrections by him subscribed.

Before me, _____, Notary Public.  My commission expires _____.



Page 193

                    C E R T I F I C A T E

       I, CHERYLL KERR, CSR, a Certified Shorthand

Reporter and Notary Public, do hereby certify

that the witness whose deposition is hereinbefore

set forth was duly sworn by me, and that such

deposition is a true record of the testimony given

by such witness.

       I further certify that I am not related to

any of the parties to this action by blood or

marriage; and that I am in no way interested in

the outcome of this matter.

       IN WITNESS WHEREOF, I have hereunto set my

hand this 7th day of November, 2025.


                    *Cheryll Kerr*
                    ---------------------------------
                         CHERYLL KERR, CSR

Page 194

            ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:  In Re:  Estee Lauder Securities Litigation

Dep. Date:  November 5, 2025

Deponent:  Gerard Grysko

Reason codes:

       1.  To clarify the record.

       2.  To conform to the facts.

       3.  To correct transcription errors.

Pg.    Ln.     Now Reads      Should Read    Reason

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____  _____  _____  _____  _____

_____
     Signature of Deponent

SUBSCRIBED AND SWORN BEFORE ME

THIS _____ DAY OF _____, _____.

_____
(Notary Public)  My Commission Expires: _____

