# EXHIBIT R



**James T. Christie**
**Partner**
**Labaton Keller Sucharow LLP**
140 Broadway
New York, New York 10005
212.907.0781
JChristie@labaton.com

August 26, 2025

**VIA EMAIL**

David M. Kusnetz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-2315
dkusnetz@gibsondunn.com

RE:     *In re the Estee Lauder Co., Inc. Securities Litigation, Case No. 1:23-cv-10669*

Dear David:

As discussed during our telephonic Lead Trial Counsel meet-and-confer on August 14, 2025, this letter provides written responses on behalf of Lead Plaintiffs Macomb County Employees' Retirement System ("Macomb County ERS"), Macomb County Retiree Health Care Fund ("Macomb County RHC"), and Wayne County Employees' Retirement System ("Wayne County ERS," collectively "Lead Plaintiffs") to the questions and issues raised in Defendants' letter dated August 12, 2025 ("Letter"). Lead Plaintiffs note that, while they believe that Defendants' inquiries and requests to pull additional data have been disproportionate to Lead Plaintiffs' discovery obligations and the needs of the case, Lead Plaintiffs willingly undertook this burden because they want to make clear that this Action presents a straightforward case for class certification where the proposed class representatives' investments were externally managed. Accordingly, while we are willing to meet and confer on any outstanding issues, it is Lead Plaintiffs' position that they have completed their document production at this time.

## I.     Lead Plaintiffs' Search Parameters

(1)     **Custodians**. Defendants requested that Lead Plaintiffs confirm that their productions to date are comprised of documents reviewed from each of the following custodians: Gerard Grysko (Wayne County ERS), Mark Deldin (Macomb County ERS), Harold Haugh (Macomb County RHC), Stephen Smigiel (Macomb County ERS and Macomb County RHC), and Valerie Schave (Macomb County ERS and Macomb County RHC). As stated on our call, Lead Plaintiffs confirm that these are the custodians for whom they collected, reviewed, and produced documents.

(2)     **Date range and search terms**. Defendants also requested that Lead Plaintiffs confirm whether they applied a date range of January 1, 2021 through January 30, 2024 and the applied the "entire list of terms Defendants sent by email dated June 20, 2025" to the custodial files of the individuals referenced above. As stated on our call, Lead Plaintiffs confirm



New York | Delaware | Washington, D.C.

LKS

August 26, 2025
Page 2

that they applied the foregoing date range to their productions and ran the complete list of search terms set forth in Defendants' June 20 email.

(3)    **Hit reports**. Defendants asked that Lead Plaintiffs share hit reports for the search terms that it ran.  Lead Plaintiffs sent the requested hit reports for their searches over the custodial sources searched on Wednesday August 20, 2025.

(4)    **Search methodology & folder structure**. During our call, Defendants asked for clarity regarding the "folder structure" and search methodology employed for the share file or non-custodial sources searched in connection with Lead Plaintiffs' productions.  Lead Plaintiffs confirm that they searched their respective document management platforms through both electronic searches and manual pulls for responsive documents.  While Lead Plaintiffs do not have hit reports for these non-custodial sources (given platform limitations as well as the manual search component of this collection and review), Lead Plaintiffs confirm that they performed such searches, collections, and reviews as part of their productions to date.

(5)    **Short positions**.  On our call, Defendants asked us to confirm whether Lead Plaintiffs held any short positions in Estée Lauder.  To respond to this request, we reviewed custodial bank data for Lead Plaintiffs and confirmed that Lead Plaintiffs did not trade in other Estée Lauder related securities other than Estée Lauder common stock.  In addition, we also separately confirmed that Wayne County, Macomb County ERS, and Macomb County RHC are not aware of any short positions held during the Relevant Period at all.  Macomb County ERS and Macomb County RHC held shares of commingled funds that had the *ability* to invest in short equity positions.  However, Macomb County ERS and Macomb County RHC have no reason to believe, based on their review of documents received in connection with their investments, that those funds held short positions in Estée Lauder.  To the extent such hypothetical short positions existed, they would be owned by the respective investment fund(s), not by Macomb County ERS or Macomb County RHC who simply owned shares of commingled funds.  Accordingly, Lead Plaintiffs are not aware of any short positions in Lead Plaintiffs' portfolios.

