UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE THE ESTEE LAUDER CO., INC. SECURITIES LITIGATION

23-cv-10669 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

For the following reasons and those set forth on the record at the August 20, 2026 hearing, the motion for final approval of the proposed class-action settlement and plan of allocation, as to which there was no objection, is GRANTED. The settlement is fair, reasonable, and adequate, for the reasons set forth in the plaintiffs' submission to the Court and as addressed at the hearing. *See* Dkt. 122.

The objection to the application for attorneys' fees and litigation expenses, Dkt. 119, and application for a pro se service award relating to that objection, Dkt. 120, are DENIED. "Nonparties to a settlement generally do not have standing to object to a settlement of a class action." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). As addressed at the August 20, 2026 hearing, the Court agrees that Avrohom Senderovic lacks standing to pursue his objection to the settlement. Based on the information before the Court, Mr. Senderovic is not a member of the settlement class because he did not sustain a loss attributable to the violations alleged in this case. He is therefore not entitled to payment from the settlement, and his objection warrants no service award. Nevertheless, the Court has considered the substance of Mr. Senderovic's objections, as set forth below, in evaluating plaintiffs' motion for attorneys' fees and payment of expenses.

As to that motion, Dkt. 123, it is GRANTED in full as to all aspects other than the request for a 32% attorney's fee award. The Court instead awards a fee in the amount of 30% of the settlement fund, for the reasons set forth below.

First to dispose of the issues raised in Mr. Senderovic's objection. He first challenges plaintiffs' counsel's hourly billing rates. Dkt. 126 at 1. But counsel's rates are reasonable and match actual market realities. Counsel submitted an hourly rate table with various comparator firms' rates, and counsel's rates were lower than average across the board. Dkt. 125-11 (Hourly Rate Table); *see, e.g.*, *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving as reasonable hourly rates in securities action that were "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"). Mr. Senderovic says that staff attorneys billed unreasonably—between $405 and $550 per hour—to perform a "mechanical" and "administrative function," spending over 4 minutes per page for the entire 560,000-page universe

of discovery in this case. Dkt. 126 at 2–3. But lead counsel responds, and the Court agrees, that "the body of documents produced required detailed and nuanced review given the nature of Estée Lauder's Global Travel Retail business segment and daigou." Dkt. 127 at 8. Indeed, Mr. Canty's reply declaration explains how the staff attorneys' "tiered review" procedure was critical (1) to help identify probative documents, given that the company often referred to daigou without calling it by name, and (2) to determine how documents fit together across Estée Lauder's far-ranging and highly siloed business. Dkt. 128 ¶¶ 11–14.

Second, Mr. Senderovic challenges counsel's billing rates combined with a 2.7x multiplier. Dkt. 126 at 3. But the multiplier is comparable to similar cases in this district. *See, e.g.*, *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) ("Although a lodestar multiplier of 3.14 for a settlement of $210 million is high, it is still within the range of lodestar multipliers approved in this Circuit."); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving fees totaling six times the lodestar amount in securities fraud class action).

Third, Mr. Senderovic points to the fact that the settlement represents 4.6% of plaintiffs' maximum damages. Dkt. 126 at 5. Mr. Senderovic says this is low, but counsel faced substantial risks in proving those damages. They would have needed to surmount challenges to each of the five alleged corrective disclosure dates, together with arguments that they could not disaggregate confounding information in those alleged corrective disclosures. Plus, through early settlement, counsel avoided potentially long, drawn-out litigation, affording class members a timely $210 million settlement that is one of the 100 largest securities settlements of all time. *See In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting that "significant litigation risks, including the difficulty of establishing loss causation . . . militate in favor of fee awards").

Fourth, Mr. Senderovic challenges the 32% fee as inappropriate because this is a "mega-fund" case. Dkt. 126 at 5. Such a challenge may be appropriate in some cases, but here, especially given the reasonable lodestar multiplier, such a reduction isn't warranted. The Court also has some doubt about the wisdom of reducing fees in cases that yield a large settlement. In general, class counsel should be incentivized to get the biggest result they can possibly get as stewards of the class; *reducing* fees where the result is exceptionally large would seem to be at cross-purposes with that goal.