## II.    Sufficiency of Lead Plaintiffs' Productions

(1)    **Specific Requests**.   Defendants contend that they have identified "no documents in any of the Macomb County Plaintiffs' Productions" responsive to Request Nos. 4 (regarding short positions in Estée Lauder Securities), 11 (regarding reports to Lead Plaintiffs' members), 16 (regarding increases or decreases in the price of Estée Lauder securities), or 28 (regarding the estimated or actual number of class members). Lead Plaintiffs have explained their positions regarding these Requests during our prior meet-and-confers.  Specifically, and as set forth in detail above, Lead Plaintiffs have confirmed that no responsive documents exist for Request No. 4, as Lead Plaintiffs did not hold short positions in Estée Lauder.  Concerning Request No. 11, Lead Plaintiffs produced all documents in their



August 26, 2025
Page 3

possession, custody, or control concerning Estée Lauder common stock.  To the extent that Defendants seek documents responsive to this Request that do not concern Estée Lauder common stock, Lead Plaintiffs do not consider such documents responsive. Regarding Request No. 16, no responsive documents were returned through Lead Plaintiffs' broad searches and Lead Plaintiffs understand that any further documents responsive to this request—such as securities analysts' reports—are publicly available.  Finally, Lead Plaintiffs confirm that no responsive documents exist concerning "the estimated or actual number of members or potential members of the putative class" in response to Request No. 28.  Should Defendants wish to discuss any specific documents, definitions, or interpretations applicable to these Requests, Lead Plaintiffs remain willing to meet and confer.

(2)    **Collection Methodology**. Defendants raise concerns with Lead Plaintiffs' collection methodology, claiming to have identified a "fundamental flaw" based on the custodians' receipt of certain quarterly reports and purported "gaps."  However, as we explained during our meet-and-confer, Defendants' inference is flawed, not Lead Plaintiffs' collection methodology.  As we discussed, Lead Plaintiffs produced the quarterly reports received by the pertinent custodians and available through the non-custodial sources searched.  To the extent that Defendants wish to obtain any purportedly missing quarterly reports, Lead Plaintiffs have no objection to Defendants seeking such materials via Lead Plaintiffs' investment managers—which Defendants have already done.

(3)    **No Responsive Documents**. Defendants have asked Lead Plaintiffs to identify a list of Requests for which Lead Plaintiffs have identified that no responsive, non-privileged documents exist.  As Lead Plaintiffs stated above (and repeatedly on our calls), they have produced all responsive, non-privileged documents in response to Defendants' Requests.  To the extent that Defendants have specific questions that have not been addressed regarding specific documents or Requests, Lead Plaintiffs remain willing to meet and confer.  However, the absence of such documents is a result of there being no responsive, non-privileged documents in Lead Plaintiffs' possession, custody, or control, in light of their responses, objections, and interpretation of Defendants' requests.

(4)    **Custodial Bank Records**.  As explained on our call, Lead Plaintiffs have a monitoring agreement with Lead Counsel that allows Lead Counsel to access certain data feeds related to Lead Plaintiffs' custodial bank records.  Because we have custodial data access, Lead Counsel is also able to request records of transactions.  Contrary to Defendants' assertions, this is not the same as such documents being in Lead Plaintiffs' or Lead Counsel's possession, custody, or control.  As we stated on our call, we are in the process of seeking custodial bank information related to Lead Plaintiffs' trading and will produce such documents



August 26, 2025
Page 4

and/or information once received.[1]  This information will explain the purported discrepancy relating to Lead Plaintiffs' trading raised in your Letter.  It appears the custodial transaction record we produced left off certain transactions that were executed by Winslow Asset Management.

**III.    Defendants' Requests**

The remainder of Defendants' Letter spends five pages requesting additional confirmation and information related to specific definitions and Requests.  Lead Plaintiffs respond to each below.