Fifth, Mr. Senderovic argues that the over-$759,000 in litigation expenses should be reduced because the request "improperly attempts to shift standard firm overhead, excessive commercial copy markups, and unverified future estimates onto the class." Dkt. 126 at 5. In particular, he challenges the over $21,000 in expenses incurred through Lexis, Westlaw, and PACER research and the over $10,000 incurred through in-house printing. *Id.* at 6. But "on-line legal and factual research," printing, and "photocopying expenses" are "necessarily incurred in litigation and routinely charged to clients." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (S.D.N.Y. Jul. 21, 2020) (approving those expenses). And per the Court's August 18, 2026 Order, Dkt. 133, counsel submitted a letter explaining in detail how it apportions costs pro-rata for its legal research, and how it has assessed its printing costs "for many years without increases." Dkt.

134 at 2. Having reviewed that filing and the supporting materials filed in conjunction with counsel's motions, the Court is satisfied that the expense requests are reasonable.

Despite the lack of merit in these objections, the Court did explore a separate issue at the August 20, 2026, hearing: whether the post-hoc evaluation of billing rates using the lodestar multiplier is really the best way to determine whether a requested award of fees is reasonable or not. Cross-checking a contingency fee, which is usually agreed upon in advance and based on results, against hourly billing rates, which are tallied up after-the-fact and aren't based on results, seems to be the wrong comparison. Even worse is dinging an attorneys' fee request based on a judge's gut reaction that it is "too high," or approving a fee just because the lodestar multiplier doesn't seem egregious. *See* Lynn A. Baker, Michael A. Perino, and Charles Silver, *Is the Price Right? An Empirical Study of Fee-Setting in Securities Class Actions*, 115 Colum. L. R. 1371, 1372 (2015) (observing that ex-post methods of evaluating fee requests, such as using lodestar cross-checks or reducing fees that appear too high, are arbitrary, subject to judicial bias, and ill-calibrated to market realities).

There's an alternative, especially in cases like this one. Sophisticated lead plaintiffs can negotiate the best deal for the class at the outset of the case with counsel. Courts can then review plaintiffs' fee arrangements at the lead-plaintiff-selection stage, considering fee arrangements alongside other factors when choosing a lead plaintiff and lead counsel. This approach would better calibrate fees to the market and subject them to the forces of competition, to the benefit of the class. These issues weren't raised at the time of the lead-plaintiff-selection hearing in this case, but the Court will adhere to this approach in future cases.

Nevertheless, at the August 20, 2026, hearing, the Court inquired with several witnesses representing the lead plaintiffs concerning their consideration of the fees sought by lead counsel. In this case, it became clear that neither lead plaintiff considered at the outset of the case what any contingency percentage or cap on fees should be, and they did not consider multiple law firms or compare different fee proposals. When the parties were close to a deal, the plaintiffs did finally begin to consider the amount of fees, but based on the testimony at the hearing, it is unclear whether there was serious discussion over whether a lower fee percentage might have been warranted for the benefit of the class. The evidence showed that one lead plaintiff considered a fee range "anywhere from 30 to 33%." Dkt. 136 at 27. But no witness could explain why a fee lower than 32% wasn't warranted. *Id*. at 30 ("The Court: And why were 30 and 31 rejected? Mr. Grden: I don't necessarily say that they were rejected. It was more as 32 was more settled on."); *id.* at 37–38 ("The Court: And did the board consider any number other than 32% in terms of the fees? Mr. Deldin: It never came up . . . .").

The Court is sensitive to lead counsel's observation that their request for 32% in fees gave rise to only a single objection (which was procedurally and substantively meritless), and no class member, including numerous institutional investors, contested the percentage. However, given the lead plaintiffs did consider a fee between 30 and 33% and could not articulate why a fee at the lower end of that range was not chosen, the Court will reduce the fee to 30%—the lowest fee considered by the lead plaintiffs. A fee of 30% is well-situated in the range of reasonable fees awarded in this Circuit, and it has the additional benefit of ensuring that the class isn't unnecessarily harmed by

the lead plaintiffs' failure to thoroughly evaluate the fee request they would authorize, even within the range they were considering.

For the reasons above, plaintiffs' motion for a fee award and payment of expenses, Dkt. 123, is GRANTED except that the fee awarded is reduced to 30%. The motion for final approval of the proposed class-action settlement and plan of allocation, Dkt. 121, is GRANTED. The objection to the application for attorneys' fees and litigation expenses, Dkt. 119, and application for a pro se service award relating to that objection, Dkt. 120, are DENIED. The Clerk of Court is respectfully directed to close Dkts. 120, 121, and 123.

Dated: October 13, 2026

New York, New York

ARUN SUBRAMANIAN
United States District Judge