**A.    Definition of "ELC Securities," "Security," and "Securities"**

As Lead Plaintiffs have stated earlier in this correspondence, Lead Plaintiffs did not trade in other instruments or entities other than Estée Lauder common stock.  Lead Plaintiffs and Lead Counsel have gone back to confirm this and, accordingly, do not see any basis for applying Defendants' proposed definition of "ELC Securities," "Security," and "Securities" to Defendants' Requests, as only Estée Lauder common stock is relevant to this Action.

**B.    Definition of "Plaintiffs' Counsel"**

Defendants have asked for information concerning John Schapka's relationship to Macomb County ERS, Macomb County RHC, and this litigation.  As stated on our call, Lead Plaintiffs confirm that while John Schapka may have been involved in securities cases in the past, he had no involvement in this Action.

**C.    Request Nos. 1, 2, 3, 4, 6, 10, 11, 16, 28, 37, and 38**

As stated previously and above, Lead Plaintiffs have produced all responsive, non-privileged documents in their possession, custody, or control.  Lead Plaintiffs' productions are subject to their responses and objections, as well as their interpretations of the Requests and associated definitions.  To the extent that Defendants believe that, under their interpretation of the Requests, that responsive, non-privileged documents have not been produced, Lead Plaintiffs take the position that it is because responsive, non-privileged documents do not exist. Lead Plaintiffs remain willing to meet and confer with respect to specific Requests.

---

[1] As we made clear in prior correspondence and during our August 14 meet-and-confer, Lead Plaintiffs and Lead Counsel are under no obligation to create documents for the purposes of discovery in this Action.  Based on our prior discussions, however, we offered to pull this custodial bank information solely for the purpose of facilitating responses to Defendants' questions.  As such, Lead Plaintiffs do not believe that Defendants' request for the date on which such information was requested is relevant or required.

 LKS

August 26, 2025
Page 5

### D.      Request No. 7

Concerning Request No. 7, Defendants ask for information regarding certain investment-consultant firms and individuals' "roles with respect to Plaintiffs."   As we stated on our call, it is our understanding that the investment consultants here only played a "role" concerning Lead Plaintiffs to the extent that they oversaw the performance of Lead Plaintiffs' investment managers—entities disclosed by Lead Plaintiffs in their Initial Disclosure Statement.  As also stated on our call, Lead Plaintiffs do not see how that "role" is relevant to any claim or defense in this Action, nor have Defendants told us how they are relevant. Nonetheless, Lead Plaintiffs have no objection to Defendants' pursuing third-party subpoenas and/or depositions on these third-party entities and/or individuals. For the reasons set forth above, Lead Plaintiffs do not intend to amend their Initial Disclosure Statement to include these investment-consultant firms and individuals at this time.

### E.      Request No. 8

Regarding Request No. 8, seeking documents concerning Lead Plaintiffs' "brokerage accounts," we explained on our call that Lead Plaintiffs do not have brokerage accounts similar to an individual person. As discussed, Lead Plaintiffs hire custodial banks to report on and take custody of their account activity.  These accounts are property of Lead Plaintiffs but managed by their investment managers. Lead Plaintiffs have produced documents reflecting these account numbers.

### F.      Request No. 24

This Request relates to Macomb County ERS's Notice of Errata filed on September 16, 2024 (ECF No. 55).  As we discussed on our call, Lead Plaintiffs' production includes documents related to the Macomb County Intermediate Retiree Medical Benefits Trust ("IRMBT"), in an effort to be as inclusive as possible.  If Defendants would like, Lead Plaintiffs can claw back or recall these documents, as they were not intended to cause confusion but rather, to provide additional information. Lead Plaintiffs maintain their position that their filing with the Court contained in the Notice of Errata contains sufficient information to explain the need for the filing.

Lead Plaintiffs consider their productions complete and do not expect to make additional productions.  We remain willing to meet-and-confer and reserve all rights.

Very truly yours,

James T. Christie

Cc:      All counsel of record (via E-mail)